## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JOHN REAM, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:24cv0364 |
| | ) | |
| v. | ) | Judge Edmund A. Sargus, Jr. |
| | ) | Magistrate Judge Chelsey M. Vascura |
| UNITED STATES DEPARTMENT OF THE | ) | |
| TREASURY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Defendants United States Department of the Treasury; Janet Yellen, in her official capacity as Secretary of the Treasury; Alcohol and Tobacco Tax and Trade Bureau ("TTB"); and Mary G. Ryan, in her official capacity as TTB Administrator (together, "Defendants") respectfully move this Court for dismissal of the complaint pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Attached hereto is a memorandum in support of this motion.

Dated: April 19, 2024        Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director, Federal Programs Branch

/s/ *Elizabeth Tulis*
ELIZABETH TULIS
HANNAH SOLOMON-STRAUSS
*Trial Attorneys*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 514-9237
elizabeth.tulis@usdoj.gov

*Counsel for Defendants*

1

**CERTIFICATE OF SERVICE**

I certify that on April 19, 2024, a true and correct copy of the foregoing motion was served electronically upon the following parties or counsel via the Court's CM/ECF filing system:

Patrick T Lewis
Baker & Hostetler LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114
216-621-0200
Fax: 216-696-0740
Email: plewis@bakerlaw.com
*Counsel for Plaintiff*

Andrew Michael Grossman
Baker Hostetler
Washington Square
1050 Connecticut Avenue, N.W.
Ste 1100
Washington, DC 20036
202-861-1697
Email: agrossman@bakerlaw.com
*Counsel for Plaintiff*

David Christian Tryon
The Buckeye Institute
188 East Broad Street
Ste 1300
Columbus, OH 43215
440-503-7877
Email: d.tryon@buckeyeinstitute.org
*Counsel for Plaintiff*

Kristin A. Shapiro
Baker & Hostetler
1050 Connecticut Ave. NW, Suite 1100
Washington, DC 20036
202-861-1717
Email: kshapiro@bakerlaw.com
*Counsel for Plaintiff*

Robert Alt
The Buckeye Institute
88 East Broad Street, Suite 1300
Columbus, OH 43215
614-224-4422
Email: robert@buckeyeinstitute.org
*Counsel for Plaintiff*

*/s/ Elizabeth Tulis*
ELIZABETH TULIS

2

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| JOHN REAM, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:24cv0364 |
| | ) | |
| v. | ) | Judge Edmund A. Sargus, Jr. |
| | ) | Magistrate Judge Chelsey M. Vascura |
| UNITED STATES DEPARTMENT OF THE | ) | |
| TREASURY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 1

I.     Statutory and Regulatory Background ............................................................... 1

II.    Factual and Procedural Background ................................................................... 5

ARGUMENT ...................................................................................................................... 6

I.     Standards Applicable to a Motion To Dismiss. ................................................. 6

II.    Plaintiff Lacks Article III Standing. ................................................................... 6

III.   The Challenged Provisions Fall Within Congress's Enumerated Powers. ....... 11

        A.    Congress Had Authority To Enact the Challenged Provisions Under the
            Taxing Power. ......................................................................................... 11

        B.    Congress Had Authority To Enact the Challenged Provisions Under the
            Commerce Clause. .................................................................................. 15

CONCLUSION .................................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)............................................................................................ 6, 9

*Ass'n of Am. Physicians & Surgeons v. FDA,*
    13 F.4th 531 (6th Cir. 2021)................................................................................ 6

*Babbitt v. United Farm Workers Nat'l Union,*
    442 U.S. 289 (1979)............................................................................................ 7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)............................................................................................ 6

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013)............................................................................................ 7, 9

*Crawford v. United States Dep't of Treasury,*
    868 F.3d 438 (6th Cir. 2017)............................................................ 7, 8, 9, 10

*Diamond v. Charles,*
    476 U.S. 54 (1986).............................................................................................. 10

*Felsenheld v. United States,*
    186 U.S. 126 (1902)............................................................................................ 11, 12

*Foreman v. United States,*
    255 F. 621 (4th Cir. 1918).................................................................................. 11

*Goldstein v. Miller,*
    488 F. Supp. 156 (D. Md. 1980), *aff'd,* 649 F.2d 863 (4th Cir. 1981), *aff'd sub nom.*
    *Overbrook Egg Nog Corp. v. Miller,* 649 F.2d 864 (4th Cir. 1981)............................. 12

*Gonzalez v. Raich,*
    545 U.S. 1 (2005)................................................................................................ 15, 16, 17

*Hollingsworth v. Perry,*
    570 U.S. 693, (2013)........................................................................................... 10

*In re Kollock,*
    165 U.S. 526 (1897)............................................................................................ 11, 12

*Jones v. Schneiderman,*
    101 F. Supp. 3d 283 (S.D.N.Y. 2015) ............................................................. 8

*League of United Latin Am. Citizens v. Bredesen,*
    500 F.3d 523 (6th Cir. 2007) ........................................................................ 5

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ......................................................................... 6, 7, 9

*McCulloch v. Maryland,*
    17 U.S. (4 Wheat.) 316 (1819) ................................................................. 12

*Nat'l Rifle Ass'n of Am. v. Magaw,*
    132 F.3d 272 (6th Cir. 1997) ................................................................ 9, 10

*New York v. United States,*
    505 U.S. 144 (1992) ............................................................................... 15

*NLRB v. Jones & Laughlin Steel Corp.,*
    301 U.S. 1 (1937) .................................................................................. 15

*Pinion v. United States,*
    397 F.2d 27 (5th Cir. 1968) ..................................................................... 10

*Prim v. Raoul,*
    No. 3:20-cv-50094, 2021 WL 214641 (N.D. Ill. Jan. 21, 2021) .......................... 8

*Hein v. Freedom From Religion Found., Inc.,*
    551 U.S. 587 (2007) ............................................................................... 6

*Ripper v. United States,*
    178 F. 24 (8th Cir. 1910) ........................................................................ 12

*Rote v. Zel Custom Mfg. LLC,*
    816 F.3d 386 (6th Cir. 2016) ..................................................................... 6

