**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

JOHN REAM,

               Plaintiff,

     v.

UNITED STATES DEPARTMENT OF
THE TREASURY; JANET YELLEN, in her
official capacity as Secretary of the Treasury;
ALCOHOL AND TOBACCO TAX AND
TRADE BUREAU, UNITED STATES
DEPARTMENT OF THE TREASURY;
MARY G. RYAN, in her official capacity as
Administrator of the Alcohol and Tobacco
Tax and Trade Bureau of the United States
Department of the Treasury,

               Defendants.

Civil Action No. 2:24-cv-00364-EAS-CMV

---

**Plaintiff's Combined Cross-Motion for Summary Judgment and Memorandum In Support**
**and Opposition to Defendants' Motion To Dismiss**

Plaintiff John Ream cross-moves for summary judgment on his claims pursuant to Federal

Rule of Civil Procedure 56 and opposes defendants' motion to dismiss pursuant to Rule 12(b)(1) and

12(b)(6). The reasons for this combined Motion and Opposition are set forth in the attached

memorandum.

Dated: May 23, 2024

Respectfully submitted,

*/s/ Patrick T. Lewis*

ROBERT ALT (#0091753)
The Buckeye Institute
88 East Broad Street, Suite 1300
Columbus, OH 43215
(614) 224-4422
robert@buckeyeinstitute.org

PATRICK T. LEWIS (#0078314)
  *Trial Attorney*
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
(216) 861-7096
plewis@bakerlaw.com

*Additional counsel listed on following page*

* pro hac vice pending

ANDREW M. GROSSMAN (pro hac vice)
DAVID B. RIVKIN, JR.*
KRISTIN A. SHAPIRO (pro hac vice)
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W., Suite 1100
Washington, D.C. 20036
(202) 861-1697
agrossman@bakerlaw.com

*Attorneys for John Ream*

## CERTIFICATE OF SERVICE

I certify that on May 23, 2024, the foregoing was filed on the Court's electronic filing system. The Court's filing system will serve notice of the filing to all counsel of record. Parties may access the filing on the Court's system.

_/s/ Patrick T. Lewis_
PATRICK T. LEWIS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN REAM, <br><br>        Plaintiff, <br><br>    v. <br><br> UNITED STATES DEPARTMENT OF THE TREASURY; JANET YELLEN, in her official capacity as Secretary of the Treasury; ALCOHOL AND TOBACCO TAX AND TRADE BUREAU, UNITED STATES DEPARTMENT OF THE TREASURY; MARY G. RYAN, in her official capacity as Administrator of the Alcohol and Tobacco Tax and Trade Bureau of the United States Department of the Treasury, <br><br>        Defendants. | Civil Action No. 2:24-cv-00364-EAS-CMV |

**Memorandum In Support of Plaintiff's Motion for Summary Judgment**
**and Opposition to Defendants' Motion To Dismiss**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND AND STATEMENT OF MATERIAL FACTS .........................................2

      A.    The Federal Home-Distilling Prohibition ...................................................2

      B.    The Prohibition Prevents Mr. Ream from Distilling Whiskey at Home ..........4

      C.    Procedural History...................................................................................6

STANDARD APPLICABLE TO CROSS-MOTION FOR SUMMARY JUDGMENT ....................6

ARGUMENT .......................................................................................................................7

      I.    Mr. Ream Has Standing To Challenge the Prohibition......................................7

      II.    The Federal Home-Distilling Prohibition Is Unconstitutional....................................10

      A.    The Prohibition Is Not Justified by Congress's Taxing Power.........................10

      B.    The Prohibition Is Not Justified by Congress's Commerce Clause Power ....16

CONCLUSION....................................................................................................................20

## TABLE OF AUTHORITIES

**Cases:**

*Afroyim v. Rusk,*
   387 U.S. 253 (1967)......................................................................................15

*Am. C.L. Union v. Nat'l Sec. Agency,*
   493 F.3d 644 (6th Cir. 2007)............................................................................7

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)........................................................................................9

*Babbitt v. United Farm Workers Nat. Union,*
   442 U.S. 289 (1979)........................................................................................8

*Block v. Canepa,*
   2021 WL 615197 (S.D. Ohio Feb. 17, 2021) ...............................................10

*Carney v. Adams,*
   592 U.S. 53 (2020)......................................................................................9, 10

*Crawford v. United States Dep't of Treasury,*
   868 F.3d 438 (6th Cir. 2017)...........................................................................8

*Felsenheld v. United States,*
   186 U.S. 126 (1902)......................................................................................12

*Foreman v. United States,*
   255 F. 621 (4th Cir. 1918) ............................................................................12

*Georgia Pac., LLC v. Heavy Machines, Inc.,*
   2010 WL 2026670 (M.D. La. May 20, 2010)...............................................6

*Goldstein v. Miller,*
   488 F. Supp. 156 (D. Md. 1980) ..................................................................12

*Gonzalez v. Raich,*
   545 U.S. 1 (2005).......................................................................2, 17, 18, 20

*Helvering v. City Bank Farmers Tr. Co.,*
   296 U.S. 85 (1935)........................................................................................11

*Hobby Distillers Assoc. v. TTB,*
   Case No. 4:23-cv-1221 (N.D. Tex. Apr. 8, 2024)...........................................9

*Kiser v. Reitz,*
   765 F.3d 601 (6th Cir. 2014)...........................................................................8

*License Tax Cases,*
    72 U.S. 462 (1866) ............................................................................................ 15, 16

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ................................................................................................ 7

*Marbury v. Madison,*
    5 U.S. (1 Cranch) 137 (1803) ............................................................................ 10

*McCulloch v. Maryland,*
    4 Wheat. 316 (1819) ................................................................................ 11, 15, 16

*McKay v. Federspiel,*
    823 F.3d 862 (6th Cir. 2016) ................................................................................ 8

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) ................................................................................................ 7

*Miller v. Ohio C.R. Comm'n,*
    2022 WL 1061938 (S.D. Ohio Apr. 8, 2022) ...................................................... 6

*Morris v. United States,*
    161 F. 672 (8th Cir. 1908) .................................................................................. 15

*Nat'l Fed'n of Indep. Bus. v. Sebelius,*
    567 U.S. 519 (2012) ...................................................................................... 7, 15, 19

*Online Merchants Guild v. Cameron,*
    995 F.3d 540 (6th Cir. 2021) .............................................................................. 8, 9

*Pedigo v. Austin Rumba, Inc.,*
    722 F. Supp. 2d 714 (W.D. Tex. 2010) ................................................................ 6

*Peoples Rts. Org., Inc. v. City of Columbus,*
    152 F.3d 522 (6th Cir. 1998) ............................................................................ 7, 8

*Plunderbund Media, LLC v. DeWine,*
    753 F. App'x 362 (6th Cir. 2018) ........................................................................ 8

*Redhawk Glob., LLC v. World Projects Int'l,*
    2012 WL 2018528 (S.D. Ohio June 5, 2012) ...................................................... 6

