# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JOHN REAM, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:24cv0364 |
| | ) | |
| v. | ) | Judge Edmund A. Sargus, Jr. |
| | ) | Magistrate Judge Chelsey M. Vascura |
| UNITED STATES DEPARTMENT OF THE | ) | |
| TREASURY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY MEMORANDUM IN FURTHER SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
## AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

BACKGROUND .................................................................................................................... 1

I.     Additional Statutory and Regulatory Background ....................................................... 1

II.    Evidence Submitted in Support of Plaintiff's Motion for Summary Judgment ......................... 2

ARGUMENT .................................................................................................................... 2

I.     Plaintiff Lacks Article III Standing. ........................................................................... 2

      A.    Plaintiff Demonstrates No Present Injury Caused by Either Challenged Provision. .................................................................................................... 3

      B.    Plaintiff Fails To Establish Standing for His Pre-enforcement Challenge .................... 4

            1.    Home Distilling Is Not an Activity Affected with a Constitutional Interest. ...................................................................................... 5

            2.    Plaintiff Has Not Shown That There Is a Substantial Probability He Will Engage in Conduct Proscribed by the Challenged Provisions ................. 6

            3.    Plaintiff Has Not Shown That There Is a Certain Threat of Prosecution for Violation of the Challenged Provisions. ................... 8

            4.    Awaiting and Undergoing Criminal Prosecution Is Not Plaintiff's Sole Means of Seeking Relief. ....................................................... 10

II.    The Challenged Provisions Fall Within Congress's Enumerated Powers. .............................. 12

      A.    The Provisions Fall Within Congress's Authority Under the Taxing Power and Necessary and Proper Clause. ...................................................... 12

      B.    The Challenged Provisions Fall Within Congress's Authority Under the Commerce Clause and Necessary and Proper Clause. .................................... 17

CONCLUSION ................................................................................................................. 20

## TABLE OF AUTHORITIES

**CASES**

*ACLU v. NSA,*
  493 F.3d 644 (6th Cir. 2007) ............................................................................3

*Artis v. Dist. of Columbia,*
  583 U.S. 71 (2018) ..........................................................................................12

*Babbitt v. United Farm Workers Nat'l Union,*
  442 U.S. 289 (1979) .................................................................................... 4, 11

*Carney v. Adams,*
  592 U.S. 53 (2020) ..................................................................................... 6, 11

*Crawford v. U.S. Dep't of Treasury,*
  868 F.3d 438 (6th Cir. 2017) ..................................................................... 5, 6, 8

*Croce v. Sanders,*
  843 F. App'x 710 (6th Cir. 2021) .............................................................. 9, 10

*Fednav, Ltd. v. Chester,*
  547 F.3d 607 (6th Cir. 2008) .........................................................................3

*Felsenheld v. United States,*
  186 U.S. 126 (1902) ........................................................................................12

*Friends of George's, Inc. v. Mulroy,*
  108 F.4th 431 (6th Cir. 2024) ................................................................. 5, 6, 7, 8

*Goldstein Miller,*
  488 F. Supp. 156 (D. Md. 1980) ......................................................................12

*Gonzales v. Raich,*
  545 U.S. 1 (2005) ...................................................................... 17, 18, 19, 20

*Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau,*
  --- F. Supp. 3d ---, 2024 WL 3357841 (N.D. Tex. July 10, 2024)...................*passim*

*In re Century Offshore Mgmt. Corp.,*
  119 F.3d 409 (6th Cir. 1997) ...........................................................................1

*Int'l Bhd. of Teamsters v. United States,*
  431 U.S. 324 (1977) ........................................................................................11

*Kiser v. Reitz,*
  765 F.3d 601 (6th Cir. 2014) ...........................................................................8

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ..................................................................................................... 2

*McKay v. Federspiel,*
   823 F.3d 862 (6th Cir. 2016) ....................................................................................... 8

*MedImmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118 (2007) ..................................................................................................... 4

*Morris v. United States,*
   161 F. 672 (8th Cir. 1908) ......................................................................................... 16

*National Federation of Independent Businesses v. Sebelius,*
   ("NFIB"), 567 U.S. 519 (2012) ....................................................................... 15, 16, 20

*Nat'l Rifle Ass'n of Am. v. Magaw,*
   132 F.3d 272 (6th Cir. 1997) ....................................................................................... 3

*Online Merchants Guild v. Cameron,*
   995 F.3d 540 (6th Cir. 2021) ............................................................................. 5, 8, 10

*People's Rights Organization v. City of Columbus,*
   152 F.3d 522 (6th Cir. 1998) ....................................................................................... 3

*Printz v. United States,*
   521 U.S. 898 (1997) ................................................................................................... 16

*Russell v. Lundergan-Grimes,*
   784 F.3d 1037 (6th Cir. 2015) ..................................................................................... 9

*Sabri v. United States,*
   541 U.S. 600 (2004) ................................................................................................... 12

*Savage v. Gee,*
   665 F.3d 732 (6th Cir. 2012) ....................................................................................... 4

*Stilinovic v. United States,*
   336 F.2d 862 (8th Cir. 1964) ..................................................................................... 12

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) ............................................................................................ 4, 5, 9

*Thomas More Law Center v. Obama,*
   651 F.3d 529 (6th Cir. 2011) ....................................................................................... 3

*United States v. Comstock,*
   560 U.S. 126 (2010) ................................................................................................... 15

iii

*United States v. DeWitt*,
  76 U.S. 41 (1869) ................................................................................13

*United States v. Goldberg*,
  225 F.2d 180 (8th Cir. 1955) .......................................................... 12, 15

*United States v. Lopez*,
  514 U.S. 549 (1995) ...........................................................................19

*United States v. Morrison*,
  529 U.S. 598 (2000) ...........................................................................19

*United States v. Thompson*,
  361 F.3d 918 (6th Cir. 2004) ..............................................................15

*United States v. Whitehead*,
  424 F.2d  (6th Cir. 1970) ......................................................................9

*Wickard v. Fillburn*,
  317 U.S. 111 (1942) ...........................................................................19

*Woods v. Cloyd W. Miller Co.*,
  333 U.S. 138 (1948) ...........................................................................20

**STATUTES**

Act of July 20, 1868,
  § 12, 15 Stat. 125, 130 ........................................................................19

5 U.S.C. § 554 ...........................................................................................11

26 U.S.C. § 5001 .......................................................................................13

26 U.S.C. § 5002 .......................................................................................13

26 U.S.C. § 5004 .......................................................................................13

26 U.S.C. § 5041 .......................................................................................13

26 U.S.C. § 5051 .......................................................................................13

26 U.S.C. § 5178(a)(1)(B) ................................................................*passim*

26 U.S.C. § 5178(a)(2)(B) ..........................................................................14

26 U.S.C. § 5601(a) ........................................................................1, 6, 7, 13

27 U.S.C. § 204 ...................................................................................... 2, 11

## RULES AND REGULATIONS

27 C.F.R. § 29.55(a) ........................................................................................................... 1, 2

