UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOHN REAM,**

        **Plaintiff,**

   v.

**UNITED STATES DEPARTMENT OF THE TREASURY,** *et al.***,**

        **Defendants.**

**Case No. 2:24-cv-364**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Chelsey M. Vascura**

## <u>OPINION AND ORDER</u>

Before the Court is a Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim filed by Defendants the United States Department of the Treasury, Janet Yellen in her official capacity as Secretary of Treasury of the Alcohol Tobacco Tax and Trade Bureau ("TTB"), and Mary G. Ryan, in her official capacity as TTB Administrator. (Defs.' Mot., ECF No. 13.) Plaintiff John Ream opposes that Motion (Resp., ECF No. 21), and Defendants replied in support of the Motion (Defs.' Reply, ECF No. 27). Mr. Ream also cross-moved for summary judgment. (Pl.'s Mot., ECF No. 20.) Defendants opposed (Opp., ECF No. 28), and Mr. Ream replied (Pl.'s Reply, ECF No. 31).

Mr. Ream lacks standing to obtain pre-enforcement review of the challenged statutes. Because Mr. Ream lacks standing, the Court does not have subject matter jurisdiction over this action and must grant Defendants' Motion to Dismiss. Since the Court grants the Motion to Dismiss, it will not reach a decision on the Cross Motion for Summary Judgment. For the reasons below the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 13) and **DENIES as moot** Mr. Ream's Cross Motion for Summary Judgment (ECF No. 20).

# BACKGROUND

Mr. Ream wishes to distill whiskey in his home for his family's personal consumption, but federal law prohibits him from doing so. Mr. Ream seeks an order from this Court declaring that the federal regulations that prohibit home distilling are facially unconstitutional and unconstitutional as applied to those who seek to distill small quantities of alcohol for personal consumption.

## I.  Factual Background

After experimenting with a home-brewing kit, Mr. Ream, an engineer by trade, found a passion for brewing beer at home. (Compl., ECF No. 1, ¶¶ 15–17.) Eventually, his hobby turned into a small business known as Trek Brewing Company, which opened in 2018 in Granville, Ohio. (*Id.* ¶¶ 18–19.) He now would like to expand his hobby to include distilling small quantities of whiskey. (*Id.* ¶¶ 24–27.) He has never distilled alcohol into spirits before, but would like to master the process, just as he did with brewing. (*Id.* ¶ 26.) Mr. Ream has "extensively researched and studied the process of distilling" and "is prepared to take every step necessary to responsibly distill . . . including obtaining the necessary equipment and raw materials." (*Id.* ¶ 27.) He makes clear that he "would not sell the alcohol he produces from his home distilling or otherwise offer it to the public." (*Id.* ¶ 25.)

Mr. Ream "would act upon his personal desire to try home distilling[,]" if not for the federal laws prohibiting home distilling. (*Id.* ¶ 29.) He would "obtain all necessary state and federal licenses for, and pay all applicable taxes on, his home distilling" and would "comply with all applicable state and federal laws." (*Id.* ¶ 28.) But if he acquired a still and began to distill spirits, he argues that he would face federal criminal prosecution and criminal penalties of up to $10,000 and five years of imprisonment. (*Id.* ¶ 30.) According to Mr. Ream, his fears are not hypothetical because the government has enforced these provisions in the past. (*Id.* ¶ 31.)

**II.     Legal Background**

This case involves two federal statutes that regulate the location of plants that distill alcohol into spirits, or "stills." *See* 26 U.S.C. §§ 5178(a)(1)(B), 5601(a)(6). The federal government has a long history of taxing and regulating distilled spirits. Distilled spirits can be produced only at a registered distilled spirits plant, *see* 26 U.S.C. § 5171, and cannot be distilled at home for personal consumption.