*Steffel v. Thompson,*
    415 U.S. 452 (1974) ............................................................................... 7

*Steward Mach. Co. v. Davis,*
    301 U.S. 548 (1937) .............................................................................. 11

*Stilinovic v. United States,*
    336 F.2d 862 (8th Cir. 1964) ................................................................... 11

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ........................................................................... 7, 9

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
    551 U.S. 308 (2007) ............................................................................... 6

*United States v. Brookins*,
    434 F.2d 41 (5th Cir. 1970) .......................................................................... 10

*United States v. Goldberg*,
    225 F.2d 180 (8th Cir. 1955) ........................................................................ 13

*United States v. Lopez*,
    514 U.S. 549 (1995) ..................................................................................... 17

*United States v. Smith*,
    456 F. App'x 200 (4th Cir. 2011) ................................................................ 10

*United States v. Ulrici*,
    111 U.S. 38 (1884) ....................................................................................... 14

*Warth v. Seldin*,
    422 U.S. 290 (1975) ....................................................................................... 7

*Wickard v. Filburn*,
    317 U.S. 111 (1942) ..................................................................................... 17

**Statutes**

26 U.S.C. § 5001 .................................................................................... *passim*

26 U.S.C. §§ 5001-5011 ................................................................................... 1

26 U.S.C. §§ 5001–5314 ................................................................................ 16

26 U.S.C. § 5002 .................................................................................... 2, 3, 12

26 U.S.C. § 5004 ........................................................................................ 2, 12

26 U.S.C. § 5005 ........................................................................................ 2, 12

26 U.S.C. § 5006 .......................................................................................... 1, 4

26 U.S.C. § 5041 ........................................................................................ 2, 12

26 U.S.C. § 5051 ........................................................................................ 2, 12

26 U.S.C. § 5061 .......................................................................................... 3, 4

26 U.S.C. § 5171 .................................................................................... *passim*

26 U.S.C §§ 5171-5181 ................................................................................ 11

26 U.S.C. §§ 5171-5182 ............................................................................... 1, 2

26 U.S.C. § 5173 .................................................................................... 16, 17

26 U.S.C § 5178 .......................................................................................... *passim*

26 U.S.C § 5179 .................................................................................... 16, 17

26 U.S.C. § 5181 ....................................................................................... 4, 12

26 U.S.C. §§ 5201–5244 ................................................................................. 1

26 U.S.C. § 5203 .............................................................................................. 3

26 U.S.C. § 5212 ............................................................................................ 12

26 U.S.C. § 5271 .............................................................................................. 3

26 U.S.C. §§ 5271–5276 ................................................................................. 1

26 U.S.C. §§ 5291–5314 ................................................................................. 1

26 U.S.C. § 5601 .......................................................................................... *passim*

26 U.S.C. §§ 5601–5615 ............................................................................ 1, 4

26 U.S.C. §§ 5711–5713 .............................................................................. 11

27 U.S.C. § 203 ................................................................................... 3, 16, 17

27 U.S.C. § 204 .................................................................................. 3, 16, 17

27 U.S.C. § 211(a)(5) ...................................................................................... 3

AN ACT IMPOSING TAXES ON DISTILLED SPIRITS AND TOBACCO AND FOR OTHER PURPOSES ("ACT OF JULY 20, 1868"), 15 Stat. 125 ................................................ 13

## **Regulations**

27 C.F.R. pt. 19 .......................................................................... 2, 4, 16, 17

27 C.F.R. § 5.1 ............................................................................................... 2

27 C.F.R. § 1.21 ............................................................................................. 3

27 C.F.R. § 1.24 ............................................................................................. 3

27 C.F.R. § 1.60 ............................................................................................. 3

27 C.F.R. §§ 19.229-19.240 ....................................................................... 3, 4

27 C.F.R. §§ 19.402–19.407 ................................................................................... 12

27 C.F.R. § 19.663 ...................................................................................................... 4

27 C.F.R. §19.71 ......................................................................................................... 3

27 C.F.R. §§ 19.73–19.77 .......................................................................................... 8

*Revision of Distilled Spirits Plant Regulations*,
   76 Fed. Reg. 9080 (Feb. 16, 2011) ........................................................................ 2

**Legislative Authorities**

Congressional Globe, 39th Cong., 1st Sess. 2839, 2841 (1866) ..................................... 13

H.R. Rep. No. 39-24 (1867) ......................................................................................... 13

**Constitutional Provisions**

U.S. CONST., art. I, § 8, cl. 1 ....................................................................................... 11

U.S. CONST., art. I, § 8, cl. 3 ....................................................................................... 15

U.S. CONST., art. I, § 8, cl. 18 ................................................................................ 11, 15

## INTRODUCTION

For more than 150 years, Congress has taxed distilled spirits under an intricate statutory scheme. As part of that scheme, and to protect the substantial revenue raised from the excise tax on distilled spirits, Congress placed limitations on where distilled spirits plants may be located. Relevant here, these limitations include a prohibition on locating a distilled spirits plant in a "dwelling house" or in a shed, yard, or inclosure "connected with a dwelling house." 26 U.S.C. §§ 5178(a)(1)(B), 5601(a)(6). Plaintiff John Ream ("Plaintiff") claims that Congress lacked authority to enact these restrictions and seeks a judgment declaring them unconstitutional.