*Reynolds v. United States,*
    289 F.2d 698 (10th Cir. 1961) .............................................................................. 9

*Ripper v. United States,*
    178 F. 24 (8th Cir. 1910) .................................................................................... 12

*Rossi v. United States*,
    289 U.S. 89 (1933) ........................................................................................................ 10

*Sabri v. United States*,
    541 U.S. 600 (2004) ...................................................................................................... 11

*Savage v. Gee*,
    665 F.3d 732 (6th Cir. 2012) .......................................................................................... 8

*Shelby Cnty., Ala. v. Holder*,
    570 U.S. 529 (2013) ...................................................................................................... 14

*Sonzinsky v. United States*,
    300 U.S. 506 (1937) ...................................................................................................... 13

*Steffel v. Thompson*,
    415 U.S. 452 (1974) ........................................................................................................ 8

*Steward Mach. Co. v. Davis*,
    301 U.S. 548 (1937) ...................................................................................................... 11

*Stilinovic v. United States*,
    336 F.2d 862 (8th Cir. 1964) ........................................................................................ 12

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ........................................................................................................ 8

*Thomas More L. Ctr. v. Obama*,
    651 F.3d 529 (6th Cir. 2011) .......................................................................................... 7

*United States v. Comstock*,
    560 U.S. 126 (2010) ...................................................................................................... 11

*United States v. Dahir*,
    275 F. Supp. 83 (D. Minn. 1967) .................................................................................. 9

*United States v. Dewitt*,
    76 U.S. 41 (1869) ............................................................................................... 1, 12, 13

*United States v. Goldberg*,
    225 F.2d 180 (8th Cir. 1955) ........................................................................................ 12

*United States v. Halter*,
    402 F. Supp. 2d 856 (S.D. Ohio 2005) ........................................................................ 18

*United States v. Lewis*,
    270 F. Supp. 807 (S.D.N.Y. 1967) ................................................................................ 9

*United States v. Lopez,*
    514 U.S. 549 (1995)..........................................................................................17

*United States v. Morrison,*
    529 U.S. 598 (2000).......................................................................10, 11, 14, 20

*United States v. Rife,*
    33 F.4th 838 (6th Cir. 2022) .....................................................................17, 19

*United States v. Thomas,*
    216 F. Supp. 942 (N.D. Cal. 1963) ................................................................9

*United States v. Thompson,*
    361 F.3d 918 (6th Cir. 2004).........................................................................13

*United States v. West,*
    328 F.2d 16 (2d Cir. 1964) ..............................................................................9

*United States v. Whitehead,*
    424 F.2d 446 (6th Cir. 1970)...........................................................................9

*W.P. Carey, Inc. v. Bigler,*
    2019 WL 1382898 (S.D.N.Y. Mar. 27, 2019) ...............................................6

**Constitution, statutes, and rules:**

15 U.S.C. §§ 68 *et seq.*.............................................................................................19

15 U.S.C. §§ 1191 *et seq.*.........................................................................................19

15 U.S.C. §§ 2051 *et seq.*.........................................................................................19

21 U.S.C. §§ 301 *et seq.*...........................................................................................19

21 U.S.C. §§ 2101 *et seq.*.........................................................................................19

21 U.S.C. §§ 2201 *et seq.*.........................................................................................19

26 U.S.C. § 5042......................................................................................................3

26 U.S.C. § 5053......................................................................................................3

26 U.S.C. § 5171......................................................................................................3

26 U.S.C. §§ 5178 *et seq.*...........................................................................................3

26 U.S.C. § 5179....................................................................................................14

26 U.S.C. § 5181......................................................................................................3

26 U.S.C. §§ 5601 *et seq.*........................................................................................2, 3, 10, 14

26 U.S.C. § 5712............................................................................................................14

27 U.S.C. § 203..............................................................................................................17

29 U.S.C. §§ 201 *et seq.*.............................................................................................19

29 U.S.C. §§ 651 *et seq.*.............................................................................................19

42 U.S.C. §§ 201 *et seq.*.............................................................................................19

42 U.S.C. §§ 1301 *et seq.*...........................................................................................19

42 U.S.C. §§ 1751 *et seq.*...........................................................................................19

42 U.S.C. §§ 1771 *et seq.*...........................................................................................19

42 U.S.C. §§ 18001 *et seq.*.........................................................................................19

Fed. R. Civ. P. 56..............................................................................................................6

13 Stat. 223 (1864).........................................................................................................15

U.S. Const. Art. I, § 8, cl. 3.....................................................................................*passim*

U.S. Const. Art. I, § 8, cl. 18.............................................................................10, 11, 20

**Miscellaneous:**

73 Fed. Reg. 26200, 26206 (2008)....................................................................................3

Mary Miley Theobald, *When Whiskey Was the King of Drink*, The Colonial
Williamsburg Journal (Summer 2008)...........................................................................1

Patrick Given, PhD Thesis, MUI Maynooth, *Calico to Whiskey: A Case Study on the
Development of the Distilling Industry in the Naas Revenue Collection District, 1700–1921*
(Aug. 2011)....................................................................................................................1

## INTRODUCTION

John Ream seeks to distill small quantities of whiskey in his own home for his and his wife's own personal consumption. Home distilling was a tremendously popular hobby during our Nation's founding,[1] viewed as akin to home breadmaking.[2] However, now federal law prohibits—on pain of severe criminal penalties—anyone from distilling even one drop of alcohol at home. It is a bedrock principle of constitutional law that the federal government is one of limited, enumerated powers, and none of those powers permits Congress to criminalize distilling small quantities of alcohol in one's own home for personal consumption.

The federal home-distilling prohibition does not fall within Congress's taxing power or authority to regulate interstate commerce, as defendants contend. As to the taxing power, the prohibition actually *prevents* Mr. Ream from engaging in a taxable activity and thereby paying the federal tax on distilled spirits. Although defendants appear to claim that prohibiting home distilling might somehow increase tax revenue from the commercial production of distilled spirits, the Supreme Court rejected a materially identical argument as "too remote and uncertain" in *United States v. Dewitt*, 76 U.S. 41 (1869), where the government argued that a statute prohibiting the sale of certain illuminating oils "was in aid and support of the internal revenue tax imposed on other illuminating oils," on the theory that the prohibition would increase sales of those other oils and the resulting tax revenue, *id.* The illuminating oils prohibition was not a "plainly adapted" means of collecting taxes, *id.* and neither is the federal home-distilling prohibition.

As to the Commerce Clause, defendants concede (Mem., ECF 13 at PageID 89) that the federal home-distilling prohibition is not itself a regulation of interstate commerce, either facially or

---

[1] *See* Mary Miley Theobald, *When Whiskey Was the King of Drink*, The Colonial Williamsburg Journal (Summer 2008).