27 C.F.R. § 1.31 ................................................................................................................11

27 C.F.R. §§ 19.73–19.77 ...................................................................................................6

27 C.F.R. § 71.118 ............................................................................................................11

Stills; Miscellaneous Provisions,
   50 Fed. Reg. 23,680 (June 5, 1985) ...........................................................................2

v

## INTRODUCTION

As set forth in Defendants' motion to dismiss, Plaintiff lacks Article III standing for his challenge to the 150-year-old statutory provisions at issue in this case because they are causing him no cognizable injury. Plaintiff still has not demonstrated any such injury, and the Court therefore should dismiss this case for lack of subject matter jurisdiction. Moreover, Plaintiff fails to show that the challenged statutory provisions are unconstitutional. Though a recent out-of-Circuit district court held these statutory provisions were unlawful, that case was wrongly decided and overlooked key aspects of the statutory regime for distilling of spirits. The location restrictions in §§ 5178(a)(1)(B) and 5601(a)(6) are reasonable measures to protect the revenue and fall within the scope of Congress's authority to take actions necessary and proper to its execution of the Taxing Power. So too is Congress authorized under the Commerce Clause to regulate where and under what conditions spirits may be legally distilled. Accordingly, the Court alternatively should deny Plaintiff's motion for summary judgment and enter judgment for Defendants on the merits. *See In re Century Offshore Mgmt. Corp.*, 119 F.3d 409, 412 (6th Cir. 1997) ("[T]he fact that the nonmoving party has not filed its own summary judgment motion does not preclude the entry of summary judgment if otherwise appropriate.").

## BACKGROUND

### I.      Additional Statutory and Regulatory Background

Because certain arguments in Plaintiff's cross-motion reflect a misunderstanding of the criminal offense based on possession of an unregistered still set forth in 26 U.S.C. § 5601(a)(1)—a provision not challenged in this case—and the relationship between that provision and the permitting and registration requirements for distilled spirits plants (DSPs), Defendants provide some additional statutory and regulatory background here.

First, purchasing a still is not unlawful, and possession of a still is only unlawful when the still is (1) "set up," (2) intended to distill spirits, *and* (3) unregistered with TTB. *See* 26 U.S.C. § 5601(a)(1) (criminalizing possession of a still that is "set up which is not registered"); 27 C.F.R. § 29.55(a) (requiring registration of a still "immediately on its being set up," though a still that is "not used or intended for use in the distillation, redistillation, or recovery of distilled spirits is not required to be

1

registered"); *id.* § 29.55(b) (defining when a still is set up); *see also* Stills; Miscellaneous Provisions, 50 Fed. Reg. 23,680 (June 5, 1985) (removing requirement to obtain separate permit prior to set up).

Second, 27 U.S.C. § 204(a)(2)(B) requires, as a condition of granting a permit for a DSP, that an applicant be "likely to commence operations within a reasonable period." But there is no statutory or regulatory requirement to have "set up" a still prior to applying for a DSP. So Mr. Ream need not set up his still simply to apply for a permit. Moreover, though stills pending permit applications are not yet registered, TTB does not deem possession of such stills to be unlawful because they are not considered to be "intended for use in the distillation" while pending permitting and registration, even if "set up." *See* 27 C.F.R. § 29.55(a) (allowing still registration by describing the still on the permit application and treating approval of permit as registration of the still).

## II. Evidence Submitted in Support of Plaintiff's Motion for Summary Judgment.

The declaration submitted by Plaintiff in support of his summary judgment motion merely restates the allegations of the Complaint: Although he has "never distilled alcohol before," Plaintiff "would like to distill[ ] small quantities of alcohol in his own home." (Ream Decl. ¶ 11, ECF No. 21-1, PageID 186.) Plaintiff "has extensively researched and studied the process of distilling," and believes he is prepared to take necessary steps to "responsibly home distill," including "obtaining the appropriate equipment and raw materials." (*Id.* ¶ 12, ECF No. 21-1, PageID 186.) However, he does not aver that he has obtained such equipment or raw materials, and does not specify where "in his own home" his proposed distilling operation would be located. Plaintiff states that he "would obtain all necessary state and federal licenses for, and pay all applicable taxes on, [his] home distilling." (*Id.* ¶ 14, ECF No. 21-1, PageID 187.) But, again, he does not say that he has applied for any such "licenses," or even gathered the necessary information for such applications.

## ARGUMENT

## I. Plaintiff Lacks Article III Standing.

Because Plaintiff now moves for summary judgment, he must prove, not merely allege, the required standing elements. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 566 (1992) ("Standing . . .

requires, at the summary judgment stage, a factual showing of perceptible harm."). Moreover, Plaintiff must demonstrate standing for each statutory provision he challenges. *See Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008). Plaintiff's submissions do not remedy the jurisdictional defects in his claims. Plaintiff fails to establish standing because he has shown neither that the challenged provisions have been enforced against him or place any affirmative obligations on him, nor that he satisfies the elements for a pre-enforcement challenge.

### A. Plaintiff Demonstrates No Present Injury Caused by Either Challenged Provision.

Sections 5178(a)(1)(B) and 5601(a)(6) do not place any affirmative obligations on Plaintiff, nor have they been enforced against him. Plaintiff nonetheless argues that he is suffering "actual present harm" because he is "currently unable to home distill" and wishes to do so. (ECF No. 21, PageID 167.) But a plaintiff's desire to undertake action prohibited by a statute does not suffice to establish an Article III injury. *See Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997). Plaintiff's self-described inability to lawfully "home distill" thus is not an injury in fact.

None of the decisions cited by Plaintiff supports a different conclusion. In *Thomas More Law Center v. Obama*, the "actual present harm" found by the court was that a law going into effect on a date certain "require[d] [plaintiffs] to do something"; thus, the plaintiffs were the "object of the challenged action." 651 F.3d 529, 536, 537 (6th Cir. 2011). Similarly, the plaintiffs in *People's Rights Organization v. City of Columbus* established an injury in fact because the provision at issue required an "immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." 152 F.3d 522, 529 (6th Cir. 1998) (citation omitted). In contrast, the provisions challenged in this case do not require Mr. Ream to do anything at all.