The first statute challenged by Mr. Ream, 26 U.S.C. § 5178(a)(1)(B), was enacted in 1868 and provides:

> [n]o distilled spirits plants for the production of distilled spirits shall be located in any dwelling house, in any shed, yard, or inclosure [sic] connected with any dwelling house, or on board an vessel or boat, or on premises where beer or wine is made or produced, or liquors of any description are retailed, or on premises where any other business is carried on (except when authorized under subsection (b)).

26 U.S.C. § 5178(a)(1)(B); *see also* 73 Fed. Reg. 26200, 26206 (2008) (reiterating that a person may not distill spirits at home for personal use). The second statute penalizes violations of § 5178(a)(1)(B), and states that:

> [a]ny person who uses, or possesses with intent to use, any still, boiler, or other utensil for the purpose of producing distilled spirits, or aids or assists therein, or causes or procures the same to be done, in [any location proscribed by § 5178(a)(1)(B), except as authorized by § 5178(a)(1)(C)], shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, for each such offense.

*Id.* § 5601(a)(6).

The accompanying regulatory framework includes more than just limitations on where spirits may be distilled. To protect public health and safety from unregulated alcohol products, Congress requires certain qualifications to establish and operate a distilled spirits plant. *See id.* §§ 5171–5182 (articulating registration and permit requirements); §§ 5201–5207 (defining how operations will be supervised and regulated). To facilitate the collection of taxes and protect the tax revenue accrued from taxing distilled spirits, Congress also enacted a detailed tax framework. *Id.* §§ 5001–5011

(taxing spirits based on proof of gallon and requiring that operations occur only on bonded premises). Mr. Ream is not accused of violating any of the above statutes or regulations, but challenges Congress's power to enact the statutes and regulations in the first place.

### III. Procedural Background

Mr. Ream filed this lawsuit arguing that the federal home distilling prohibition exceeds Congress's constitutional authority. (*See* Compl. ¶¶ 33–38.) He seeks an order declaring the challenged provisions unconstitutional. (*Id.*) Defendants moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim. (Defs.' Mot.) Defendants contend that Mr. Ream lacks standing and that the prohibition is within Congress's taxing authority and power to regulate interstate commerce. (*Id.*)

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted). Federal subject matter jurisdiction "can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

A court may dismiss an action under Rule 12(b)(1) when it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) (permitting courts to dismiss an action "at any time" for lack of subject matter jurisdiction). When a defendant challenges a complaint on its face under this rule, as Defendants do here, the defendant challenges "the sufficiency of the pleading itself." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id.* "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving

jurisdiction in order to survive the motion." *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).

## ANALYSIS

Defendants argue that Mr. Ream lacks standing to sue because he has not adequately alleged a legal injury. (Defs.' Mot., PageID 80–84; Opp., PageID 234–43.) Mr. Ream argues that his inability to home distill is an injury in fact with a causal connection to the challenged statutes, that is likely to be redressed by a favorable decision of this Court. (Pl.'s Mot., PageID 125.) The Court first discusses the applicable law for determining whether a plaintiff has standing to seek pre-enforcement review before applying the law to Mr. Ream's claim.

### I. The Court applies the framework set forth in *Susan B. Anthony List v. Driehaus* to determine whether Mr. Ream has standing to seek pre-enforcement review.

Federal courts are not "an open forum for citizens 'to press general complaints about the way in which government goes about its business.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (quoting *Allen v. Wright*, 468 U.S. 737, 760 (1984)). The Constitution only gives federal courts authority to decide "cases" and "controversies." U.S. Const. art. III. § 2. To have a genuine case or controversy, a plaintiff must have "a personal stake in the outcome" of the dispute. *All. for Hippocratic Med.*, 602 U.S. at 379 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "In other words, a plaintiff must have standing." *Associated Builders & Contractors of Mich. v. Cowen*, No. 23-1803, 2025 U.S. App. LEXIS 3586, at *7 (6th Cir. Feb. 13, 2025).