The Court should dismiss the complaint. First, Plaintiff has not plausibly alleged an injury in fact. While Plaintiff expresses a desire to engage in "home distilling" and an intention to act on that desire if the law were different, he does not allege that he is currently suffering or will imminently suffer any concrete harm as a result of the operation or enforcement of the challenged provisions. Plaintiff thus lacks Article III standing, and the Court lacks subject matter jurisdiction over the case. Second, Plaintiff has not plausibly alleged that the challenged statutory provisions are unconstitutional. To the contrary, longstanding Supreme Court precedents confirm that Congress had authority to enact the challenged provisions—which are reasonable measures to protect the revenue and regulate a quintessentially economic activity that substantially affects interstate commerce—under both the Taxing Power and the Commerce Clause. Accordingly, the Court should dismiss the complaint under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND

### I.    Statutory and Regulatory Background

The taxing scheme for distilled spirits is detailed and intricate. *See generally* 26 U.S.C. §§ 5001–5011, 5066, 5171–5182, 5201–5244, 5271–5276, 5291–5314, 5601–5615. Distilled spirits are taxed by the "proof gallon." *See id.* § 5001. This concept incorporates both alcohol percentage by volume ("ABV") and fluid volume, such that one gallon of 40% ABV distilled

spirits is taxed less than one gallon of 80% ABV distilled spirits.[1] *See id.* §§ 5001, 5002. The gauging process required to accurately assess distilled spirits excise tax liability requires a high degree of technical proficiency. *See id.* § 5204; 27 C.F.R. pt. 19, Subpart K.[2] Under 26 U.S.C. § 5001(b), the tax on distilled spirits attaches "as soon as this substance is in existence." And the tax is a first lien, "from the time the spirits are in existence as such until the tax is paid." *Id.* § 5004(a)(1). The Internal Revenue Code imposes liability on "every person in any manner interested in the use of any still, distilling apparatus, or distillery … for the taxes imposed by law on the distilled spirits produced therefrom." *Id.* § 5005(b)(1).

To protect and facilitate collection of the revenue raised by the excise tax on distilled spirits, Congress has prescribed certain "Qualification Requirements" for distilled spirits plants.[3] *See id.* §§ 5171–5182. For example, distilling systems must be "so designed and constructed[,] and so connected as to prevent the unauthorized removal of distilled spirits before their production gauge." *Id.* § 5178(a)(2)(B). Under § 5178(a)(2)(C), the Secretary of the Treasury is authorized "to order and require" both "(i) such identification of, changes of, and additions to, distilling apparatus, connecting pipes, pumps, tanks, and any machinery connected with or used in or on the premises," and "(ii) such fastenings, locks, and seals to be part of any of the stills, tubs, pipes, tanks, and other equipment, as [the Secretary] may deem necessary to facilitate inspection and

---

[1] The regulatory definition of a proof gallon is "a gallon of liquid at 60° Fahrenheit that contains 50 percent by volume of ethyl alcohol having a specific gravity of 0.7939 at 60° Fahrenheit, referred to water at 60° Fahrenheit as unity, or the alcoholic equivalent thereof." 27 C.F.R. § 5.1.

[2] Distilled spirits are taxed differently from beer and wine. While distilled spirits are taxed on a proof gallon basis, wine is taxed on volume based on tax classes prescribed in statute differentiated by ABV, carbonation, and ingredient composition; and beer is taxed on volume by the barrel. 26 U.S.C. §§ 5041, 5051.

[3] The Internal Revenue Code defines a "distilled spirits plant" as "an establishment which is qualified under subchapter B to perform any distilled spirits operation." 26 U.S.C. § 5002(a)(1). Federal regulations further explain that "'distilled spirits plant' (DSP) refers to a plant at which distilled spirits are manufactured or produced, aged or stored, or packaged or bottled, for either beverage or industrial use." *Revision of Distilled Spirits Plant Regulations*, 76 Fed. Reg. 9080, 9080 (Feb. 16, 2011).

afford adequate security to the revenue." The "Qualification Requirements" also address permissible locations for distilled spirits plants. Relevant to this case, Congress has specified that:

> No distilled spirits plant for the production of distilled spirits shall be located in any dwelling house, in any shed, yard, or inclosure connected with any dwelling house, or on board any vessel or boat, or on premises where beer or wine is made or produced, or liquors of any description are retailed, or on premises where any other business is carried on (except when authorized under [§ 5178(b)]).

*Id.* § 5178(a)(1)(B).

Distilled spirits plant operations must be conducted only on bonded premises, *see id*. § 5002(a)(3), and only after the Secretary of the Treasury has received and approved the operator's registration. *Id.* § 5171(a), (c). Distilled spirits plants producing beverage alcohol must further comply with the Federal Alcohol Administration Act ("FAA Act"), 27 U.S.C. § 203. And even distilled spirits plants that do not need to comply with the FAA Act—those that do not produce beverage alcohol—must apply for a permit under 26 U.S.C. § 5271. *See* 26 U.S.C. § 5171(d)(1); 27 U.S.C. § 204(c); 27 U.S.C. § 211(a)(5); 27 C.F.R. § 1.60.

To operate a distilled spirits plant producing beverage alcohol, a prospective distiller must complete both a Distilled Spirits Plant Registration, *see* 26 U.S.C. § 5171(c), and a permit application under the FAA Act, *see* 27 U.S.C. § 203. Both the permit and the registration must be approved by the U.S. Department of the Treasury's Alcohol and Tobacco Tax and Trade Bureau ("TTB") before operation of the distilled spirits plant may lawfully begin. *See* 26 U.S.C. § 5171; 27 U.S.C. § 203; 27 C.F.R. §§ 1.21, 19.71. TTB may deny an FAA Act basic permit if the applicant is "not likely to … maintain such operations in conformity with Federal law," or if "the operations proposed to be conducted by such person are in violation of the law of the State in which they are to be conducted." 27 U.S.C. § 204(a)(2); *see also id.* (setting forth other bases on which TTB may deny an application); 27 C.F.R. § 1.24 (same). Distillers must allow access to distilled spirits plant premises by federal revenue officers at any time, day or night. 26 U.S.C. § 5203.

The tax on spirits produced at a qualified distilled spirits plant can be pre-paid (before withdrawal from a bonded premises), or on a deferred basis (after spirits are withdrawn from a

3

bonded premises) pursuant to a tax return based on removals during the applicable return period. 26 U.S.C. § 5061; 27 C.F.R. §§ 19.229–19.240. The tax on distilled spirits that are not produced at a qualified distilled spirits plant is due and payable immediately upon production. 26 U.S.C. § 5006(c)(2). Further, distilled spirits produced other than as authorized by Chapter 51 of the Internal Revenue Code are not eligible for the reduced rates of tax under 26 U.S.C. § 5001(c).