[2] Patrick Given, PhD Thesis, MUI Maynooth, *Calico to Whiskey: A Case Study on the Development of the Distilling Industry in the Naas Revenue Collection District, 1700–1921*, 79 n.44 (Aug. 2011).

as applied to Mr. Ream. While defendants claim that the prohibition supports Congress's "comprehensive" regulation of the distilled spirits industry, they fail to identify any specific regulation of interstate commerce in distilled spirits that the prohibition supports. If accepted, defendants' position would markedly expand the scope of the Commerce Clause authority set out in *Gonzalez v. Raich*, 545 U.S. 1 (2005), where the Supreme Court upheld a prohibition of marijuana cultivation because it supported Congress's complete prohibition of interstate commerce in marijuana, *id.* at 18, 19–22. By contrast, Congress has not prohibited interstate commerce in distilled spirits, nor do defendants identify any other federal regulation of interstate commerce threatened by home distilling. Defendants also never explain how home distilling for personal consumption would have any discernable impact on interstate commerce in distilled spirits, let alone a substantial one. And if *Raich*'s understanding of Congress's authority reaches so far, then *Raich* is wrong and ought to be overruled.

If Congress can prohibit Mr. Ream from distilling small quantities of alcohol in his own home for his personal consumption, it could likewise prohibit everything from home gardening and home cooking to home-based employment, absolutely eviscerating the Constitution's clearly-defined limits on federal authority. The federal home-distilling prohibition accordingly is unconstitutional, both facially and as applied to those who seek to distill small quantities at home for personal consumption like Mr. Ream. And Mr. Ream clearly has standing to challenge the prohibition because it inflicts a current injury on him by preventing him from home distilling. The Court should therefore deny defendants' motion to dismiss and grant Mr. Ream's motion for summary judgment.

## BACKGROUND AND STATEMENT OF MATERIAL FACTS

### A.     The Federal Home-Distilling Prohibition

Federal law prohibits individuals from distilling alcohol in their own homes, even if solely for their own personal consumption. Specifically, 26 U.S.C. § 5601(a)(6) imposes severe criminal penalties on any person who "uses, or possesses with intent to use, any still, boiler, or other utensil for the

purpose of producing distilled spirits…in any dwelling house, or in any shed, yard, or inclosure connected with such dwelling house (except as authorized under section 5178(a)(1)(C)).["3] Section 26 U.S.C. § 5171 further requires every distiller to obtain a license to operate a "distilled spirits plant," and section 5178(a)(1)(B) provides that "[n]o distilled spirits plant for the production of distilled spirits shall be located in any dwelling house." Collectively, this memorandum will refer to sections 5601(a)(6) and 5178(a)(1)(B) as the "federal home-distilling prohibition." Penalties for violation of these provisions are fines up to $10,000 or imprisonment up to five years, or both, for each offense. 26 U.S.C. § 5601.

There is no personal-consumption exception to this prohibition. As defendants have explained: "Under Federal law (26 U.S.C. 5171), distilled spirits may only be produced at a registered distilled spirits plant," and "a person may not distill spirits at home for personal use." 73 Fed. Reg. 26200, 26206 (2008). Defendants' current public guidance explains that "Federal law strictly prohibits individuals from producing distilled spirits at home" and that doing so "can expose you to Federal charges for serious offenses and lead to consequences including…criminal penalties" like imprisonment. Alcohol Tax and Trade Bureau (TTB), Home Distilling (last updated Mar. 7, 2024).[4]

The federal home-distilling prohibition sharply contrasts with the treatment of home brewing and home winemaking under federal law. 26 U.S.C. § 5053(e) explicitly authorizes individuals to "produce beer for personal or family use and not for sale" and 26 U.S.C. § 5042(a)(2) does the same for wine. Defendants also permit individuals to distill alcohol exclusively for fuel use (not beverage use) on residential property, even though the process for distilling alcohol for fuel and beverage use is the same. *See* Compl., ECF 1 at PageID 4 (¶ 13); 26 U.S.C. § 5181.[5]

---

[3] Section 5178(a)(1)(C) grandfathers in certain non-compliant locations not relevant here.

[4] *Available at* https://www.ttb.gov/distilled-spirits/penalties-for-illegal-distilling.

[5] Defendants claim that distilling alcohol for fuel use is subject to the home-distilling prohibition, Mem., ECF 13 at PageID 78, but the application for an alcohol fuel plant permit contains a sample

**B.    The Prohibition Prevents Mr. Ream from Distilling Whiskey at Home**

1.    Mr. Ream was raised in Granville, Ohio, and graduated from the University of Cincinnati with a degree in aerospace engineering.[6] Compl., ECF 1 at PageID 4 (¶ 15). After college, Mr. Ream worked for Boeing in Seattle, until his life took an unexpected turn. *Id.* Mr. Ream's now-wife, Kristin, gave him a home-brewing kit after the couple became engaged. *Id.* ¶ 16. According to Mr. Ream, "[b]rewing was the perfect combination of art and science, and my engineering brain just totally latched onto it." *Id.* ¶ 16. While his first few batches were admittedly "not the best," his brewing talent and technique improved through continuous experimentation. *Id.* ¶ 17. Mr. Ream used his engineering background to improve the quality of his beer and the efficiency of the process to the point where he was creating subtle, interesting, and varied types of beer that he believed were competitive with the highest quality craft brews on the market. *Id.*

After home brewing for nine years, Mr. Ream developed an "entrepreneurial itch" and wanted to own his own business—his family's American Dream. *Id.* ¶ 18. He returned home to Ohio in order to launch Trek Brewing Company ("Trek"), which he and Kristin opened to the public in 2018 as a brewery and taproom, serving beer and food. *Id.* ¶ 19. The name was inspired by their passion for the outdoors, and, as Mr. Ream explained, "[s]tarting the brewery is the next step on our adventure. It's our journey, our trek." *Id.*

Mr. Ream started Trek to "be a vehicle for good in the world." *Id.* ¶ 21. Trek hosts different nonprofits each week through its "Trek Together" program, donating 10 percent of its taproom sales to the nonprofits and giving them a platform to highlight their missions. *Id.* Through the Trek

---

diagram of a residential farm with a still shed illustrating a permissible location. TTB, Application for Alcohol Fuel Producer Permit, at 1, https://www.ttb.gov/system/files?file=images/pdfs/forms/f511074.pdf (last visited May 23, 2024).

[6] For simplicity, this memorandum cites the allegations in the complaint. All cited allegations are evidenced by the Declaration of John Ream, attached hereto as Exhibit A.

Together Community Fund, Trek further supports local organizations. *Id.* Family is also important to Mr. Ream, as he and Kristin have two young sons. Trek is a family-friendly place, with a selection of kids' meals, board games, and a "kids' corner" with a chalk wall and toys. *Id.* ¶ 22. Trek hosts family-friendly events, from gingerbread-house building around the holidays and annual organized runs for charity to weekly trivia. *Id.* Mr. Ream is proud that, through hard work, he has turned his home-brewing hobby into a community- and family-oriented business that now financially supports his own family and many others, too. *Id.* ¶ 23.