*ACLU v. NSA* is similarly unhelpful to Plaintiff: There, the court explained that "the plaintiffs' failure to subject themselves to actual harm does not, by itself, prevent a finding that they have standing," but it nowhere suggested that refraining from engaging in a desired, but statutorily prohibited, activity is sufficient to establish an injury in fact. 493 F.3d 644, 655 (6th Cir. 2007). And *MedImmune, Inc. v. Genentech, Inc.* was not a challenge to a statute, but rather involved a question of

whether a patent was invalid or unenforceable. 549 U.S. 118, 122-23 (2007). In dicta, the Court noted that "where threatened action by *government* is concerned" there is the possibility of a pre-enforcement challenge, rather than a necessity that the plaintiff "expose himself to liability before bringing suit." *Id.* at 128-29. But the Court did not purport to set forth or revise the standing requirements for a pre-enforcement challenge to a statute. *Cf. Susan B. Anthony List v. Driehaus* ("*SBA List*"), 573 U.S. 149, 158-61 (2014) (citing *MedImmune*'s recognition of the availability of pre-enforcement standing to challenge threatened action by the government, and then proceeding to articulate the limited circumstances in which such standing may be established). Nor did the Court suggest a plaintiff can establish "actual present harm" from a statute merely by declining to engage in statutorily proscribed conduct. (Pl. Mem. 7, PageID 167.) Indeed, if a statute's mere prohibition of desired conduct sufficed to establish a case or controversy, there would be no need for the multi-element credible threat of prosecution standard for pre-enforcement challenges to criminal statutes.

### B. Plaintiff Fails To Establish Standing for His Pre-enforcement Challenge.

Neither challenged statutory provision places affirmative obligations on Plaintiff, and neither provision has been enforced against him. Plaintiff thus can establish an Article III injury traceable to the laws at issue only if he meets all elements of the "credible threat of prosecution" standard. Since he can point to no such threat, Plaintiff asserts that the "standard is inapposite" if the "challenged statute objectively proscribes" the plaintiff's intended conduct and the plaintiff's alleged injury is an inability to engage in such conduct. (ECF No. 21, PageID 168.) As explained below, Plaintiff in fact has not shown an intent to engage in conduct proscribed by the laws at issue. *See infra* Part I.B.2. And regardless, no authority supports his assertion, which confuses the applicability of the credible threat of prosecution standard with whether a particular plaintiff satisfies that standard. In the cases cited by Plaintiff (ECF No. 21, PageID 168), courts determined whether plaintiffs met the credible threat of prosecution standard for the pre-enforcement challenges before them; they did not purport to thereby cabin the standard's applicability. *See, e.g.*, *SBA List*, 573 U.S. at 161-66; *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298-303 (1979); *Savage v. Gee*, 665 F.3d 732, 740 (6th Cir. 2012).

The Sixth Circuit recently reaffirmed that the "injury-in-fact" element of Article III standing "[t]ypically . . . requires that the government enforce [an] allegedly unconstitutional law against the challenging party before it has standing to sue." *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 435 (6th Cir. 2024). The court further noted that it has permitted pre-enforcement review "only" when a plaintiff satisfies all elements of the credible threat of prosecution standard identified by the Supreme Court in *Babbitt* and *Susan B. Anthony List* and explained by the Sixth Circuit in *Crawford* and subsequent cases. *Id.*

Plaintiff's claims are self-evidently pre-enforcement challenges, and he fails to meet his burden to establish standing for these claims because (1) he does not seek to engage in conduct that is "arguably affected with a constitutional interest," *id.* (quoting *SBA List*, 573 U.S. at 159); (2) he has not demonstrated that there is a "substantial probability" that he will engage in conduct proscribed by the laws at issue, *Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 455 (6th Cir. 2017); *see Friends of George's*, 108 F.4th at 435; and (3) he has not shown that there is a "a *certain* threat of prosecution if [he] does indeed engage in that conduct," *Crawford*, 868 F.3d at 454.

## 1. Home Distilling Is Not an Activity Affected with a Constitutional Interest.

As Defendants have explained, Plaintiff does not seek to engage in conduct arguably affected with a constitutional interest because home distilling does not implicate any constitutional right. (ECF No. 13, PageID 81-82.) Plaintiff suggests that his claim that the challenged provisions exceed Congress's Commerce Clause authority satisfies this element, citing *Online Merchants Guild v. Cameron*, 995 F.3d 540 (6th Cir. 2021). (ECF No. 21, PageID 168.) But *Online Merchants* did not involve a claim that a federal statute exceeded Congress's Article I powers. Rather, the plaintiff challenged Kentucky price-gouging laws under the "dormant commerce clause," which "*protects commercial actors* against discriminatory, extraterritorial, and unduly burdensome *state* regulations of interstate commerce." 995 F.3d at 549 (emphasis added). Because Plaintiff's conduct, and not merely his cause of action, must be "arguably affected with a constitutional interest," *Crawford*, 868 F.3d at 455 (emphasis omitted), and

because Plaintiff identifies no constitutional interest in distilling spirits, he lacks standing for his pre-enforcement challenge to 26 U.S.C. §§ 5178(a)(1)(B) and 5601(a)(6).[1]

### 2. Plaintiff Has Not Shown That There Is a Substantial Probability He Will Engage in Conduct Proscribed by the Challenged Provisions.

Plaintiff also fails to demonstrate that there is a substantial probability he will engage in conduct proscribed by the challenged provisions. *See Crawford*, 868 F.3d at 455; *Friends of George's*, 108 F.4th at 435.

Plaintiff declares that he has "extensively researched and studied the process of distilling" (Ream Decl. ¶ 12, ECF No. 21, PageID 186), but he admits that he has never distilled alcohol before (*id.* ¶ 11, ECF No. 21, PageID 186), and he has taken no concrete steps to begin distilling spirits. Not only has Plaintiff not yet purchased a still or other distilling equipment, or applied for the permits he concedes he would need to acquire before he began distilling operations, he also offers no evidence he has even gathered the information and made the plans that would be necessary to apply for a federal distilled spirits plant permit and registration, such as details regarding the layout and security of the premises for his proposed distilling operations. *See* 27 C.F.R. §§ 19.73–19.77 (requiring submission of information concerning, *inter alia*, building layout and security, operations to be performed, and equipment descriptions). For the reasons Defendants have explained (ECF No. 13, PageID 82-83), this is far from sufficient to demonstrate that Plaintiff is currently "able and ready" to engage in his proposed distilling activities (ECF No. 21, PageID 170), let alone that there is a substantial probability he would actually begin home distilling absent the challenged provisions. *Cf. Carney v. Adams*, 592 U.S. 53, 64 (2020) (concluding that respondent could not establish standing for constitutional challenge to

---

[1] To the extent another district court recently concluded, contrary to governing precedents, that plaintiffs raising a similar challenge to 26 U.S.C. §§ 5178(a)(1)(B) and 5601(a)(6) satisfied this element merely because they "believe[d]" their intended distilling activity was "affected with a constitutional interest," *Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau*, --- F. Supp. 3d ---, 2024 WL 3357841, at *3 (N.D. Tex. July 10, 2024), that court's unreasoned and unsupported conclusion is unpersuasive.

state judicial selection criterion because he "did not show that he was 'able and ready' to apply for a vacancy in the reasonably imminent future").