A plaintiff lacks standing to assert his claims unless he or she: (1) "suffered an injury in fact" that is actual or imminent, (2) "fairly traceable to the challenged conduct of the defendant," and (3) "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The party invoking federal jurisdiction—here, Mr. Ream—must allege facts establishing each

5

element of standing. *Id.* Defendants focus their attack on the first element: whether he suffered an injury in fact.

The Supreme Court has reiterated the importance that an Article III injury must be "actual or imminent, not speculative." *All. for Hippocratic Med.*, 602 U.S. at 381. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Normally, this means that "the injury must have already occurred," *All. for Hippocratic Med.*, 602 U.S. at 381, for example, when the government enforces an allegedly unconstitutional law against the challenging party. *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 435 (6th Cir. 2024).

But in some cases, a future injury can confer standing if it is "certainly impending" or if there is a "substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Standing "can derive from an imminent, rather than an actual, injury, . . . only when the threatened injury is real, immediate, and direct." *Crawford v. United States Dep't of the Treasury*, 868 F.3d 438, 454 (6th Cir. 2017) (internal quotation marks omitted). A future injury that is merely "possible" is not enough to constitute an injury in fact. *Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415–16 (2013)). Although a "somewhat elastic concept," imminence should not be "stretched beyond its purpose" of ensuring that "the alleged injury is not too speculative for Article III." *Clapper*, 568 U.S. at 409.

When a plaintiff brings a claim before an allegedly unconstitutional law is enforced against him, as Mr. Ream does, he raises the "recurring issue of whether threatened enforcement of a law satisfies the injury in fact requirement." *Cowen*, 2025 U.S. App. LEXIS 3586, at *9. In the pre-enforcement context, the Sixth Circuit imposes additional requirements to ensure that an injury is

6

imminent. *Carman v. Yellen*, 112 F.4th 386, 400 (6th Cir. 2024). To have standing a plaintiff must demonstrate (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest," (2) that is proscribed by the statute at issue, and (3) the threat of future enforcement is "certainly impending." *Susan B. Anthony List*, 573 U.S. at 160–62; *see also Mulroy*, 108 F.4th at 435.

Mr. Ream argues that the above standard should not apply. (Resp., PageID 167–68; Pl.'s Reply, PageID 263–64.) Instead, he reasons that if a statute directly regulates a plaintiff's conduct, or requires a plaintiff to alter their conduct, the statute inflicts an injury in fact for purposes of standing. (Pl.'s Reply, PageID 263.) The challenged statutes, according to Mr. Ream, cause him to suffer an injury in the form of a "Hobson's choice."[1] (Resp., PageID 167.) He must choose between refraining from home distilling or facing criminal penalties, which is really no choice at all, says Mr. Ream. (*Id.* (citing *Peoples Rts. Org. v. City of Columbus*, 152 F.3d 522, 529 (6th Cir. 1998); *Thomas More Law Ctr. v. Obama*, 651 F.3d 529, 533 (6th Cir. 2011), *abrogated in part on other grounds by Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 541 (2012).)[2]

The Court disagrees. Adopting Mr. Ream's proposed standard would unlock the courthouse doors to any plaintiff who wishes to use federal courts to adjudicate their general complaints about how the government conducts its business. *See All. for Hippocratic Med.*, 602 U.S. at 378. Federal courts are not open forums to "opine on legal issues in response to citizens who might roam the

---

[1] A Hobson's choice is "an apparently free choice that offers no actual alternative." *Stokes v. Scutt*, 527 F. App'x 358, 370 n.1 (6th Cir. 2013).