Congress has imposed civil and criminal penalties for failure to comply with the Internal Revenue Code's provisions concerning distilled spirits. *See* 26 U.S.C. §§ 5601–5615. Among other things, Congress has made it a criminal offense for a person to possess an unregistered still, *id.* § 5601(a)(1); to distill spirits on prohibited premises—such as a dwelling house, boat, or premises where beer or wine is made or produced, *id.* § 5601(a)(6); or to produce distilled spirits when one is not a distiller authorized by law to produce distilled spirits, *id.* § 5601(a)(8).

Plaintiff's assertion that "the Department of Treasury … permits individuals to distill alcohol at home if that alcohol is 'used exclusively for fuel use'" is incorrect. (Complaint, ECF No. 1 ("Compl."), PageID 4.) An alcohol fuel plant ("AFP")—referenced by Plaintiff in paragraph 13 of his complaint—is a type of distilled spirits plant authorized under 26 U.S.C. § 5181 and established pursuant to regulations in 27 C.F.R. part 19, subpart X to produce (non-beverage) fuel alcohol. AFPs are subject to the same location restrictions imposed under the Internal Revenue Code as distilled spirits plants generally, including the restriction on placement in dwelling houses or in a yard, shed, or inclosure connected with a dwelling house. *See* 26 U.S.C. § 5178(a)(1)(B). Section 5181 delegates express authority to waive any provision of Chapter 51 of the Internal Revenue Code through regulation if the Secretary of the Treasury finds it necessary to carry out the provisions of § 5181. Pursuant to that authority, TTB regulations waive certain provisions of Chapter 51 as to alcohol fuel plants, 27 C.F.R. § 19.663, but this waiver does not apply to "[a]ny provision applicable to distilled spirits that deals with penalty, seizure, or forfeiture …," which includes § 5601(a)(6). Section 5601(a)(6) penalizes the production of distilled spirits on prohibited premises, and the waiver in 27 C.F.R. § 19.663 thus does not extend to the premises restrictions set forth in 26 U.S.C. § 5178(a)(1)(B).

4

## II.  Factual and Procedural Background[4]

   Plaintiff resides in Licking County, Ohio, and he manages the brewhouse and business operations for Trek Brewing Company, a family-owned business. (Compl., PageID 2, 5). Although "he has never distilled alcohol before," Plaintiff "would like to distill small quantities of alcohol in his own home for his own personal consumption." (*Id.*, PageID 5.) Plaintiff has an engineering background and "has extensively researched and studied the process of distilling." (*Id.*) He has "determined that he is prepared" to take necessary steps to distill spirits at home for his own consumption, including "obtaining the necessary equipment and raw materials." (*Id.*) However, he does not allege that he has yet obtained such equipment or raw materials, or even that he has begun taking the necessary steps to acquire them. Plaintiff does not specify where "in his own home" his prospective distilling operation would be located. (*Id.*) Plaintiff also alleges that he "would obtain all necessary state and federal licenses for, and pay all applicable taxes on, his home distilling." (*Id.*) But he does not allege that he has applied for any such licenses, or even gathered the information and prepared the materials necessary to make such applications.

   On February 5, 2024, Plaintiff filed the instant lawsuit, which takes issue with portions of the premises restrictions set forth in 26 U.S.C. §§ 5178(a)(1)(B) and 5601(a)(6). (Compl., PageID 7-8.) Specifically, Plaintiff challenges § 5601(a)(6)'s imposition of criminal penalties for use or possession with intent to use "any still, boiler, or other utensil for the purpose of producing distilled spirits … in any dwelling house, or in any shed, yard, or inclosure connected with such dwelling house," and the specification in § 5178(a)(1)(B) that "[n]o distilled spirits plant for the production of distilled spirits shall be located in any dwelling house, [or] in any shed, yard, or inclosure connected with any dwelling house." He asks the Court to declare that these provisions exceed Congress's constitutional authority under Article I and violate the Tenth Amendment, and to enjoin Defendants from enforcing them against Plaintiff. (Compl., PageID 8.)

---

[4] The factual background set forth here is based on the well-pleaded allegations of the complaint, which are assumed to be true only for purposes of this motion to dismiss. *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

**ARGUMENT**

## I.    Standards Applicable to a Motion To Dismiss.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court considers "the complaint in its entirety, as well as … documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). The court accepts the factual allegations as true, but "bare assertions" and "conclusory" allegations are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 678, 681. The complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. This requires factual allegations "plausibly suggesting," and "not merely consistent with," a valid claim for relief. *Id.* at 557. These standards govern both the court's analysis of whether the complaint alleges facts sufficient to establish subject matter jurisdiction and its analysis of whether the complaint states a valid claim for relief. *See, e.g.*, *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 386, 387 (6th Cir. 2016) (explaining that, when the defendant presents a "facial attack" on subject matter jurisdiction, the court accepts the allegations of the complaint as true and considers whether those allegations are sufficient to establish jurisdiction); *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 543–44 (6th Cir. 2021) (applying the pleading standards elucidated in *Iqbal* when considering whether the complaint was sufficient to establish subject matter jurisdiction).

## II.    Plaintiff Lacks Article III Standing.

"Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies,' and 'Article III standing enforces the Constitution's case-or-controversy requirement.'" *Hein v. Freedom from Religion Found.*, *Inc.*, 551 U.S. 587, 597–98 (2007) (cleaned up). To establish standing, a plaintiff must show that it has suffered or will imminently suffer an "injury in fact" "caused" by the challenged government action that a favorable decision would likely "redress." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–62 (1992).

To satisfy the injury-in-fact requirement, a plaintiff must allege an invasion of a "legally protected interest" that is "concrete" and "particularized" and "actual or imminent"—not "conjectural" or "hypothetical." *Id.* at 560 (citation omitted).

"A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Generally, this means that a threatened injury must be "certainly impending." *Id.* (citation omitted). However, in pre-enforcement challenges to criminal statutes, a plaintiff may sometimes be able to establish an imminent, concrete injury based on a "credible threat of prosecution." *Id.*; *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). This option is limited to cases in which a plaintiff claims that the challenged statute is inhibiting conduct that arguably is constitutionally protected. *See, e.g.*, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (explaining that "it is not necessary that [a plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"). Specifically, "to have standing to bring a pre-enforcement challenge to a federal statute, there must be a *substantial probability* that the plaintiff actually will engage in conduct that is *arguably affected* with a constitutional interest, and there must be a *certain* threat of prosecution if the plaintiff does indeed engage in that conduct." *Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 455 (6th Cir. 2017) (synthesizing the holdings of *Warth v. Seldin*, 422 U.S. 290 (1975); *Susan B. Anthony List*, 573 U.S. 149; and *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013)).