2.     Mr. Ream seeks to apply his engineering background and brewing experience to experiment with distilling small quantities of alcohol in his own home, like he did during his nine years of home brewing. *Id.* ¶ 26. He favors rye and Bourbon and intends to begin by attempting to distill those liquors. *Id.* Mr. Ream has taken the initial steps that he may lawfully take to engage in home distilling. *Id.* ¶ 27. Specifically, he has extensively researched and studied the process of distilling and determined that he is prepared to take every step necessary to responsibly home distill, including obtaining the appropriate equipment and raw materials. *Id.* The next step, which federal law prohibits him from taking, is to obtain a still, which are widely available for sale. Ream Decl. ¶ 12.

Mr. Ream's home distilling would comply with all applicable state and federal laws except the federal home-distilling prohibition. Compl. ¶ 28. Mr. Ream would obtain all necessary state and federal licenses for, and pay all applicable taxes on, his home distilling. *Id.* Mr. Ream has always paid his taxes and never had any dispute with the Internal Revenue Service. *Id.* Mr. Ream would not sell the spirits he distills or otherwise offer them to the public. *Id.* ¶ 25. The only other person who would consume the spirits would be his wife. *Id.* ¶ 37.

Mr. Ream would engage in home distilling but for the federal home-distilling prohibition. *Id.* ¶ 24. As a responsible husband, father, and small-business owner, Mr. Ream will not break the law. *Id.* ¶ 29. He also fears severe criminal penalties if he simply possesses a still or begins to distill spirits. *Id.*

¶ 30. The federal home-distilling prohibition accordingly prevents Mr. Ream from distilling small quantities of alcohol in his own home for his own personal consumption. *Id.* ¶ 29.

### C.     Procedural History

On January 30, 2024, Mr. Ream filed the instant lawsuit claiming that the federal home-distilling prohibition exceeds Congress's constitutional authority and seeking declaratory and injunctive relief against the prohibition. Compl., ECF 1, Page ID 1. Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. Specifically, defendants contend that Mr. Ream lacks standing (Mem., ECF 13 at PageID 80–84) and that the prohibition falls within Congress's taxing power (*id.* at PageID 85–89) and Commerce Clause authority (*id.* at PageID 89–92).

### STANDARD APPLICABLE TO CROSS-MOTION FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A motion for summary judgment may be filed "at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b).[7]

---

[7] Summary judgment is appropriate at this time because, as defendants agree, "the issues in this case are predominantly legal," Joint Motion, ECF No. 17, at PageID 100, such that no purpose would be served by discovery. Pre-answer motions for summary judgment are permitted and should be granted when the plaintiff can show that the undisputed facts entitle him to judgment as a matter of law. *See Redhawk Glob., LLC v. World Projects Int'l*, No. 2:11-CV-666, 2012 WL 2018528, at *2 (S.D. Ohio June 5, 2012) ("A party may move for summary judgment at any time."); *see also Miller v. Ohio C.R. Comm'n*, No. 2:21-CV-03973, 2022 WL 1061938, at *5 (S.D. Ohio Apr. 8, 2022) (granting motion for summary judgment before discovery); *W.P. Carey, Inc. v. Bigler*, No. 18-cv-585, 2019 WL 1382898, at *4 (S.D.N.Y. Mar. 27, 2019) (granting plaintiff's day-one motion for summary judgment); *Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 719 (W.D. Tex. 2010) (explaining that the "'rule allows a party to move for summary judgment at any time, even as early as the commencement of the action'" (quoting Fed. R. Civ. P. 56, 2009 Advisory Committee Note)); *Georgia Pac., LLC v. Heavy Machines, Inc.*, No. 07-cv-944, 2010 WL 2026670, at *2 (M.D. La. May 20, 2010) ("[T]he Court may grant summary judgment even before the defendant has filed an answer.").

# ARGUMENT

## I. Mr. Ream Has Standing To Challenge the Prohibition

Mr. Ream is prevented from distilling small quantities of alcohol in his own home for his own personal consumption because of the unconstitutional federal home-distilling prohibition, and if he obtains the relief sought in this lawsuit, he would be able to and will home distill. Mr. Ream readily satisfies the "irreducible constitutional minimum" elements of standing: He has an "injury in fact" (his present inability to home distill) with a "causal connection" to the challenged conduct (the inability is due to the prohibition) that is "likely" to be "redressed by a favorable decision" (holding the prohibition invalid will enable him to home distill). *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotation marks omitted). Defendants' contrary arguments miss the mark.

As an initial matter, defendants are wrong that Mr. Ream needs to establish that he "fac[es] a[] 'certainly impending' adverse action by Defendants." Mem., ECF 13 at PageID 81. Mr. Ream's injury-in-fact is an "actual present harm" because he is currently unable to home distill. *See Thomas More L. Ctr. v. Obama*, 651 F.3d 529, 535 (6th Cir. 2011), *abrogated on other grounds by Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012). Mr. Ream's "own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution," but it "does not eliminate Article III jurisdiction." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007). The only question in such cases is whether the plaintiff's "threat-eliminating behavior was effectively coerced," *id.*, or was instead "incidental to the alleged wrong," *Am. C.L. Union v. Nat'l Sec. Agency*, 493 F.3d 644, 657 (6th Cir. 2007). Here, defendants concede that the federal home-distilling prohibition unambiguously prohibits Mr. Ream from home distilling, and thus it directly coerces him to refrain from the activity. Individuals facing a "Hobson's choice" between obeying a statute that "requires an immediate and significant change" in their intended conduct or violating a statute "with serious penalties attached to noncompliance" are prototypical plaintiffs with standing. *Peoples Rts. Org., Inc. v. City of Columbus*, 152 F.3d 522, 529 (6th Cir. 1998)

7

(quotation marks and citation omitted). Mr. Ream is "allowed to prefer official adjudication to public disobedience" of the prohibition. *Id.* at 530 (quotation marks and citation omitted).

Defendants' cases address plaintiffs' standing to challenge statutes that do not obviously apply to their conduct. For example, the plaintiffs in *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979), challenged a statute prohibiting certain "dishonest, untruthful and deceptive" statements, and the plaintiffs in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), challenged a statute prohibiting "false statements" during a campaign; neither set of plaintiffs admitted their statements were false. *See also Steffel v. Thompson*, 415 U.S. 452 (1974) (challenging "bad faith" enforcement of trespass statute). These cases have developed a standard for determining whether "allegations of subjective chill" (or a future threat of prosecution from such statutes) constitutes an "injury-in-fact."[8] *Plunderbund Media, LLC v. DeWine*, 753 F. App'x 362, 366 (6th Cir. 2018); *see also Savage v. Gee*, 665 F.3d 732, 740 (6th Cir. 2012). This standard is inapposite when the challenged statute objectively proscribes plaintiffs' conduct and the injury-in-fact is plaintiffs' resulting present inability to engage in that conduct.