Plaintiff's failure to provide evidence of where, specifically, he plans to locate his proposed distilling operation not only is fatal to his ability to demonstrate a substantial probability that he will actually engage in "home distilling," but also precludes him from showing that the "home distilling" he desires to undertake is even arguably "conduct that the challenged statute proscribes." *Friends of George's*, 108 F.4th at 435. The relevant location restrictions do not bar "home distilling," but rather specify that a distilled spirits plant may not be located in a "dwelling house" or in a "shed, yard, or inclosure *connected with* a dwelling house." 26 U.S.C. §§ 5178(a)(1)(B), 5601(a)(6) (emphasis added). Plaintiff appears to misunderstand the provisions to prohibit locating a distilled spirits plant anywhere on "residential property." (ECF No. 21, PageID 163.) This misunderstanding derives from Plaintiff's incorrect belief that the alcohol fuel plant (AFP) permit application's inclusion of a sample "diagram of a residential farm with a still shed illustrating a permissible location" indicates that the restrictions in §§ 5178(a)(1)(B) and 5601(a)(6) do not apply to AFPs. (ECF No. 21, PageID 163-64.) But as previously explained, AFPs are subject to the same premises restrictions imposed under the Internal Revenue Code as distilled spirits plants generally, including the restriction on placement in dwelling houses or in a yard, shed, or inclosure connected with a dwelling house. (ECF No. 13, PageID 78.) The AFP application diagram shows a still shed on a residential farm because such a location would be permissible (as a shed unconnected to a dwelling house), not because AFPs are exempt from §§ 5178(a)(1)(B) and 5601(a)(6). Because Plaintiff misunderstands the premises restrictions' scope, and because he has provided no diagram or detailed description of where he would locate his prospective distilled spirits operation, he has not met his burden to demonstrate that he intends to violate the statutory provisions at issue. *See Friends of George's*, 108 F.4th at 436-37. This failing, too, means Plaintiff lacks Article III standing.[2]

---

[2] The *Hobby Distillers* court's determination that the plaintiffs in that case could satisfy this second element on the mere basis that the plaintiffs "know what they want, what they need to do it, and how

### 3. Plaintiff Has Not Shown That There Is a Certain Threat of Prosecution for Violation of the Challenged Provisions.

Plaintiff likewise has not demonstrated that he meets the final element of the credible threat of prosecution standard. As an initial matter, one of the challenged provisions—§ 5178(a)(1)(B)—is merely a "qualification requirement"; it includes no criminal or civil penalties. And as to § 5601(a)(6), Plaintiff fails to show that his intended conduct "generates a '*certainly impending*' threat of prosecution." *Friends of George's*, 108 F.4th at 435 (quoting *Crawford*, 868 F.3d at 454).

The Sixth Circuit recently reiterated that it examines four main factors in determining whether a plaintiff satisfies this element: "(1) 'a history of past enforcement against the plaintiffs or others'"; (2) "enforcement warning letters sent to the plaintiffs regarding their specific conduct'; (3) 'an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action'; and (4) 'the defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff.'" *Online Merchs. Guild*, 995 F.3d at 550. While no one factor is crucial, the Sixth Circuit has found that a plaintiff satisfies the certainly-impending-threat-of-prosecution requirement only where the plaintiff has established "some combination" of these factors. *McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016).

At least three of the four factors are clearly inapplicable here: Plaintiff has received no "enforcement warning letters"; the statute at issue is not one that can be enforced by private parties; and TTB has not "refus[ed] to disavow enforcement . . . against" Plaintiff—indeed, TTB has had no occasion to decide whether to enforce the challenged provisions against Plaintiff, who has never distilled spirits, or taken concrete steps to distill spirits, in any location whatsoever. *Cf. Online Merchs.*, 995 F.3d at 551 (fourth factor strongly favored plaintiff because, *inter alia*, state attorney general had "vigorously litigated enforcement" of subpoena and civil investigative demand issued to member of plaintiff organization); *Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014) (combination of factors supported standing where, *inter alia*, state dentistry board had sent letters to plaintiff warning that his

---

to make it happen," 2024 WL 3357841, at *3, is contrary to Supreme Court and Sixth Circuit precedents, and therefore unpersuasive.

advertising violated state regulations and board "ha[d] not represented that it [would] decline to enforce the regulations against [plaintiff]" if he persisted in such advertising).[3]

The remaining factor—a history of past enforcement—also is of little help to Plaintiff. Plaintiff argues that "[t]he government has prosecuted individuals who distill alcohol on residential premises" (ECF No. 21, PageID 168-69), but he admits that none of the cases cited in the Complaint for this assertion were prosecutions under § 5601(a)(6). In a footnote, Plaintiff now cites additional cases—all more than 50 years old—some of which do appear to have involved charges under § 5601(a)(6). (ECF No. 21, PageID 169.) However, in each of those cases, additional offenses were charged as well, including violations of provisions Plaintiff has not challenged and with which he insists he intends to comply. *See, e.g.*, *United States v. Whitehead*, 424 F.2d 426 (6th Cir. 1970) (charges under §§ 5601(a)(4), 5601(a)(6), 5601(a)(1), 5601(a)(7), and 5205(a)(2)). In any event, Plaintiff points to no precedent holding that the mere fact that the government has in the past brought charges under a challenged provision is sufficient to demonstrate that there would be a certainly impending threat of prosecution under the provision if Plaintiff engaged in his intended conduct. *Cf. Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1049 (6th Cir. 2015) ("[P]ast enforcement of a statute against the *same* conduct is good evidence that the threat of enforcement is not chimerical." (emphasis added; alteration omitted) (quoting *SBA List*, 573 U.S. at 163)).

Accordingly, Plaintiff fails to demonstrate any combination of the factors the Sixth Circuit has deemed necessary to establish a certainly impending threat of prosecution.

Plaintiff's characterizations of TTB guidance regarding the statutory restrictions on distilling activities and a letter that was sent out 10 years ago in connection with TTB's joint effort with Florida state officials to address illegal distilling (ECF No. 21, PageID 169) do not cure this failure.[4] The cited

---

[3] Contrary to Plaintiff's suggestion (ECF No. 21, PageID 168), and consistent with these cases, the fact that an agency has never had occasion to decide whether to enforce a statute against an individual does not equate to "refus[al] to disavow enforcement" against the individual.

[4] Plaintiff also cites a magazine article about the 2014 enforcement effort, but such hearsay evidence may not be considered. *See Croce v. Sanders*, 843 F. App'x 710, 718 (6th Cir. 2021) (unpublished).

guidance does no more than summarize the law, including potential legal consequences for "[p]roducing distilled spirits at any place other than a TTB-qualified distilled spirits plant." TTB, Home Distilling (Mar. 7, 2024), https://www.ttb.gov/regulated-commodities/beverage-alcohol/distilled-spirits/penalties-for-illegal-distilling. Nothing in the guidance indicates that Plaintiff faces a certain threat of prosecution under § 5601(a)(6) for "home distilling."