[2] Defendants point out that the cases cited by Mr. Ream all involved challenges to laws that required the plaintiffs to take affirmative actions, rather than prohibiting them from doing something. (Defs.' Reply, PageID 206); *e.g.*, *Thomas More Law Ctr.*, 651 F.3d at 533 (requiring individuals to buy health insurance under the Affordable Care Act). Mr. Ream responds that this is a distinction without a difference. "Government regulations that require *or forbid* some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements." *All. for Hippocratic Med.*, 602 U.S. at 382 (*emphasis* added). (Pl.'s Reply, PageID 263.) The Court agrees with Mr. Ream that Defendants' emphasis on whether the challenged regulation requires or prohibits conduct is misplaced. That said, the Court disagrees that the standard proposed by Mr. Ream applies.

country in search of governmental wrongdoing." *Id.* at 379 (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 487 (1982)). A plaintiff does not have standing simply because she believes a law is unconstitutional or because she has a policy objection to a particular governmental action. *See All. for Hippocratic Med.*, 602 U.S. at 381. Without satisfying the elements enunciated in *Susan B. Anthony List*, Mr. Ream's challenge does not present a legal question "in a concrete factual context conducive to a realistic appreciation of the consequences of judicial actions." *Id.* at 379.

The Court therefore applies the standard proposed by Defendants and set forth in *Susan B. Anthony List v. Driehaus*, 573 U.S. at 160, beginning with whether Mr. Ream plausibly alleged that his course of conduct is affected with a constitutional interest.

## II. Mr. Ream does not have a constitutional interest in home distilling alcohol.

Mr. Ream must show that his alleged intention to violate the challenged statutes and engage in home distilling is "arguably affected with a constitutional interest." *Susan B. Anthony List*, 573 U.S. at 160. To do so he must show he has a legally protected interest in home distilling. The Sixth Circuit recently gave two examples in the First Amendment context for how a plaintiff satisfies this step. If a plaintiff challenges a law prohibiting protests, they must show a constitutional interest in protesting. *Mulroy*, 108 F.4th at 438 (holding that the plaintiff did not have a constitutional interest in exhibiting indecent materials to minors when challenging a Tennessee law prohibiting adult cabaret performances in the presence of minors). Likewise, a newspaper that challenges a censorship law must show a constitutional interest in freely publishing. *Id.*

Following this logic, to show that his alleged intent to violate the challenged statutes is affected by a constitutional interest, Mr. Ream must establish that he has a constitutional interest in home distilling alcohol. Defendants argue that there is no constitutional interest in home distilling

8

alcohol, therefore, Mr. Ream does not seek to engage in conduct affected with a constitutional interest. (Defs.' Mot., PageID 81–83.)

Mr. Ream responds with two arguments. First, that his conduct is affected with a constitutional interest under the Commerce Clause. (Pl.'s Mot., PageID 126.) Second, even if he has no constitutional right to distill alcohol, he has a constitutional interest in ensuring that Congress legislates within the scope of its powers under the Constitution. (*See* Pl.'s Reply, PageID 265 (explaining he seeks to prevent "tyranny and abuse").)

To support his first argument, Mr. Ream relies on *Online Merchants Guild v. Cameron*, 995 F.3d 540 (6th Cir. 2021). In that case, the plaintiff, an association of online merchants, alleged that the enforcement of Kentucky's price-gouging laws violated the dormant commerce clause, the Due Process Clause, and the First Amendment. *Id.* at 546. The representative plaintiff explained that it engaged in commercial activity through Amazon's interstate marketplace and received a subpoena from the Kentucky Attorney General stating that the Attorney General had reason to believe the plaintiff had engaged in price-gouging activities. *Id.* at 549–50. The Sixth Circuit found that the first requirement for pre-enforcement standing was met because the dormant commerce clause protects commercial actors from unduly burdensome state regulations of interstate commerce. *Id.* Thus, the representative was engaged in conduct (commercial activity) affected with a constitutional interest (freedom from unduly burdensome regulations under the dormant commerce clause) but proscribed by Kentucky state statute. *See id.*

As Defendants point out, the dormant commerce clause protects commercial actors from *state* regulations—not *federal* laws and regulations at issue here. (Defs.' Reply, PageID 208.) Therefore, the dormant commerce clause does not legally protect his interest in home distilling. Mr. Ream seeks to contort this distinction from *Online Merchants* in his favor. He suggests that his constitutional

interest is even *greater* than the plaintiff's interest in *Online Merchants* because that case involved the dormant commerce clause—an implicit right under the Constitution—not an explicit protection of the Commerce Clause. (Pl.'s Reply, PageID 264–65 (emphasis in original).) But that distinction does not matter because Mr. Ream fails to develop this argument beyond stating in a conclusory manner that his proscribed conduct "relates" to the Commerce Clause.