Here, Plaintiff does not allege that either challenged statutory provision has been enforced against him, nor that he is facing any "certainly impending" adverse action by Defendants—or other concrete injury—due to enforcement or operation of the challenged provisions. *Babbitt*, 442 U.S. at 298 (citation omitted). Thus, he can establish an injury in fact only if he satisfies the "threat of prosecution" standard for pre-enforcement challenges. He does not.

First, Plaintiff does not seek to engage in conduct that is "arguably affected with a constitutional interest," *Crawford*, 868 F.3d at 455 (emphasis omitted), that is, conduct that

implicates some constitutional right. Plaintiff seeks to distill alcohol at home, and he challenges statutory premises restrictions for distilled spirits plants, claiming that Congress lacked authority under Article I of the Constitution to enact such provisions. But Plaintiff raises no claim that §§ 5601(a)(6) and 5178(a)(1)(B) infringe on a right guaranteed by a constitutional provision recognized as providing a basis for pre-enforcement challenges, such as the First or Second Amendment. *See, e.g.*, *Prim v. Raoul*, No. 3:20-cv-50094, 2021 WL 214641, at *2 (N.D. Ill. Jan. 21, 2021) ("The pre-enforcement standing case law in this circuit and others largely invokes First and Second Amendment interests."). In other words, Plaintiff does not claim that home distilling itself is affected with any constitutional interest. *Cf. Jones v. Schneiderman*, 101 F. Supp. 3d 283, 289 n.4 (S.D.N.Y. 2015) ("According to Plaintiffs, [their as-applied vagueness] challenges are 'affected with a constitutional interest' because they 'arise under the Due Process Clause.' … But it is Plaintiffs' conduct, not their claims, that must be affected with a constitutional interest ….").

Second, even if home distilling could be deemed conduct "arguably affected with a constitutional interest," Plaintiff has not plausibly alleged that there is a "substantial probability" that he "actually will engage in [such] conduct." *Crawford*, 868 F.3d at 455 (emphasis omitted). Plaintiff alleges that he "would like" to distill alcohol at home and "has determined that he is prepared" to take the necessary steps to commence such distilling, "including obtaining the necessary equipment and raw materials." (Compl., PageID 6.) But he does not allege that he has even begun to acquire such equipment or materials, or otherwise taken such "necessary steps." Moreover, Plaintiff avers that he does not intend to distill spirits at home unless he has received "all necessary state and federal licenses." (*Id.*) To apply for a federal distilled spirits plant registration and permit, Plaintiff would be required to provide, *inter alia*, detailed information about his distilling equipment and the layout and security of the premises for his proposed distilling operations. *See* 27 C.F.R. §§ 19.73–19.77 (requiring submission of information concerning, *inter alia*, building layout and security, operations to be performed, and equipment descriptions). Plaintiff does not allege that he has applied—or is even ready to apply—for the permits he concedes are necessary. Nor has he set forth the detailed information that he would be required to

8

include in a federal distilled spirits plant permit application. And despite his assertion that he has "taken the initial steps he may lawfully take to pursue his wish" (Compl., PageID 6), Plaintiff identifies no law, let alone any purportedly unconstitutional law, that precludes him from making more concrete plans, such as securing necessary materials and applying for required permits. In sum, Plaintiff has alleged no more than a desire to engage in conduct proscribed by the challenged statutory provisions at some indeterminate point in the future, which is insufficient to establish an Article III injury. *See Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997) ("Plaintiffs' assertions that they 'wish' or 'intend' to engage in proscribed conduct is not sufficient to establish an injury-in-fact under Article III."); *see also Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."). Plaintiff's conclusory allegation that "[h]e would engage in home distilling" but for the challenged statutory provisions, (Compl., PageID 6), is not entitled to an assumption of truth, *Iqbal*, 556 U.S. at 681, and does not suffice to establish a "*substantial probability*" that he will engage in prohibited conduct, *Crawford*, 868 F.3d at 455.

Third, while Plaintiff alleges that he "fears federal prosecution … if he … builds or acquires a still and/or begins to distill spirits" (Compl., PageID 7), he has not plausibly alleged that he faces a "*certain* threat of prosecution" for home distilling under the challenged statutory provisions. *Crawford*, 868 F.3d at 455; *see also Clapper*, 568 U.S. at 416 (explaining that "fears of hypothetical future harm that is not certainly impending" are insufficient to establish an Article III injury). In considering whether a credible threat of prosecution exists, the Supreme Court has considered: (1) the "history of past enforcement," (2) whether the enforcement mechanism allows "any person" to initiate enforcement or whether initiation authority is "limited to a prosecutor or an agency," and (3) whether the enforcement "proceedings are not a rare occurrence." *Susan B. Anthony List*, 573 U.S. at 164. Here, only one of the two challenged provisions imposes any criminal (or civil) penalties, *see* 26 U.S.C. § 5601(a)(6), and Plaintiff does not allege a history of past enforcement sufficient to establish a certain threat of prosecution under that provision. Indeed,

none of the cases that Plaintiff purports to cite as examples of past enforcement (Compl., PageID 7) involved charges under § 5601(a)(6) or the prohibition on locating a distilled spirits plant in a dwelling house or shed, yard, or inclosure connected with a dwelling house. *See United States v. Smith*, 456 F. App'x 200, 206 (4th Cir. 2011) (per curiam) (unpublished) (charges under 26 U.S.C. § 5601 included only possession of an unregistered still under § 5601(a)(1); failure to post bond under § 5601(a)(4); and unlawful production of distilled spirits under § 5601(a)(8)); *United States v. Brookins*, 434 F.2d 41, 43 (5th Cir. 1970) (defendant charged with carrying on the business of a distiller having failed to give bond in violation of § 5601(a)(4)); *Pinion v. United States*, 397 F.2d 27, 28 (5th Cir. 1968) (defendant charged with "possession of a still, carrying on the business of a distiller without bond, and possession of whiskey on which no taxes had been paid in violation of 26 U.S.C. §§ 5601(a)(1), 5601(a)(4), 5205, 5604").