Even if the standard developed by defendants' cases applied, Mr. Ream satisfies it. Conduct proscribed by a statute in violation of the Commerce Clause is "affected with a constitutional interest." *Online Merchants Guild v. Cameron*, 995 F.3d 540, 549 (6th Cir. 2021) (dormant Commerce Clause claim). Moreover, "there is at least some evidence of past enforcement actions," and defendants have not "disavowed enforcement" against Mr. Ream. *Id.* at 550–51; *see also Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014) ("Such a threat is considered especially substantial when the administrative agency has not disavowed enforcement." (cleaned up)). The government has prosecuted individuals who distill

---

[8] In *Crawford v. United States Dep't of Treasury*, 868 F.3d 438 (6th Cir. 2017), no plaintiff had alleged any present "direct harm" caused by the challenged statute, *id.* at 460, and the Court applied the *Driehaus* standard to plaintiffs' alleged injury-in-fact based on their fear of future prosecution, *id.* at 458. *See also McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016) (describing the *Driehaus* test as relevant to "allegation[s] of future injury").

alcohol on residential premises. *See* Compl., ECF 1 at PageID 7 (¶ 31).[9] Defendants' current public

guidance states that "[p]roducing distilled spirits at any place other than a TTB-qualified distilled spirits

plant can expose you to Federal charges for serious offenses." TTB, Home Distilling, *supra*. In 2014,

defendants conducted a joint operation with state officials that led to the arrest of 8 home distillers

and the seizure of 46 stills, and defendants sent letters to 8,136 home distillers warning of "legal

consequences associated with the illegal production of distilled spirits." Decl. of Robert M. Angelo,

Director, Trade Investigations Division, TTB, ECF No. 39-1, *Hobby Distillers Assoc. v. TTB*, Case No.

4:23-cv-1221 (N.D. Tex. Apr. 8, 2024); Jacob Sullum, Reason, *Feds Take a Sudden Interest in Busing Home*

*Distillers* (July 14, 2014) ("Sullum").[10] Accordingly, Mr. Ream's "fear of prosecution is far from

'imaginary or wholly speculative.'" *Online Merchants Guild*, 995 F.3d at 552 (citation omitted).

Defendants also contend (Mem., ECF 13 at Page ID 83) that Mr. Ream's "allegation that '[h]e

would engage in home distilling' but for the challenged statutory provisions is not entitled to an

assumption of truth." Putting aside this unwarranted attack on Mr. Ream's integrity, Mr. Ream's

extensive experience with brewing and study of distilling more than render this allegation "plausible."

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Defendants fault Mr. Ream for not purchasing "equipment

or materials" to distill or applying for a "federal distilled spirits plant registration and permit." Mem.,

ECF 13 at PageID 82. But Article III standing principles do not require Mr. Ream to engage in the

"futile gesture" of applying for a permit that the challenged prohibition renders him ineligible to

receive. *Carney v. Adams*, 592 U.S. 53, 66 (2020) (quotation marks and citation omitted). Much less do

---

[9] Defendants note that these prosecutions did not allege a violation of section 5601(a)(6), Mem., ECF 13 at PageID 84, but the government has prosecuted many individuals for violating that subsection. *See, e.g.*, *United States v. Whitehead*, 424 F.2d 446 (6th Cir. 1970); *United States v. West*, 328 F.2d 16 (2d Cir. 1964); *Reynolds v. United States*, 289 F.2d 698 (10th Cir. 1961); *United States v. Dahir*, 275 F. Supp. 83 (D. Minn. 1967); *United States v. Lewis*, 270 F. Supp. 807 (S.D.N.Y. 1967); *United States v. Thomas*, 216 F. Supp. 942 (N.D. Cal. 1963).

[10] *Available at* https://reason.com/2014/07/15/feds-take-a-sudden-interest-in-busting-h/.

they require him to purchase equipment that he cannot legally use and the possession of which is unlawful and could subject him to criminal prosecution. *See* 26 U.S.C. § 5601(a)(1) (criminalizing possession of "any still…which is not registered"); *id.* § 5601(a)(6) (criminalizing "possess[ion] with intent to use… any still…or other utensil for the purpose of producing distilled spirits…in any dwelling house"); *Rossi v. United States*, 289 U.S. 89 (1933) ("[P]roof of the custody or control of a still for unlawful distillation of alcoholic spirits is enough to give rise to an inference of lack of registration and failure to give bond."); Sullum, *supra* ("Purchasing as little as a simple boiling kettle from one of these companies may well earn you a visit from armed TTB agents.").

Plaintiffs need not "plan illegal activity with specificity in order to be able to challenge the constitutionality of a law." *Block v. Canepa*, No. 20CV-3686, 2021 WL 615197, at *4 (S.D. Ohio Feb. 17, 2021). They need only show that they are "able and ready" to engage in the activity should they obtain the relief they seek, *Carney*, 592 U.S. at 60, which Mr. Ream plainly is.

## II.    The Federal Home-Distilling Prohibition Is Unconstitutional

"The powers of the legislature are defined and limited; and that those limits may not be mistaken, or forgotten, the constitution is written." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176 (1803) (Marshall, C. J.). Accordingly, "[e]very law enacted by Congress must be based on one or more of its powers enumerated in the Constitution," and those powers have "judicially enforceable outer limits." *United States v. Morrison*, 529 U.S. 598, 607, 610 (2000). Because the federal home-distilling prohibition does not fall within an enumerated power, it is unconstitutional facially and as applied to those who seek to distill small quantities of alcohol for personal consumption like Mr. Ream.

### A.    The Prohibition Is Not Justified by Congress's Taxing Power

The federal home-distilling prohibition does not fall within Congress's taxing power. The prohibition is not itself a tax, so the question is whether it is "necessary and proper for carrying into Execution" a tax. U.S. Const. Art. I, § 8, cl. 18. I. The Necessary and Proper Clause authorizes

measures "which are appropriate, which are plainly adapted to [carrying into execution an enumerated power], which are…consist[ent] with the letter and spirit of the constitution." *McCulloch v. Maryland*, 4 Wheat. 316, 421 (1819).[11] Here, the prohibition is neither "plainly adapted" nor "appropriate" to execute the tax on distilled spirits.

1.     The federal home-distilling prohibition is not "plainly adapted" to carrying into execution the tax on distilled spirits. Indeed, the prohibition *prevents* Mr. Ream from engaging in taxable activity (producing distilled spirits) and thereby paying the tax.