The 2014 TTB letter regarding legal consequences for unlawful distilling, which was sent to individuals other than Plaintiff and filed by one of those individuals in another case, likewise did not convey a threat of prosecution, let alone a threat of prosecution under § 5601(a)(6). *See* Defs. Sur-Reply App'x 2-3, *Hobby Distillers Ass'n v. TTB*, No. 4:23-cv-01221-P (N.D. Tex. Mar. 26, 2024), ECF No. 39-1; Pls. Reply App'x 1, *Hobby Distillers Ass'n v. TTB*, No. 4:23-cv-01221-P (N.D. Tex. Mar. 26, 2024), ECF No. 31-1 ("2014 TTB Letter"). Indeed, the letter made no mention of § 5601(a)(6) or the restriction on locating a distilled spirits plant in a dwelling house or shed, yard, or inclosure connected with a dwelling house. *Id.* Further, the letter was not an "enforcement warning letter[] sent to the [individual] regarding his specific conduct." *Online Merchs.*, 995 F.3d at 550. Rather, it stated that it had come to TTB's attention that the recipient "may have purchased a still capable of producing alcohol," and observed, broadly, that "[u]nlawful production of distilled spirits is a criminal offense." 2014 TTB Letter. Most importantly, the letter was not sent to or received by Mr. Ream. A letter sent to another individual a decade ago cannot be evidence of a certainly impending threat of prosecution faced by Plaintiff. *See Online Merchs.*, 995 F.3d at 550 (explaining that the relevant factor is whether "enforcement warning letters [were] sent *to the plaintiffs* regarding *their specific conduct*" (emphasis added)); *Hobby Distillers*, 2024 WL 3357841, at *4 (concluding that three of four individual plaintiffs could not establish standing for their pre-enforcement challenge to §§ 5178(a)(1)(B) and 5601(a)(6) because they had not received the cited 2014 letter or any other alleged warning regarding their conduct).

### 4. Awaiting and Undergoing Criminal Prosecution Is Not Plaintiff's Sole Means of Seeking Relief.

More broadly, and related to the deficiencies explained above, Plaintiff cannot establish standing for his challenge to the distilled spirits plant premises restrictions because a basic principle

10

underlying pre-enforcement standing doctrine is inapplicable: if this Court dismisses Plaintiff's complaint, he would not "be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Babbitt*, 442 U.S. at 298 (citation omitted). Rather, Plaintiff can apply to TTB for a distilled spirits plant permit and registration. (ECF No. 13, PageID 77.) If Plaintiff's planned distilling operation will not be located in a "dwelling house" or a "shed, yard, or inclosure connected with a dwelling house," § 5178(a)(1)(B), a permit might well be granted. And if the permit were denied for noncompliance with the prohibition on locating a distilled spirits plant in a dwelling house or shed, yard, or inclosure connected with a dwelling house, Plaintiff could seek relief in the context of a proceeding challenging that administrative determination. S*ee* 5 U.S.C. § 554; 27 U.S.C. § 204(b), (h); 27 C.F.R. §§ 1.31, 71.118.

Plaintiff argues that he should not be required to apply for a permit because such an application would be futile. (ECF No. 21, PageID 169.) But Plaintiff's belief that submitting to TTB's application process would be futile does not create an Article III case or controversy, and the case cited by Plaintiff for this point, *Carney v. Adams*, suggested no such thing. Rather, it held that the respondent failed to meet a basic threshold for establishing an injury in fact because he had not shown an "intent that is concrete" to apply for a judicial appointment subject to the challenged state constitutional provision. 592 U.S. at 64. In so holding, the Court discussed various contexts in which a failure to apply for a position or benefit did *not* doom standing, none of which resemble this matter. In particular, the court discussed a Title VII case in which it concluded that "denial of Title VII relief" merely on the ground that the plaintiff had not applied for the job from which he was barred by the challenged discriminatory policy "could exclude from the Act's coverage the victims of the most entrenched forms of discrimination," in conflict with Title VII's purpose. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 367 (1977); *see Carney*, 592 U.S. at 64. *Carney*'s reference to futility thus does not help Plaintiff establish standing for his pre-enforcement challenge.

Plaintiff's alternative suggestion that he should not be required to meet the credible threat of prosecution standard with respect to §§ 5178(a)(1)(B) and 5601(a)(6) because other, unchallenged statutory provisions frustrate his ability to satisfy the elements of that standard is likewise wrong. (ECF

No. 21, PageID 169-70.) As explained above, and contrary to Plaintiff's belief, there are no criminal penalties merely for purchasing a still or possessing a still, let alone for applying for a distilling permit and registration pursuant to TTB regulations. *See supra* at 1-2. And regardless, Plaintiff again identifies no precedent holding that he can establish an injury in fact for a pre-enforcement challenge to a statute absent the statute's imposing some affirmative obligation on him or his satisfaction of all elements of the credible threat of prosecution standard.

## II. The Challenged Provisions Fall Within Congress's Enumerated Powers.

### A. The Provisions Fall Within Congress's Authority Under the Taxing Power and Necessary and Proper Clause.

As set forth in Defendants' opening memorandum, the challenged location restrictions are necessary and proper to Congress's execution of its Taxing Power because they are plainly adapted to protection of the federal tax revenue on distilled spirits. (ECF No. 13, PageID 86-88.) Plaintiff's suggestion that a law must have an "immediate" relation to taxation is wrong. (ECF No. 21, PageID 171). Notwithstanding Justice Thomas's view, the Supreme Court has never held that a statute is plainly adapted to Congress's exercise of an enumerated power only if the relationship to that power is "simple and direct." *Sabri v. United States*, 541 U.S. 600, 613 (2004) (Thomas, J., concurring); *cf. Artis v. Dist. of Columbia*, 583 U.S. 71, 90 (2018) (explaining that statutory provision was "plainly adapted" to Congress's power to regulate the federal courts where "there was no cause to suspect that Congress had enacted [the provision] as a pretext for the accomplishment of objects not entrusted to it, nor was there reason to believe that the connection between [the provision] and Congress' authority . . . was too attenuated" (cleaned up)).