Mr. Ream also argues that he has a constitutional interest in ensuring that Congress has not acted outside its enumerated powers. (*Id.*) But his general interest in preventing "tyranny and abuse," is not sufficiently particularized to show he has standing to assert his pre-enforcement challenge.

### III. Mr. Ream has not shown a serious intent to engage in conduct proscribed by the challenged statutes.

Next, Mr. Ream must show that he intends to engage in a course of conduct that the challenged statutes proscribe. *Susan B. Anthony List*, 573 U.S. at 160. The statutes at issue prohibit Mr. Ream from locating or operating a distilled spirts plant on residential property. *See* 26 U.S.C. § 5178(a)(1)(B). Mr. Ream says that he "has taken every possible preparatory step up to the one— purchasing a still—that could subject him to criminal prosecution." (Pl.'s Reply, PageID 265.) To support his position, he submits a declaration that states he has "extensively researched and studied the process of distilling" and is prepared to "obtain[] the appropriate equipment and raw materials." (Ream Decl., ECF Nos. 20-1, 21-2, ¶ 12.) He states that he "would like" to distill alcohol but does not intend to do so until he has received the necessary permits and licenses. (*Id.* ¶¶ 11, 14.)

Defendants argue that Mr. Ream has not exhibited a serious intent to operate a still in violation of the challenged statutes. (Mot., PageID 82–83; Defs.' Reply, PageID 209–10.) They reason that Mr. Ream could take several additional steps to begin home distilling, without violating the statutes, that he has not taken. (Mot., PageID 82; Defs.' Reply, PageID 209.) Defendants explain that to apply for a permit or license to operate a still, an applicant must submit a building layout, security plan,

10

detailed list of operations to be performed, and a description of the equipment involved. (*Id.*) Since he offers no evidence that he has put together a building layout, or otherwise gathered the necessary information to apply for a license or permit, Defendants contend that he has shown no more than a desire or wish to one-day home distill. (Mot., PageID 83.)

In *Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau*, a case cited by Mr. Ream, the court in the Northern District of Texas found that one of four individual plaintiffs had standing to challenge the same federal prohibition at issue. 740 F. Supp. 3d 509, 519–20 (N.D. Tex. 2024) (concluding that 26 U.S.C. §§ 5601(a)(6) and 5178(a)(1)(B) are unconstitutional under Congress's taxing and commerce powers). The court explained that each plaintiff was "no more than one overt act away from criminal liability under the challenged statutes[,]" but the plaintiff who had standing also received a warning letter. *Id*. One plaintiff operated a still in a shed on his residential property to distill ethanol for fuel,[3] which could easily be modified to distill spirits for personal consumption. *Id.* Another plaintiff possessed a business permit to re-distill alcohol and could easily transport his still to his residence. *Id.* The district court also highlighted that the plaintiffs possessed the requisite expertise to distill beverage alcohol, demonstrating the seriousness of their intent to engage in the proscribed conduct. *Id.* (noting that one plaintiff had a recipe and an ingredient list, one was already proficient at home-brewing wine and beer, and another was a certified bourbon steward).