At bottom, Plaintiff disagrees with the statutory criminal penalties associated with use of a still in a dwelling house or connected shed, yard, or inclosure, *see* 26 U.S.C. § 5601(a)(6), and objects to one of the qualification requirements that would apply if he sought a federal distilled spirits plant permit and registration, *see id.* § 5178(a)(1)(B). (Compl., PageID 3, 6.) But "for a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm." *Hollingsworth v. Perry*, 570 U.S. 693, 704, (2013). "The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements." *Id.* (quoting *Diamond v. Charles*, 476 U.S. 54, 62 (1986)); *see, e.g.*, *Nat'l Rifle Ass'n*, 132 F.3d at 294 ("[P]laintiffs' implication that the statute has a 'chilling' effect on their desire to purchase the outlawed weapons and accessories does not establish standing."). Because Plaintiff has not plausibly alleged that there is "a *substantial probability* that [he] actually will engage in conduct that is *arguably affected* with a constitutional interest, and … a *certain* threat of prosecution if [he] does indeed engage in that conduct," *Crawford*, 868 F.3d at 455, he lacks Article III standing for this pre-enforcement challenge, and the Court should dismiss the complaint for lack of subject matter jurisdiction.

III. **The Challenged Provisions Fall Within Congress's Enumerated Powers.**

    A. **Congress Had Authority To Enact the Challenged Provisions Under the Taxing Power.**

The Constitution gives Congress power "(t)o lay and collect Taxes, Duties, Imposts and Excises." U.S. CONST., art. I, § 8, cl. 1. Congress may also pass laws that are "necessary and proper" to execute Congress's other enumerated powers, including the Taxing Power. U.S. CONST., art. I, § 8, cl. 18. The Taxing Power is "comprehensive," *Steward Mach. Co. v. Davis*, 301 U.S. 548, 581–82 (1937), and it is well established that statutes enacted to protect the revenue are valid exercises of this power. *See, e.g.*, *Stilinovic v. United States*, 336 F.2d 862, 864–65 (8th Cir. 1964) (holding that Congress "acted within its constitutional power to facilitate the collection of revenue" in enacting statute that prohibited alteration of the contents of liquor bottles).

Contrary to Plaintiff's suggestion (Compl., PageID 8), the necessary and proper measures Congress may take to execute its Taxing Power are not limited to direct "means of collecting federal taxes." If that were the case, scores of sections of the Internal Revenue Code—unchallenged by Plaintiff—could be thought to fall outside Congress's taxing authority. These include not only provisions such as federal income tax deductions, credits, and exemptions, but also qualification requirements for manufacturers and importers of tobacco products, *see* 26 U.S.C. §§ 5711–5713, and numerous other qualification requirements for distilled spirits plants, *see generally id.* §§ 5171–5181, which, like the challenged location restrictions, may have the practical effect of preventing some individuals from lawfully "engaging in taxable activity" (Compl., PageID 8). Indeed, per the Supreme Court, "in the rules and regulations for the manufacture and handling of goods which are subjected to an internal revenue tax, Congress may prescribe any rule or regulation which is not in itself unreasonable." *Felsenheld v. United States*, 186 U.S. 126, 132 (1902); *see also Foreman v. United States*, 255 F. 621, 623 (4th Cir. 1918) (noting the Supreme Court's recognition that "in a revenue statute the Congress may make any rule or regulation which is not in itself unreasonable, although its effect on the revenue be only remote or incidental, and its effect on the public health or morals direct and obvious" (citing *In re Kollock*, 165 U.S. 526,

526–36 (1897); *Felsenheld*, 186 U.S. 126)). Courts have upheld a wide range of statutory and regulatory restrictions on the production of liquor and other taxable commodities. *See, e.g.*, *Ripper v. United States*, 178 F. 24, 28 (8th Cir. 1910) (rejecting contention that statute limiting retail sales of margarine to "original stamped packages, in quantities not exceeding ten pounds" was unconstitutional because it had "no effect in preventing frauds on the revenue"); *Goldstein v. Miller*, 488 F. Supp. 156, 170 (D. Md. 1980) (rejecting plaintiffs' argument that "the regulation of [liquor] bottle sizes bears no reasonable relationship to the protection of the revenue"), *aff'd*, 649 F.2d 863 (4th Cir. 1981), *aff'd sub nom. Overbrook Egg Nog Corp. v. Miller*, 649 F.2d 864 (4th Cir. 1981).

Here, the challenged statutory provisions concerning the manufacture of distilled spirits, a taxed commodity, are not only "plainly adapted" to Congress's exercise of the taxing authority, *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421 (1819), but also integrally connected to protection of the revenue. These provisions thus fall squarely within Congress's enumerated powers. As set forth above, the excise tax scheme for distilled spirits is distinctive in several respects. Among other things, unlike the taxes on beer and wine, the tax on distilled spirits is a first lien that attaches at creation. 26 U.S.C. § 5004. This means that the government has an interest in the tax revenue from distilled spirits from the moment they are produced. Unlike beer or wine, distilled spirits can only be transferred in bond pursuant to approval of TTB F 5100.16 – Application for Transfer of Spirits and/or Denatured Spirits in Bond. *See* 26 U.S.C. §§ 5005, 5212; 27 C.F.R. §§ 19.402–19.407. Moreover, unlike beer and wine, distilled spirits are taxed by the "proof gallon," a more sensitive measure than those applicable to beer and wine. *Compare* 26 U.S.C. §§ 5001, 5002, *with id.* §§ 5041, 5051. Diversion of the revenue from the tax on distilled spirits—for example, by hiding stills or the alcohol they produce—is thus easier to accomplish and more costly to the government than diverting the revenue on an equal volume of beer or wine. The revenue from the federal excise tax on distilled spirits—almost $7 billion in 2023—dwarfs that raised from the beer or wine tax. *See* TTB, *Statistical Release, Tax Collections Fiscal Year 2023*, https://www.ttb.gov/media/78776/download?inline (Dec. 5, 2023) (showing over $6.7 billion in

distilled spirits tax revenue for fiscal year 2023, compared with approximately $1 billion and $3.3 billion in tax revenue from wine and beer respectively).