In the taxing power context, the Supreme Court has sometimes framed the Necessary and Proper Clause inquiry as whether a measure is "reasonably calculated to prevent avoidance of a tax." *Helvering v. City Bank Farmers Tr. Co.*, 296 U.S. 85, 90 (1935); *see also McCulloch*, 4 Wheat. at 423 (measure must be "really calculated to effect any of the objects intrusted to the government"). A measure is neither "plainly adapted" nor "reasonably calculated" simply because it has an "attenuated effect" on tax collection. *Morrison*, 529 U.S. at 615. A chain of causal inferences "must be controlled by some limitations lest, as Thomas Jefferson warned, congressional powers become completely unbounded by linking one power to another ad infinitum in a veritable game of 'this is the house that Jack built.'" *United States v. Comstock*, 560 U.S. 126, 150 (2010) (Kennedy, J., concurring). Instead, a measure must have "an immediate and appropriate relation" to an authorized object and not merely "a *tendency* only to *promote*" it. James Madison, The Report of 1800;[12] *see also Sabri v. United States*, 541 U.S. 600, 613 (2004) (Thomas, J., concurring) (the Clause requires an "obvious, simple, and direct relation").

---

[11] Defendants cite (Mem., ECF 13 at PageID 85) *Steward Mach. Co. v. Davis*, 301 U.S. 548, 581–82 (1937), which notes that the *subject matter* Congress can tax is "comprehensive." The case does not address Congress's authority to facilitate tax collection under the Necessary and Proper Clause.

[12]     *Available at* https://founders.archives.gov/?q=%22necessary%20and%20proper%22&s=1511311111&r=71 (last visited May 23, 2024).

Defendants' cited cases (Mem., ECF 13 at PageID 85–86) illustrate the sorts of measures that are "plainly adapted" to tax collection. *Stilinovic* upheld liquor-labeling requirements that enabled the government to perform "a check upon whether the bottle contains the whiskey upon which the tax was paid as manifested by the tax stamp" and thus bore "a reasonable relationship to the collection of revenue." *Stilinovic v. United States*, 336 F.2d 862, 864–65 (8th Cir. 1964). *Felsenheld* similarly upheld a cigarette-labelling provision (in support of a tax on cigarettes) requiring that the contents in cigarette packages match the label. *Felsenheld v. United States*, 186 U.S. 126, 133 (1902). *Foreman* upheld a provision that "b[ore] directly on the revenue" received from an opium tax by requiring opium to be sold with "a written order…on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue." *Foreman v. United States*, 255 F. 621, 622 (4th Cir. 1918). And *Ripper* and *Goldstein* upheld provisions regulating the size of oleomargarine packages and liquor bottles, respectively, because having a "limited number of consistent and uniform sizes" facilitated collection of the tax upon these articles. *Goldstein v. Miller*, 488 F. Supp. 156, 170 (D. Md. 1980); *Ripper v. United States*, 178 F. 24, 28 (8th Cir. 1910).[13]

By contrast, in *United States v. Dewitt*, 76 U.S. 41 (1869), the Supreme Court invalidated a statute providing that "no person shall mix for sale naphtha and illuminating oils, or shall knowingly sell or keep for sale, or offer for sale such mixture, or shall sell or offer for sale oil made from petroleum for illuminating purposes." *Id.* at 42 (quoting 14 Stat. 484). The government argued that "the prohibition of the sale of the illuminating oil described in the [statute] was in aid and support of the internal revenue tax imposed on other illuminating oils." *Id.* at 44. The Court explained that, "[i]f the prohibition, therefore, has any relation to taxation at all, it is merely that of increasing the production

---

[13] *United States v. Goldberg*, 225 F.2d 180 (8th Cir. 1955), (cited Mem., ECF 13 at PageID 87) held that regulations regarding the labeling of distilled spirits fell within the Treasury's statutory authority to "protect the revenue" for reasons similar to *Stilinovic*. *Id.* at 188.

and sale of other oils, and, consequently, the revenue derived from them, by excluding from the market the particular kind described." *Id.* But this possibility was "too remote and too uncertain to warrant [the Court] in saying that the prohibition is an appropriate and plainly adapted means for carrying into execution the power of laying and collecting taxes." *Id.*

Similarly, in *United States v. Thompson*, 361 F.3d 918 (6th Cir. 2004), the Sixth Circuit considered an as-applied challenge to a provision of the National Firearms Act criminalizing the possession of an unregistered firearm. The Supreme Court had upheld the registration provisions as a facial matter in *Sonzinsky v. United States*, because registration facilitated collection of the transfer tax on firearms. 300 U.S. 506, 513 (1937). The criminal defendant in *Thompson* argued that the provision was unconstitutional as applied to him because the "firearms" he possessed were Molotov cocktails, which he claimed the Secretary would have refused to register. 361 F.3d at 921. The Sixth Circuit rejected his challenge only because he had never "sought to register the firearms, but…been denied permission to do so." *Id.* at 921–22. However, the court explained that if the Secretary *had* prohibited him from registering the Molotov cocktails, then "it would be difficult to perceive the rationality of the statute" as a measure in aid of tax collection as applied to the defendant. *Id.*

The federal home-distilling prohibition is even further afield from taxation than the prohibition on illuminating oils rejected in *Dewitt* and the irrational prohibition of the possession an impossible-to-register firearm in *Thompson*. The federal home-distilling prohibition not only fails to facilitate tax-collection from Mr. Ream or any other home distiller, it actually accomplishes the opposite: it prevents Mr. Ream from distilling alcohol and thus paying the tax on distilled spirits.[14]

---

[14] Defendants note that 26 U.S.C. §§ 5711–5713 impose "qualification requirements for manufacturers and importers of tobacco products" subject to taxation, which "may have the practical effect of preventing some individuals from lawfully engaging in taxable activity." Mem., ECF 13 at PageID 85 (quotation marks omitted). That Congress may have the power to bar felons convicted of tobacco-related crimes from participation in a tobacco-taxing scheme that depends on their honest reporting and compliance says nothing about the constitutionality of a blanket home-distilling prohibition. Nor is it apparent that the tobacco scheme's qualification requirements, as a practical matter, serve to

Defendants theorize that home distilling might cause a "[d]iversion of the revenue from the tax on distilled spirits." Mem., ECF 13 at PageID 86. They do not specify how, exactly, home distilling would decrease tax revenue and instead merely allude to an "urgent necessity of preventing concealment of stills" in the 1800s. Mem., ECF 13 at PageID 87. But the federal home-distilling prohibition "imposes current burdens and must be justified by current needs." *Shelby Cnty., Ala. v. Holder*, 570 U.S. 529, 536 (2013) (quotation marks and citation omitted). Mr. Ream, like other would-be home distillers, wants to distill small amounts of spirits for personal consumption, not to engage in a non-existent black market for miniscule quantities of bootleg booze. Moreover, as defendants note, the Internal Revenue Code contains numerous recordkeeping measures that facilitate collection of the tax on distilled spirits. Mem., ECF 13 at PageID 88 (citing *United States v. Ulrici*, 111 U.S. 38 (1884)). These provisions include a registration requirement for every still (26 U.S.C. § 5179) and the criminal prohibition on possessing an unregistered still (26 U.S.C. § 5601(a)(1)). Under these provisions, home distillers like Mr. Ream must register their stills before producing even one drop of alcohol. Compl., ECF 1 at PageID 6 (¶ 28). Defendants do not and cannot explain how the federal home-distilling prohibition is necessary to prevent "concealment of stills" that are *registered* with Treasury. Ultimately, defendants fail to establish that the prohibition has even an "attenuated effect" on tax revenue, let alone that its prohibition of a taxable transaction is "plainly adapted" to facilitate tax collection. *Morrison*, 529 U.S. at 615.