Like the statute prohibiting alteration of the contents of liquor bottles upheld in *Stilinovic v. United States*, 336 F.2d 862 (8th Cir. 1964), the provision addressing labeling of distilled spirits upheld in *United States v. Goldberg*, 225 F.2d 180 (8th Cir. 1955), and the regulation of liquor bottle sizes upheld in *Goldstein Miller*, 488 F. Supp. 156 (D. Md. 1980), the challenged provisions here are reasonable limitations on the "the manufacture and handling of goods which are subjected to an internal revenue tax" for the purpose of facilitating collection of that tax. *Felsenheld v. United States*, 186 U.S. 126, 132

(1902). In relation to execution of the Taxing Power, Plaintiff identifies no meaningful distinction between the functions of the laws at issue in those earlier cases and the location restrictions for distilled spirits plants.

The sole example Plaintiff offers of a law that was held not to be necessary and proper to execution of the Taxing Power was of an entirely different kind. In *United States v. DeWitt*, the court held that a prohibition on the sale of a certain kind of illuminating oil was not a lawful exercise of Congress's power because, if it had "any relation to taxation at all," it was merely "increasing the production and sale of other oils, and, consequently, the revenue derived from them, by excluding from the market the particular kind described." 76 U.S. 41, 44 (1869). Here, the location restrictions for distilled spirits production are necessary and proper to execution of the Taxing Power not because they affect the revenue derived from some other taxable commodity, but rather because they facilitate protection of the revenue from the tax on distilled spirits. (ECF No. 13, PageID 86-88).

The challenged provisions address Congress's legitimate concern that locating distilled spirits plants on certain premises allows for easier concealment of stills and diversion of the substantial revenue from the distilled spirits excise tax, which is distinctive in several respects. For example, unlike the taxes on beer and wine, the tax on distilled spirits is a first lien that attaches at creation. 26 U.S.C. § 5004. Hidden stills can easily evade a tax applied at the time of production. Moreover, distilled spirits are taxed by the "proof gallon," a more sensitive measure than those applicable to beer and wine. *Compare* 26 U.S.C. §§ 5001, 5002, *with id.* §§ 5041, 5051. Diversion of the revenue from the tax on distilled spirits—for example, by decreasing the tax revenue from commercially produced spirits in favor of home-produced spirits that can be hidden—is thus easier to accomplish and more costly to the government than diverting the revenue on an equal volume of beer or wine. The limitations in 26 U.S.C. §§ 5178(a)(1)(B) and 5601(a)(6) bar locating distilled spirits plants on premises where production of distilled spirits can more easily be concealed—not only dwelling houses and connected sheds, yards, and inclosures, but also any vessel or boat, and (with certain exceptions) premises where beer or wine is produced, liquors are retailed, or other business is carried on. And these premises restrictions also protect against diversion of the revenue by facilitating the Treasury Department's

13

ability to inspect distilling operations and to ensure compliance with the registration, design, construction, and security requirements that Congress imposed to that same end. *See, e.g.*, 26 U.S.C. §§ 5178(a)(2)(B); 5178(a)(2)(C); 5179; 5203; 5207; 5211; 5222(a)(1).

Especially given the unique aspects of the relevant excise tax scheme, and contrary to Plaintiff's suggestion (ECF No. 21, PageID 174), the location restrictions on distilled spirits plants both were and remain reasonable exercises of Congress's authority under the Taxing Power and Necessary and Proper Clause. Congress has had many opportunities over the last 150 years to revisit the distilled spirits excise tax scheme, and, as recently as 2015, it determined that the challenged premises restrictions should remain in place. *See* Craft Beverage Modernization and Tax Reform Act of 2015, H.R. 2903, 114th Cong. (2015) (failed bill to allow distilling of spirits for personal use in dwelling houses and connected yards, sheds, and enclosures). Affirming that these provisions are rationally related to protection of the revenue does not mean that "Congress may regulate or prohibit any activity under the guise of taxing it" (ECF No. 21, PageID 176), Plaintiff's new parade of horribles notwithstanding. The premises restrictions are reasonable measures to protect the revenue not because they make Internal Revenue officers' jobs "easier" (*id.*), but rather because they address the specific risk of diversion presented by unique aspects of the relevant tax scheme.

Plaintiff ultimately relies on two theories of why the challenged provisions fall outside Congress's authority under the Taxing Power and Necessary and Proper Clause: (1) the provisions do not actually facilitate collection of the revenue (ECF No. 21, PageID 173-74), and (2) they constitute a "substantial expansion of federal power" (*id.*, PageID 175). Neither theory has merit.

First, Plaintiff argues that §§ 5178(a)(1)(B) and 5601(a)(6) do not facilitate collection of the revenue because he and similar-minded individuals would pay any taxes due on their home-distilled spirits, and other existing statutory restrictions on distilled spirits plants adequately protect the revenue. (ECF No. 21, PageID 173-74.) But even if we assume that some, or even most, taxpayers would pay required taxes even in the absence of monitoring and enforcement measures, that would not negate Congress's authority to enact such monitoring and enforcement measures. Likewise, no precedent supports Plaintiff's suggestion that Congress's power to protect the revenue on distilled

14

spirits encompasses the "numerous recordkeeping measures" for production of distilled spirits (ECF No. 21, PageID 174), but stops short of authority to place restrictions on the locations for distilled spirits plants. Rather, the premises restrictions work together with those other measures as part of the "elaborate system . . . to protect the revenue on distilled spirits." *Goldberg*, 225 F.2d at 187. And as already explained (ECF No. 13, PageID 85), Plaintiff's argument that the location restrictions do not facilitate tax collection because they "prevent" a particular individual—Plaintiff—from being able to lawfully produce the taxed commodity (ECF No. 21, PageID 173), is unsupported. Neither Plaintiff's promise to pay any taxes due nor his present inability to satisfy the statutory requirements for lawful distilling renders unreasonable Congress's decision to restrict the locations for production of distilled spirits to protect the revenue from that commodity.[5]

Second, Plaintiff argues that the challenged provisions cannot be deemed necessary and proper to execution of the Taxing Power because they constitute "a 'substantial expansion of federal power' to the private sphere," citing *National Federation of Independent Businesses v. Sebelius* ("*NFIB*"), 567 U.S. 519, 560 (2012). This argument misconstrues the limit on Congress's "necessary and proper" authority explained in *NFIB*, which had nothing to do with whether a law reaches the "private sphere" and does not implicate the statutory provisions at issue here.