Although Mr. Ream aims to draw parallels between himself and the plaintiffs above, his case is distinguishable. Like the plaintiffs above, Mr. Ream is proficient at home brewing, and even owns a brewery. (Compl., ¶¶ 17–20.) But he is not "one overt act away from criminal liability under the challenged statutes." *Hobby Distillers*, 740 F. Supp. 3d at 519. He has not bought a still, and the record does not show that he has a comparable still at his brewery that could easily be transported to

---

[3] 26 U.S.C. § 5181 authorizes an alcohol fuel plant to produce, process, store, use, or distribute non-beverage fuel alcohol exclusively for fuel use.

his personal residence or modified to distill spirits. *Id.* Even though he states he has a recipe with a list of ingredients that he can "easily obtain," he has not bought the ingredients or taken any added steps to apply for an applicable license or permit. (*See* Ream Decl., ¶¶ 13–14.) His "desire" or "wish to engage in certain possibly prohibited activities" is "not sufficient to create a case or controversy within the meaning of Article III." *NRA of Am. v. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997) (internal quotation marks omitted); *see also Lujan*, 504 U.S. at 564 ("some day intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the actual or imminent injury").)

### IV. Mr. Ream has not shown a credible threat of prosecution to establish standing.

Mr. Ream must also show a credible threat of prosecution to establish that his future injury is sufficiently imminent to satisfy Article III. "The mere possibility of prosecution,[]—no matter how strong the plaintiff's intent to engage in forbidden conduct may be—does not amount to a credible threat of prosecution." *Crawford*, 868 F.3d. at 454–55. "Instead, the threat of future prosecution, must be certainly impending." *Id.* (citation omitted). Courts analyze whether a threat of prosecution is certainly impending and thus credible, holistically, under the four *McKay* factors:

> (1) "a history of past enforcement against the plaintiffs or others"; "(2) enforcement warning letters sent to the plaintiffs regarding their specific conduct"; "(3) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action"; and (4) the "defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff."

*McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016) (citations omitted). The *McKay* factors "are not exhaustive, nor must each be established." *Online Merchs. Guild*, 995 F.3d at 550 (explaining that the Sixth Circuit has found standing where "some combination of the factors are present").

From the start, two of the four *McKay* factors suggest that Mr. Ream lacks standing. Mr. Ream has not received an enforcement letter and neither statute can be enforced by a private party. *See*

12

*McKay*, 823 F.3d at 869 (factors (2) and (3)); *Hobby Distillers*, 740 F. Supp. 3d at 519–20 (explaining that a warning letter is "critical for determining the credibility of prosecution"). As explained below, the first factor cuts against standing, while the fourth factor makes Mr. Ream's fear of prosecution more credible. Holistically, because three of the four *McKay* factors indicate Mr. Ream does not have a certainly impending threat of prosecution, Mr. Ream lacks standing.

Defendants try to avoid the import of fourth factor by arguing that the TTB has not had the opportunity to decide whether to enforce the challenged statutes against someone who has not actually distilled alcohol. (*See* Defs.' Reply, PageID 211–12.) But that argument misstates the inquiry. If the TTB made clear that it would not enforce the challenged statutes against Mr. Ream, then his fear of prosecution would be less credible. But because the TTB refuses to say that it would not enforce— i.e., "disavow enforcement of"—the challenged statutes, his fear of prosecution is more credible.

The threat of enforcement becomes more credible when the same conduct has drawn enforcement in the past. *Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014). That is why the first *McKay* factor analyzes whether the government has a history of enforcing the challenged provisions. In the Complaint, Mr. Ream cites three cases to show that because the government enforced the statutes before, his fear of prosecution is not hypothetical. (Compl., ¶ 31 (citing *United States v. Smith*, 456 F. App'x 200, 202 (4th Cir. 2011) (affirming the defendant's conviction for fraudulent receipt of Social Security Administration funds and illegal liquor operation, but not under § 5601(a)(6)); *United States v. Brookins*, 434 F.2d 41, 45 (5th Cir. 1970) (affirming conviction for possession of an unregistered still under 26 U.S.C. § 5601(a)(1)); *Pinion v. United States*, 397 F.2d 27, 27 (5th Cir. 1968) (affirming conviction of operating a distillery without a bond and without paying taxes)).