"An elaborate system has been set up by legislation and regulations thereunder to protect the revenue on distilled spirits." *United States v. Goldberg*, 225 F.2d 180, 187 (8th Cir. 1955); *see id.* at 188 (holding that regulation regarding labeling of distilled spirits was "reasonably related to protection of the revenue"). The statutory provisions at issue were enacted in 1868 following the Civil War. AN ACT IMPOSING TAXES ON DISTILLED SPIRITS AND TOBACCO AND FOR OTHER PURPOSES ("ACT OF JULY 20, 1868"), § 12, 15 Stat. 125, 130. Prior to passage, the U.S. House of Representatives convened a select committee "to investigate and report … the facts as to any frauds or evasions in the payment of internal duties, … or alleged fraud of any parties concerned in the manufacture of distilled spirits …." H.R. Rep. No. 39-24, at 1 (1867). The select committee performed its investigation, and reported that especially for distilled spirits, "the most stupendous frauds are practiced against the government in the collection of its revenue," adding that, "at least seven-eighths of the entire amount of spirits manufactured … have escaped taxation." *Id.* The select committee added, "if the present condition of affairs is to be continued, that which has been regarded as one of the principal sources of internal revenue may now be deemed substantially exhausted." *Id.* at 2. The urgent necessity of preventing concealment of stills and "frauds on the revenue" informed Congress's decision to prohibit distilling operations in certain locations. *See* Congressional Globe, 39th Cong., 1st Sess. 2839, 2841 (1866) (in debate over statute that included some location restrictions later included in the Act of July 20, 1868, rejecting amendment that would have removed breweries from the list of prohibited premises and adopting amendment adding "or in a dwelling house"); *see also* H.R. Rep. No. 39-24, at 159 (question from select committee chairman inquiring whether testifying special agent had "discovered distilleries or rectifying establishments in dwelling-houses, or found liquor stores or liquor saloons carried on in the same premises occupied by distillers").

The provisions challenged in this case are thus part of a well-considered scheme adopted to protect the revenue generated by the excise tax on distilled spirits. The Supreme Court observed in *United States v. Ulrici*:

> It is clear, even upon a cursory reading, that the well-considered and minute provisions of the Revised Statutes found in chapter 4, entitled 'Distilled Spirits,' of title 35, entitled 'Internal Revenue,' were adopted with one purpose only, namely, to secure the payment of the tax imposed by law upon distilled spirits. All the regulations for the manufacture and storage, the marking, branding, numbering, and stamping with taxstamps of distilled spirits, and all the penalties, forfeitures, fines, and imprisonments prescribed by the chapter mentioned have that end only in view.

111 U.S. 38, 40 (1884). Plaintiff's complaint asks the Court to substitute itself for Congress and disrupt this carefully designed set of requirements, restrictions, and enforcement mechanisms— which include premises restrictions for distilled spirits plants.

In asserting that Congress lacked the power to enact a portion of these restrictions, Plaintiff ignores the provisions' statutory context and relationship to the underlying tax scheme. Plaintiff warns that "[i]f Congress can prohibit home distilling, it can prohibit home bread baking, sewing, vegetable gardening, and practically anything else." (Compl., PageID 1–2.) But of course, the statutory provisions at issue do not simply "prohibit home distilling" but rather place limits on the permissible locations for production of distilled spirits. Congress excluded not only dwelling houses and connected sheds, yards, and inclosures, but also any vessel or boat, and (with certain exceptions) premises where beer or wine is produced, liquors are retailed, or other business is carried on. *See* 26 U.S.C. §§ 5178(a)(1)(B), 5601(a)(6). Even without awareness of the legislative history, it is not difficult to conceive of Congress's motive in singling out such locations within the applicable statutory scheme. There is no federal excise tax on brioche or rutabagas, for instance, let alone one that is a first lien, attaches at creation, and generates billions of dollars in federal tax revenue each year. Plaintiff's imagined parade of horribles not only mischaracterizes the statutory provisions at issue, but also fails to acknowledge the substantial revenue raised from the distilled spirits tax and Congress's concordant interest in enacting measures to protect that revenue.

14

Because the challenged provisions are reasonable measures to protect the revenue, they fall squarely within Congress's Taxing Power, and Plaintiff has plausibly alleged neither that Congress exceeded its authorities under Article I nor that the provisions violate the Tenth Amendment. *See New York v. United States*, 505 U.S. 144, 156 (1992) (explaining that "[i]f a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States").

### B. Congress Had Authority To Enact the Challenged Provisions Under the Commerce Clause.

Under the Commerce Clause, U.S. CONST., art. I, § 8, cl. 3, and the Necessary and Proper Clause, U.S. CONST., art. I, § 8, cl. 18, Congress has power to regulate local activity that substantially affects interstate commerce. "[T]he power to regulate commerce is the power to enact 'all appropriate legislation' for 'its protection and advancement'; to adopt measures 'to promote its growth and insure its safety'; 'to foster, protect, control and restrain.'" *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 36–37 (1937) (internal citations omitted). The Supreme Court has squarely rejected Plaintiff's cramped reading of the Commerce Clause (Compl., PageID 7), holding that "the production, distribution, and consumption of commodities for which there is an established, and lucrative, interstate market" are "quintessentially economic" activities well within Congress's power. *Gonzales v. Raich*, 545 U.S. 1, 25–26 (2005). Because this Court cannot overturn binding Supreme Court precedent, Plaintiff's Commerce Clause argument fails.