2. The federal home-distilling prohibition also is not an "appropriate" means, "consist[ent] with the letter and spirit of the constitution," of facilitating collection of the tax on

---

prevent taxable activity, as opposed to proscribing certain persons from running businesses engaging in that activity. *See* 26 U.S.C. § 5712(3) (imposing qualifications on "any officer, director, or principal stockholder" of a corporation and on any partner of a partnership). In any event, defendants identify no case approving the tobacco scheme's qualification requirements, let alone one addressing an as-applied challenge in circumstances where the qualifications serve to prevent taxable activity rather than facilitate taxation.

distilled spirits. *McCulloch*, 4 Wheat. at 421. The prohibition's regulation of what Mr. Ream can do in his own home for his own personal use is not merely "derivative of, and in service to" the tax on distilled spirits, but a "substantial expansion of federal power" to the private sphere. *NFIB*, 567 U.S. at 560; *see also Afroyim v. Rusk*, 387 U.S. 253, 260 (1967) ("[I]f the Constitution had intended to give to Congress so delicate a power, it would have been expressly granted." (quotation marks omitted)).

*Morris v. United States*, 161 F. 672 (8th Cir. 1908), is instructive. In that case, the Eighth Circuit considered a challenge to a conviction under the oleomargarine tax law because the indictment did not negate the statute's exception for producing oleomargarine solely for personal consumption. In reaching its holding, the Court indicated that the personal-consumption exception was constitutionally required: "It would challenge our conception of the constitutional powers of Congress for it to undertake to tax a person as a manufacturer of oleomargarine whose housewife, as a matter of fancy or taste, should color white oleomargarine so as to give it the hue of yellow butter, for the sole use of the family table." *Id.* at 679. In this case, the federal home-distilling prohibition is even more dubious than a tax on a housewife making butter for her family because it entirely prohibits Mr. Ream from distilling at home, even though he would gladly pay the tax on his distilled spirits.

Relatedly, in the *License Tax Cases*, 72 U.S. 462 (1866), the Supreme Court considered the constitutionality of a statute requiring retailers selling lottery tickets and liquor to obtain a license, which facilitated payment of a special tax. 13 Stat. 223 (1864), as amended by 14 Stat. 98 (1866). The Supreme Court held that the statutes were constitutional, but only because the licenses gave the holders no authority to carry on such trades in violation of state law. *See License Tax Cases*, 72 U.S. at 470. The Court explained that the taxing power gives Congress "no power of regulation nor any direct control" over "commerce and trade." *Id.* at 470–71. "No interference by Congress with the business of citizens transacted within a State is warranted by the Constitution, except such as is strictly incidental to the exercise of powers clearly granted to the legislature," and "Congress cannot authorize

a trade or business within a State in order to tax it." *Id.* at 471. Here, the federal home-distilling provision exercises "direct control" over Mr. Ream's personal conduct—irrespective of the fact that state law permits it—and is not "strictly incidental" to the collection of the distilled spirits tax. Just like federal authorization of an activity in order to tax it exceeds Congress's taxing power, defendants' prohibition of an activity offends core state police powers and thus is inconsistent with the "letter and spirit of the constitution." *McCulloch*, 4 Wheat. at 421.

Defendants' taxing power argument has no limiting principle and, if accepted, would permit Congress to regulate or prohibit any activity under the guise of taxing it. If the federal home-distilling prohibition is an "appropriate" measure for collecting the tax on distilled spirits, so too would be federal grants of monopoly or occupational qualifications on any profession. *Contra License Tax Cases*, 72 U.S. at 470–71 (the taxing power gives Congress "no power of regulation nor any direct control" over "commerce and trade"). After all, concentration of industry would make it easier to collect taxes from that industry—IRS agents would only need to oversee one business instead of many—and occupational qualifications would ensure that persons of honorable, taxpaying character are engaged in trade. What is more, the federal government could prohibit self-employment on the theory that self-employed individuals are more likely to evade payroll and income taxes. According to defendants' logic, all such taxes raise "substantial revenue" and Congress therefore would have a "concordant interest" in adopting these measures "to protect that revenue." Mem., ECF 13 at PageID 88. But these measures do not fall "squarely within Congress's Taxing Power," Mem., ECF 13 at PageID 89, they instead clearly transgress it, and so too does the federal home-distilling prohibition.

## B. The Prohibition Is Not Justified by Congress's Commerce Clause Power

The federal home-distilling prohibition also does not fall within Congress's authority to "regulate Commerce…among the several States." U.S. Const. Art. I, § 8, cl. 3. As the Sixth Circuit recently explained, "commerce" means "trade and transportation thereof, as opposed to activities

preceding those things" like "manufacturing and agriculture." *United States v. Rife*, 33 F.4th 838, 842 (6th Cir. 2022). Defendants therefore cannot and do not claim that the prohibition falls within the first two "categories of activity that Congress may regulate under its commerce power": "the use of the channels of interstate commerce" and "the instrumentalities of interstate commerce, or persons or things in interstate commerce." *United States v. Lopez*, 514 U.S. 549, 588–59 (1995). Defendants instead argue (Mem., ECF 13 at PageID 89) that the prohibition falls within the "third category," which covers "activities that substantially affect interstate commerce." *Id.* But defendants attempt to extend this category beyond its outer limits by arguing that it authorizes the regulation of noncommercial intrastate activities that are not necessary to make a regulation of interstate commerce effective.

Defendants note that "Congress 'may regulate even noneconomic local activity if that regulation is a necessary part of a more general regulation of interstate commerce." *Gonzalez v. Raich*, 545 U.S. 1, 37 (2005) (Scalia, J., concurring). However, defendants fail to identify *any* regulation of interstate commerce that is supported by the federal home-distilling prohibition. Defendants argue only that the prohibition is "one piece of a statutory and regulatory scheme defining where distilling may and may not take place." Mem., ECF 13 at PageID 90. But they do not point to any specific regulation of interstate commerce in that "scheme" that the prohibition is necessary to make effective. Defendants' citation (Mem., ECF 13 at PageID 90) of the Federal Alcohol Administration Act is even further afield. That Act—which applies to those "engage[d] in the business of distilling distilled spirits, producing wine, [or] rectifying or blending distilled spirits or wine," 27 U.S.C. § 203—does not contain the prohibition, and defendants again fail to identify any specific regulation of interstate commerce in the Act that the prohibition supports.