"[A] federal statute, in addition to being authorized by Art. 1, § 8, must also not be prohibited by the Constitution." *United States v. Comstock*, 560 U.S. 126, 135 (2010) (cleaned up) (citation omitted). However, the circumstances in which enactments rationally related to execution of Congress's enumerated powers have been deemed constitutionally prohibited—and thus not "proper"—are

---

[5] Nor is *United States v. Thompson*, 361 F.3d 918 (6th Cir. 2004), in which the court reaffirmed the constitutionality of a law criminalizing possession of an unregistered firearm, of any help to Plaintiff. *See id.* at 921 (explaining that "§ 5861(d) is 'part of the web of regulation aiding enforcement of the transfer tax provision in § 5811'"). There, as Plaintiff references, the court also rejected an as-applied challenge to the law, reasoning, *inter alia*, that "the Secretary has authority to register and tax illegal weapons," and dismissing the defendant's supposition that he was convicted for failing to do something that it was impossible to do. *Id.* at 921-22. There is no such alleged legal impossibility here. The federal excise tax attaches to distilled spirits whether they are produced legally or illegally, and neither challenged provision prevents Plaintiff from paying taxes on any spirits he distills.

narrow: where they "reach[ed] beyond the natural limit" of an enumerated power, *NFIB*, 567 U.S. at 560, or violated a basic principle of state sovereignty, such as by conscripting state law enforcement officers to execute federal functions, *see Printz v. United States*, 521 U.S. 898 (1997).

The challenged premises restrictions for distilled spirits plants—which date to the 1860s—do not run afoul of *NFIB's* holding that the Necessary and Proper Clause cannot "work a substantial expansion of federal authority," *NFIB*, 567 U.S. at 560, because they do not "reach beyond the natural limit of [Congress's taxing] authority and draw within its regulatory scope those who otherwise would be outside of it," *id.* In *NFIB*, the Supreme Court upheld the constitutionality of the Affordable Care Act's individual mandate as an exercise of Congress's Taxing Power, *id.* at 574-75, but concluded that it could not be sustained under the Commerce Clause in conjunction with the Necessary and Proper Clause, *id.* at 560. The individual mandate was not a proper means to execute Congress's Commerce Clause authority because it "vest[ed] Congress with the extraordinary ability to create the necessary predicate to the exercise of an enumerated power." *Id.* Specifically, Congress would not be "regulating under the Commerce Clause those who by some preexisting activity bring themselves within the sphere of federal regulation," *id.*, but rather "forc[ing] individuals into commerce precisely because they elected to refrain from commercial activity," *id.* at 558.

Here, in contrast, the federal government has an interest in the tax revenue on distilled spirits from the moment of their creation (ECF No. 13, PageID 86), so any distilling activity is automatically within the "regulatory scope" of the federal taxing authority. *NFIB*, 567 U.S. at 560. Thus, the challenged provisions—which limit the permissible locations for distilling operations but do not compel anyone to distill spirits or otherwise to subject themselves to the applicable excise tax scheme—only involve exercises "derivative of, and in service to" Congress's Taxing Power. *Id.*

Neither *NFIB* nor any other precedent holds that a law exceeds Congress's authority under the Necessary and Proper Clause if it reaches the "private sphere" (ECF No. 21, PageID 175), Plaintiff's quoted dicta from *Morris v. United States*, 161 F. 672 (8th Cir. 1908), aside. Nor does precedent support Plaintiff's suggestion that a law exceeds Congress's "necessary and proper" authority if it "offends core state police powers" (ECF No. 21, PageID 176); the Supreme Court has

declined to adopt Justice Thomas's suggestion that a law is not permitted by the Necessary and Proper Clause if it "encroache[s] on States' traditional police powers," *Gonzales v. Raich*, 545 U.S. 1, 66 (2005) (Thomas, J., dissenting); *see id.* at 41 (Scalia, J., concurring) (rejecting dissenters' reasoning and noting the Court's repeated recognition that the fact that a statute "regulates an area typically left to state regulation . . . is not enough to render federal regulation an inappropriate means").

In sum, the challenged provisions are reasonable measures to protect the revenue and fall squarely within Congress's authority under the Taxing Power and Necessary and Proper Clause.[6]

### B. The Challenged Provisions Fall Within Congress's Authority Under the Commerce Clause and Necessary and Proper Clause.

The Supreme Court has held that "the production, distribution, and consumption of commodities for which there is an established, and lucrative, interstate market" are "quintessentially economic" activities well within Congress's Commerce power. *Raich*, 545 U.S. at 25-26. Further, the Court has emphasized that when determining whether a law regulating such economic activities that reaches intrastate noncommercial activities falls within Congress's authority under the Commerce Clause, a court's task is a "modest one." *Id.* at 22. It "need not determine whether [the intrastate noncommercial] activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding." *Id.* The intrastate noncommercial distilling activities reached by §§ 5178(a)(1)(B) and 5601(a)(6) can be deemed to "substantially affect interstate commerce" for the same reasons articulated by the Supreme Court in *Raich*: Even when a commodity

---

[6] The *Hobby Distillers* court's contrary conclusion was unsupported and logically flawed. That court concluded that §§ 5178(a)(1)(B) and 5601(a)(6) are not within the Taxing Power because they govern where distilled spirits—the taxed commodity—may be produced, rather than how spirits should be packaged, handled, or secured after they come into existence. *See* 2024 WL 3357841 at *11-12. No precedent supports such line-drawing. Because the risk of diversion begins the moment distilled spirits come into existence, mitigating such risk logically includes regulating locations where distilled spirits are produced. As the *Hobby Distillers* court tacitly recognized, its reasoning could be deployed against not only the dwelling-house-related portions of §§ 5178(a)(1)(B) and 5601(a)(6), but also other, unchallenged "qualification requirements" for distilled spirits plants and associated criminal penalties, *see id.* at *13 (noting that those other provisions were "not before the Court"), the validity of which Mr. Ream has relied on in arguing that the challenged location restrictions are not "necessary" to prevent diversion of the revenue (ECF No. 21, PageID 174).

such as distilled spirits is produced for personal consumption at home, "production of the commodity meant for home consumption . . . has a substantial effect on supply and demand in the national market for that commodity." *Id.* at 19.

Plaintiff does not refute these points. Instead, he attempts to rewrite the standards applicable to his Commerce Clause claim, inventing new requirements and elements to be added to the Court's "modest" task. *Id.* at 22. These efforts fail to counter Defendants' showing that the challenged provisions fall comfortably within Congress's Commerce Clause authority.