Defendants distinguish the above cases by arguing that they either did not involve § 5601(a)(6) and are too outdated to show a certainly impending threat of prosecution. (Defs.' Reply,

PageID 212.) Mr. Ream responds by citing additional cases that charged defendants under § 5601(a)(6). (Resp., PageID 169, n.9 (citing *United States v. Whitehead*, 424 F.2d 446, 447 (6th Cir. 1970) (affirming conviction for possessing a still in violation of federal tax laws); *United States v. West*, 328 F.2d 16, 17 (2d Cir. 1964) (upholding conviction for producing distilled spirits in a dwelling house); *Reynolds v. United States*, 289 F.2d 698, 699 (10th Cir. 1961) (affirming conviction under § 5601(a)(1), but noting the still was found in a dwelling in violation of § 5601(a)(6)); *United States v. Dahir*, 275 F. Supp. 83, 85 (D. Minn. 1967) (granting the defendant's motion to dismiss the indictment charging him with violating § 5601(a)(6)); *United States v. Lewis*, 270 F. Supp. 807, 809 (S.D.N.Y. 1967) (denying motion to suppress evidence in a case charging the defendant with violating § 5601(a)(6)); *United States v. Thomas*, 216 F. Supp. 942, 943 (N.D. Cal. 1963) (same)).

Even though the cases cited by Mr. Ream involved § 5601(a)(6), they are too outdated to establish that Mr. Ream faces a credible and imminent threat of prosecution today. At a minimum, the cases show that the TTB has not "vigorously litigated" enforcements of the challenged provisions. *Cf. Online Merchs. Guild*, 995 F.3d at 551 (explaining that because the Kentucky Attorney General vigorously litigated price-gouging cases, it was more likely that he would prosecute the plaintiff for similar conduct). Mr. Ream cites no cases showing the government has enforced § 5601(a)(6) in the past 50 years. Of course, it is *possible* that Mr. Ream could face future prosecution if he places a still in his home, but for a future injury to give rise to Article III standing, it must be more than a mere possibility. *Crawford*, 868 F.3d at 454. The possibility of prosecution here stretches the imminence requirement for a legal injury beyond its purpose. *Lujan*, 504 U.S. at 560–61.

Viewing the *McKay* factors holistically, the Court cannot conclude that Mr. Ream has shown a credible or imminent threat of prosecution. His case is distinguishable from *Hobby Distillers Association*, where the only individual plaintiff the district court found had standing received a notice

14

of criminal liability. 740 F. Supp. 3d at 520 (explaining the notice was one step short of a target letter). Mr. Ream received no such warning letter and has not taken the actions present in Hobby Distillers (for example, possessing a still for business purposes that could easily be transported to his residence) that made the threat of prosecution imminent and credible.

Since Mr. Ream cannot establish that he intends to engage in a course of conduct affected with a constitutional interest and proscribed by the challenged statutes, or that he faces a certainly impending threat of prosecution, he fails to plausibly allege a legal injury for purposes of standing. Without establishing that he suffered an injury in fact, he lacks standing to seek pre-enforcement review of the federal prohibition on home distilling. *See Susan B. Anthony List,* 573 U.S. at 160. Accordingly, Defendants Motion to Dismiss (ECF No. 13) is **GRANTED** for a lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 13) is **GRANTED**. Mr. Ream's Complaint is **DISMISSED** and his Cross Motion for Summary Judgment (ECF No. 20) is **DENIED as moot**.

The Clerk is **DIRECTED** to enter judgment and close this case.

**IT IS SO ORDERED.**

**3/20/2025**                                         **s/Edmund A. Sargus, Jr.**
**DATE**                                                **EDMUND A. SARGUS, JR.**
                                                               **UNITED STATES DISTRICT JUDGE**