In addition to regulating "the channels of interstate commerce," "the instrumentalities of interstate commerce, and persons or things in interstate commerce," Congress may "regulate activities that substantially affect interstate commerce." *Id.* at 16–17. When Congress acts in this third category, it has the power to "regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Id.* at 17. And "[w]hen Congress decides that the 'total incidence' of a practice poses a threat to a national market, it may regulate the entire class." *Id.* (citation omitted). In reviewing such a determination, a court's "task … is a modest one." *Id.* at 22. The court "need not determine whether [the regulated] activities,

taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding." *Id.*

Congress comprehensively regulates the distilled spirits industry, including strict regulation and taxation of the distilling of spirits. *See, e.g.*, 26 U.S.C. §§ 5001–5314; 27 U.S.C. § 203 *et seq*. Distilled spirits are a multi-billion-dollar industry, *see* TTB, *Statistical Release, Tax Collections Fiscal Year 2023*, https://www.ttb.gov/media/78776/download?inline (Dec. 5, 2023) (showing over $6.7 billion of distilled spirits excise tax revenue for fiscal year 2023), and distilling is a quintessentially commercial activity that occurs in both interstate and foreign commerce and substantially affects interstate commerce. Congress made express findings about the interstate effects of distilled spirits when it passed the FAA Act, explaining that the Act was necessary "[i]n order effectively to regulate interstate and foreign commerce in distilled spirits, wine, and malt beverages, to enforce the twenty-first amendment, and to protect the revenue and enforce the postal laws with respect to distilled spirits." 27 U.S.C. § 203.

Thus, Congress has the power under the Commerce Clause to regulate distilling activity, including regulating where and under what conditions distilled spirits may be legally produced. Although Plaintiff attempts to frame the challenged statutory provisions as a "home distilling prohibition" (Compl., PageID 3, 7-8), they are more accurately described as one piece of a statutory and regulatory scheme defining where distilling may and may not take place: not (among other locations) in dwelling houses; in sheds, yards, or inclosures connected with dwelling houses; or on any vessel or boat, 26 U.S.C. §§ 5178(a)(1)(B), 5601(a)(6), and only on premises compliant with "regulations [prescribed by the Secretary] relating to the location, construction, arrangement, and protection of distilled spirits plants as [she] deems necessary to facilitate inspection and afford adequate security to the revenue," *id.* § 5178(a)(1)(A). Plaintiff does not contend that Congress lacks the power to regulate distilled spirits in interstate commerce, nor does he contend that Congress lacks the power to regulate the distilling of spirits. He does not, for example, challenge numerous provisions in the FAA Act, Internal Revenue Code, and accompanying regulations that

16

impose permitting requirements and other strict controls over the operation of distilled spirits plants. *See, e.g.*, *id.* §§ 5171, 5173, 5178, 5179; 27 U.S.C. §§ 203, 204; 27 C.F.R. pt. 19.

Given the evident interstate commerce impacts of spirits and distilling, Plaintiff focuses on the artificially narrow category of "home distilling." (Compl., PageID 1, 3, 6, 7-8.) But the Supreme Court has repeatedly rejected such a myopic view of commercial activity. For example, in *Raich*, the Court held that the federal regulation of marijuana cultivated at home for personal consumption "is squarely within Congress' commerce power because production of the commodity meant for home consumption, be it wheat or marijuana, has a substantial effect on supply and demand in the national market for that commodity." 545 U.S. at 19. The fact that a person's "own impact on the market was 'trivial by itself' was not a sufficient reason for removing him from the scope of federal regulation." *Id.* at 20 (citing *Wickard v. Filburn*, 317 U.S. 111, 127 (1942)). Indeed, Congress "may regulate even noneconomic local activity if that regulation is a necessary part of a more general regulation of interstate commerce." *Id.* at 37 (Scalia, J., concurring in the judgment) (citing *United States v. Lopez*, 514 U.S. 549, 561 (1995)).

It matters not that Plaintiff seeks to distill alcohol for purely intrastate, non-commercial use. (Compl., PageID 6, 7.) If Congress could regulate the entirely intrastate cultivation and consumption of marijuana for personal use because "marijuana that is grown at home and possessed for personal use is never more than an instant from the interstate market," *Raich*, 545 U.S. at 40 (Scalia, J., concurring in the judgment), then logically Congress can also regulate "[spirit] that is [distilled] at home and possessed for personal use," *id.*, for the same reasons. Plaintiff's proposed home distilling activities fall into the category of "purely local activities that are part of an economic 'class of activities'" here, the economic activity of distilling spirits, "that have a substantial effect on interstate commerce," which Congress plainly has the "power to regulate." *Id.* at 17. As the Supreme Court reiterated in *Raich*, "even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce." *Id.* (quoting *Wickard*, 317 U.S. at 125).

17

This Court is powerless to overturn binding Supreme Court precedent, and the Supreme Court has roundly rejected Plaintiff's artificially narrow reading of the Commerce Clause. Thus, Plaintiff's claim that the challenged provisions exceed Congress's Commerce Clause authority must fail.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim on which relief may be granted, pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: April 19, 2024          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director, Federal Programs Branch

/s/ *Elizabeth Tulis*
ELIZABETH TULIS
HANNAH SOLOMON-STRAUSS
*Trial Attorneys*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 514-9237
elizabeth.tulis@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on April 19, 2024, a true and correct copy of the foregoing memorandum was served electronically upon the following parties or counsel via the Court's CM/ECF filing system:

Patrick T Lewis
Baker & Hostetler LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114
216-621-0200
Fax: 216-696-0740
Email: plewis@bakerlaw.com
*Counsel for Plaintiff*

Andrew Michael Grossman
Baker Hostetler
Washington Square
1050 Connecticut Avenue, N.W.
Ste 1100
Washington, DC 20036
202-861-1697
Email: agrossman@bakerlaw.com
*Counsel for Plaintiff*

David Christian Tryon
The Buckeye Institute
188 East Broad Street
Ste 1300
Columbus, OH 43215
440-503-7877
Email: d.tryon@buckeyeinstitute.org
*Counsel for Plaintiff*

Kristin A. Shapiro
Baker & Hostetler
1050 Connecticut Ave. NW, Suite 1100
Washington, DC 20036
202-861-1717
Email: kshapiro@bakerlaw.com
*Counsel for Plaintiff*

Robert Alt
The Buckeye Institute
88 East Broad Street, Suite 1300
Columbus, OH 43215
614-224-4422
Email: robert@buckeyeinstitute.org
*Counsel for Plaintiff*

*/s/ Elizabeth Tulis*
ELIZABETH TULIS

19