This case is not controlled by *Raich*, as defendants contend. Mem., ECF 13 at PageID 89. *Raich* considered an as-applied challenge to Congress's prohibition of "the manufacture, distribution, or

17

possession of marijuana" from two individuals who grew marijuana at home for personal use. 545 U.S. at 14. The Court rejected their challenge based on the principle that "Congress can regulate purely intrastate activity…if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity." *Id.* at 18. Because marijuana was a "fungible commodity for which there is an established, albeit illegal, interstate market" and "homegrown marijuana tends to frustrate the federal interest in eliminating commercial transactions in the interstate market in their entirety," prohibiting home cultivation of marijuana fell within Congress's Commerce Clause authority. *Id.* at 18–19; *see also id.* at 42 (Scalia, J., concurring) ("Congress could reasonably conclude that its objective of prohibiting marijuana from the interstate market 'could be undercut' if those activities were excepted from its general scheme of regulation.")

Unlike in *Raich*, there is no federal regulation of interstate commerce in distilled spirits that would be "undercut" by Mr. Ream's home distilling. Congress has not prohibited interstate commerce in distilled spirits, and thus it cannot be said that "Congress can prohibit local [home distillation] in an effort to…halt interstate trade." *United States v. Halter*, 402 F. Supp. 2d 856, 861 (S.D. Ohio 2005) (quoting *United States v. Kallestad*, 236 F.3d 225, 231 (5th Cir. 2000)). There also are no "congressional findings in the statute or legislative history" that the prohibition is necessary to support any other potential regulation of interstate commerce in distilled spirits. *Id.* at 859. And, notwithstanding defendants' vague invocation of Congress's "comprehensive[] regulat[ion]" of the distilled spirits industry, Mem., ECF 13 at PageID 90, they never identify a specific regulation of interstate commerce that the prohibition supports. Because "the power to enact laws enabling effective regulation of interstate commerce can only be exercised in conjunction with congressional regulation of an interstate market" and "extends only to those measures necessary to make the interstate regulation effective," *Raich*, 545 U.S. at 38 (Scalia, J., concurring), the federal home-distilling prohibition does not fall within Congress's Commerce Clause authority.

Moreover, even defendants acknowledge that Congress cannot regulate intrastate noncommercial activities that, considered as a class, do not "substantially affect interstate commerce." Mem., ECF 13 at PageID 89 (quoting *Raich*, 545 U.S. at 17). Defendants never explain how the class of activity here would substantially affect interstate commerce in distilled spirits. Defendants note that "[d]istilled spirits are a multi-billion-dollar industry," Mem., ECF 13 at PageID 90, but they do not claim that home distilling would have even a discernable—much less a "substantial"—impact on that industry. Nor could they. There still exist "multi-billion-dollar" beer and wine industries notwithstanding home brewing and home winemaking.

If accepted, defendants' position would dramatically expand the scope of permissible regulation under the third category of Commerce Clause authority—a category that the Sixth Circuit previously has declined to extend because it already "depart[s] from the original meaning." *Rife*, 33 F.4th at 843. Permitting regulation of noncommercial intrastate activity that is not necessary to make effective any regulation of interstate commerce, so long as the regulation is part of a scheme that can be labeled "comprehensive" in some respect, would all but give Congress a "license to regulate an individual from cradle to grave." *NFIB*, 567 U.S. at 557. Congress "comprehensively" regulates practically everything. *See, e.g.*, 15 U.S.C. §§ 68 *et seq.* & 15 U.S.C. § 1191 *et seq.* (textiles); 15 U.S.C. §§ 2051 *et seq.* (consumer products); 21 U.S.C. §§ 301 *et seq.*, 21 U.S.C. §§ 2101 *et seq.*, & 21 U.S.C. §§ 2201 *et seq.* (food and cosmetics); 29 U.S.C. §§ 201 *et seq.* and 29 U.S.C. §§ 651 *et seq.* (employment); 42 U.S.C. §§ 1751 *et seq.* and 42 U.S.C. §§ 1771 *et seq.* (children's lunch and nutrition); 42 U.S.C. §§ 201 *et seq.*, 42 U.SC. 1301 *et seq.*, & 42 U.S.C. §§ 18001 *et seq.* (healthcare). According to defendants' logic, it would therefore fall within Congress's Commerce Clause authority to prohibit everything from home-based employment to home sewing, home health remedies, and home cooking. Absolutely nothing in the Supreme Court's Commerce Clause jurisprudence dictates that unlikely result.

And if *Raich* does authorize that result, as defendants contend, then *Raich* was wrongly decided and should be overruled by the Supreme Court. Congress's Commerce Clause authority, as augmented by the Necessary and Proper Clause, does not "extend…to something as modest as the home cook's herb garden," or, as here, the home distiller's production of sprits, especially for personal use. *Raich*, 545 U.S. at 51 (O'Connor, J., dissenting). It is not consistent with the spirit of the Constitution, and the powers it reserves to the states and the people, for Congress to regulate mundane noncommercial activities carried out within homes. *Id.* at 51–52 (O'Connor, J., dissenting); *see also id.* at 65–66 (Thomas, J., dissenting). If Congress is going to regulate persons engaging in intrastate activities, particularly of the noncommercial variety, then it needs more than "vague and unspecific" findings that its "statutory scheme will be undermined if [it] cannot exert power over [those] individuals." *Id.* at 55 (O'Connor, J. dissenting); *see also Morrison*, 529 U.S. at 612 ("[T]he existence of such findings may 'enable us to evaluate the legislative judgment that the activity in question substantially affect[s] interstate commerce, even though no such substantial effect [is] visible to the naked eye.'" (quoting *Lopez*, 514 U.S. at 563)). And even where Congress has the power to reach a general class of persons engaging in activity that is or affects interstate commerce, it may not sweep in a "distinct and separable subclass" of persons whose activities are disconnected from interstate commerce or otherwise beyond Congress's reach. *Raich*, 545 U.S. at 62 (Thomas, J., dissenting); *see also id.* at 47–48 (O'Connor, J., dissenting). *Raich* was wrongly decided, and its errors should not be extended.

## CONCLUSION

For the foregoing reasons, the Court should deny defendants' motion to dismiss and grant Mr. Ream's cross-motion for summary judgment.

Dated: May 23, 2024

ROBERT ALT (#0091753)
The Buckeye Institute
88 East Broad Street, Suite 1300
Columbus, OH 43215
(614) 224-4422
robert@buckeyeinstitute.org

Respectfully submitted,

/s/ *Patrick T. Lewis*
PATRICK T. LEWIS (#0078314)
  *Trial Attorney*
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
(216) 861-7096
plewis@bakerlaw.com

ANDREW M. GROSSMAN (pro hac vice)
DAVID B. RIVKIN, JR.*
KRISTIN A. SHAPIRO (pro hac vice)
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W., Suite 1100
Washington, D.C. 20036
(202) 861-1697
agrossman@bakerlaw.com

* pro hac vice pending

*Attorneys for John Ream*

**CERTIFICATE OF SERVICE**

I certify that on May 23, 2024, the foregoing was filed on the Court's electronic filing system. The Court's filing system will serve notice of the filing to all counsel of record. Parties may access the filing on the Court's system.

/s/ Patrick T. Lewis
PATRICK T. LEWIS