First, Plaintiff faults Defendants for failing to "explain" how "intrastate noncommercial [distilling] activities . . . as a class . . . 'substantially affect interstate commerce.'" (ECF No. 21, PageID 179.) But per *Raich*, the relevant issue is whether "purely local activities" regulated by the challenged law "are *part of* an economic 'class of activities' that have a substantial effect on interstate commerce." *Raich*, 545 U.S. at 17 (emphasis added). Plaintiff does not dispute that his proposed home distilling activities "are part of an economic 'class of activities'" here, the economic activity of distilling spirits, which Congress plainly has the "power to regulate." *Id.*

Indeed, Plaintiff does not even attempt to argue that Congress lacks the authority to restrict the premises where distilled spirits sold in interstate commerce may be produced. Rather, his claim is limited to the assertion that the challenged provisions are unconstitutional insofar as they regulate "noncommercial intrastate activities." (ECF No. 21, PageID 177.) But the provisions at issue apply to all distilled spirits production—not merely "home distilling" for personal consumption. *See* 26 U.S.C. §§ 5178(a)(1)(B), 5601(a)(6). Thus, like the respondent in *Raich*, Plaintiff asks the Court to "excise individual applications of a concededly valid statutory scheme." *Raich*, 545 U.S. at 23. As *Raich* explained, "this distinction is pivotal." *Id.* Because the challenged provisions regulate distilling generally, and distilling is a "class of activities . . . within the reach of federal power," this Court has "no power 'to excise, as trivial, individual instances' of the class." *Id.*

Second, Plaintiff attempts to confine *Raich*'s holding to the specific statute at issue in that case, asserting that this case is not "controlled" by that binding decision because, unlike marijuana, interstate commerce in distilled spirits is not "prohibited" and because the underlying statute does not include

"congressional findings" or "legislative history" indicating the provisions support regulation of interstate commerce (ECF No. 21, PageID 178). But the *Raich* Court nowhere suggested that Congress's authority in that case was rooted in the fact that the statute at issue "prohibited interstate commerce in [marijuana]" (*id.*), and explicit congressional findings are not necessary to find that legislation is a valid exercise of Congress's Commerce Clause power, *see United States v. Lopez*, 514 U.S. 549, 562 (1995). Plaintiff's alternative argument—that *Raich* was wrongly decided (ECF No. 21, PageID 180)—effectively concedes the futility of his attempt to escape *Raich*'s holding.

Third, Plaintiff argues that the Commerce Clause does not provide authority for the challenged provisions because Defendants have failed to identify a "specific regulation of interstate commerce" that the provisions are "necessary to make effective." (ECF No. 21, PageID 177.) By this, Plaintiff appears to mean that Defendants are required to point to an individual law that invokes the Commerce Clause power and that the challenged provisions "support[ ]." (ECF No. 21, PageID 178.) Defendants have no such burden.

Here, as Plaintiff does not dispute, distilled spirits are a multi-billion-dollar industry that substantially affects interstate commerce and is comprehensively regulated by Congress under both the Internal Revenue Code and the FAA Act.[7] (ECF No. 13, PageID 90.) Congress enacted the provisions challenged in this case some 150 years ago in an "Act imposing Taxes on Distilled Spirits and Tobacco, and for other Purposes." ACT OF JULY 20, 1868, § 12, 15 Stat. 125, 130. However, as

---

[7] The *Hobby Distillers* court concluded that these laws do not comprise "comprehensive" regulation of the distilled spirits industry because, for example, the statutory regime is "silent on a label's design and aesthetics absent a warning label." 2024 WL 3357841, at *15. But neither *Raich* nor *Wickard v. Fillburn*, 317 U.S. 111 (1942)—the binding precedents the court attempted to distinguish—demands that level of granularity in a "comprehensive" regulatory scheme. The court also erred in concluding that the absence of a "jurisdictional element" placed the challenged provisions outside the Commerce Clause authority. 2024 WL 3357841, at *15 (quoting *Lopez*, 514 U.S. at 561). While some cases have concluded that a "jurisdictional element" was required to indicate Congress's intent to regulate interstate commerce in a law governing non-economic behavior, *see Lopez*, 541 U.S. at 561 (law criminalizing possession of guns in school zones); *United States v. Morrison*, 529 U.S. 598, 625 (2000) (law criminalizing gender-based violence), the reasoning of those cases has no application here, as the production of distilled spirits is a "quintessentially economic" activity. *Raich*, 545 U.S. at 25.

the Supreme Court has emphasized, "[t]he 'question of the constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise.'" *NFIB*, 567 U.S. at 570 (quoting *Woods v. Cloyd W. Miller Co.*, 333 U.S. 138, 144 (1948)). Because there is a "rational basis" to find that the application of the challenged provisions to purely local activities is necessary to their more general regulation of interstate commerce, they fall easily within Congress's Commerce Clause authority. *Raich*, 545 U.S. at 22; *see also id.* at 37 (Scalia, J., concurring).

Finally, Plaintiff's suggestion that a decision holding the challenged provisions to fall within Congress's Commerce Clause authority would "dramatically expand" the traditional boundaries of that Article I power (ECF No. 21, PageID 179) is wrong for all the reasons explained above. Plaintiff asserts that finding constitutional the dwelling-house-related premises restrictions on distilled spirits plants would allow Congress "to prohibit everything from home-based employment . . . to home cooking." (*Id.*) However, §§ 5178(a)(1)(B) and 5601(a)(6) do not prohibit distilling of spirits but rather place reasonable limitations on the locations where such distilling may occur. These limitations apply to a broad economic class of activities, and to the extent they reach local, noncommercial activities, such instances are a necessary part of Congress's broader regulation, which the Court lacks "power to excise." *Raich*, 545 U.S. at 23 (citation omitted). Plaintiff's string citation of statutes that "comprehensively" regulate various areas merely underscores the breadth of Congress's authority to regulate interstate commerce (ECF No. 21, PageID 179). That the challenged premises restrictions have existed for over a century and a half without Plaintiff's parade of horribles coming to pass is evidence that Plaintiff's is not a well-founded fear.

## CONCLUSION

The Court should dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, or grant summary judgment in favor of Defendants.

Dated: August 12, 2024           Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director, Federal Programs Branch

*/s/ Elizabeth Tulis*
ELIZABETH TULIS
HANNAH SOLOMON-STRAUSS
*Trial Attorneys*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
(202) 514-9237
elizabeth.tulis@usdoj.gov


*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on August 12, 2024, a true and correct copy of the foregoing memorandum was served electronically upon the following parties or counsel via the Court's CM/ECF filing system:

Patrick T Lewis
Baker & Hostetler LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114
216-621-0200
Fax: 216-696-0740
Email: plewis@bakerlaw.com
*Counsel for Plaintiff*

Andrew Michael Grossman
Baker Hostetler
Washington Square
1050 Connecticut Avenue, N.W.
Ste 1100
Washington, DC 20036
202-861-1697
Email: agrossman@bakerlaw.com
*Counsel for Plaintiff*

David Christian Tryon
The Buckeye Institute
188 East Broad Street
Ste 1300
Columbus, OH 43215
440-503-7877
Email: d.tryon@buckeyeinstitute.org
*Counsel for Plaintiff*

Kristin A. Shapiro
Baker & Hostetler
1050 Connecticut Ave. NW, Suite 1100
Washington, DC 20036
202-861-1717
Email: kshapiro@bakerlaw.com
*Counsel for Plaintiff*

Robert Alt
The Buckeye Institute
88 East Broad Street, Suite 1300
Columbus, OH 43215
614-224-4422
Email: robert@buckeyeinstitute.org
*Counsel for Plaintiff*

*/s/ Elizabeth Tulis*
ELIZABETH TULIS