**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

<table>
<tr><td>Kelly L. Stephens<br>Clerk</td><td>100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988</td><td>Tel. (513) 564-7000<br>www.ca6.uscourts.gov</td></tr>
</table>

Filed:  April 21, 2026

Mr. Robert Alt
The Buckeye Institute
Ohio
88 E. Broad Street
Suite 1300
Columbus, OH 43215

Ms. Tiffany Bates
Consovoy McCarthy
1600 Wilson Boulevard
Suite 700
Arlington, VA 22209

Mr. Thomas Arthur Berry
Cato Institute
1000 Massachusetts Avenue, N.W.
Washington, DC 20001-5403

Mr. Andrew Michael Grossman
Baker Hostetler
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, DC 20036

Mr. Patrick T. Lewis
BakerHostetler
127 Public Square
Suite 2000
Cleveland, OH 44114-3485

Mr. Thomas Ryan McCarthy
Consovoy McCarthy
1600 Wilson Boulevard
Suite 700
Arlington, VA 22209

Mr. Michael David Pepson
Americans for Prosperity Foundation
4201 Wilson Boulevard, Suite 1000
Arlington, VA 22203

Mr. Michael Anthony Petrino
Center for Individual Rights
1100 Connecticut Avenue, N.W.
Suite 625
Washington, DC 20036-0000

Ms. Kristin Ann Shapiro
Baker Hostetler
1050 Connecticut Avenue, N.W., Suite 1100
Washington, DC 20036

Mr. Reilly Stephens
Liberty Justice Center
7500 Rialto Boulevard
Suite 1-250
Austin, TX 78735

Ms. Caroline W. Tan
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Room 7218
Washington, DC 20530

     Re:  Case No. 25-3259, *John Ream v. U.S. Dept of the Treasury, et al*
           Originating Case No. 2:24-cv-00364

Dear Counsel,

    The court today announced its decision in the above-styled case.

    Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                        Yours very truly,

                        Kelly L. Stephens, Clerk

                        Cathryn Lovely
                        Deputy Clerk

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0117p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

───────────────

JOHN REAM,

*Plaintiff-Appellant*,

v.

UNITED STATES DEPARTMENT OF THE TREASURY; SECRETARY SCOTT BESSENT; ALCOHOL AND TOBACCO TAX AND TRADE BUREAU; ADMINISTRATOR MARY G. RYAN,

*Defendants-Appellees*.

No. 25-3259

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:24-cv-00364—Edmund A. Sargus, Jr., District Judge.

Argued:  December 10, 2025

Decided and Filed:  April 21, 2026

Before:  SILER, KETHLEDGE, and MATHIS, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:**  Andrew M. Grossman, BAKER & HOSTETLER LLP, Washington, D.C., for Appellant.  Caroline W. Tan, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.  **ON BRIEF:**  Andrew M. Grossman, Kristin A. Shapiro, BAKER & HOSTETLER LLP, Washington, D.C., Robert Alt, THE BUCKEYE INSTITUTE, Columbus, Ohio, Patrick T. Lewis, BAKER & HOSTETLER LLP, Cleveland, Ohio, for Appellant.  Caroline W. Tan, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.  Michael Pepson, AMERICANS FOR PROSPERITY FOUNDATION, Arlington, Virginia, Thomas A. Berry, CATO INSTITUTE, Washington, D.C., Thomas R. McCarthy, Tiffany H. Bates, CONSOVOY MCCARTHY PLLC, Arlington, Virginia, Michael A. Petrino, CENTER FOR INDIVIDUAL RIGHTS, Washington, D.C., Reilly Stephens, LIBERTY JUSTICE CENTER, Austin, Texas, for Amici Curiae.

KETHLEDGE, J., delivered the opinion of the court in which SILER, J., concurred. MATHIS, J. (pp. 12–18), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

KETHLEDGE, Circuit Judge.  For much of American history, evading excise taxes on liquor has been nearly a national pastime.  At the time of the Revolution, one historian has written, "nearly every farmer distilled his own whiskey and deemed it his inalienable right to evade the tax, and resist the collector whenever a favorable opportunity presented itself for doing so."  Gallus Thomann, *Liquor Laws of the United States* 58 (1885).  Soon after the Constitution's ratification, in western Pennsylvania, this evasion came by force of arms—in the Whiskey Rebellion, which President Washington put down only after assembling "an army larger than any he had commanded during the Revolution."  Gordon S. Wood, *Empire of Liberty: A History of the Early Republic, 1789–1815*, at 138 (2009).  Just after the Civil War, in 1867, a select committee of the House of Representatives heard more than a month of testimony, and concluded:  "in the manufacture and sale of tobacco, cigars, and spirits, and especially the latter, the most stupendous frauds are practiced against the government in the collection of its revenue."  H.R. Rep. No. 39-24, at 1 (1867).

The following year Congress enacted comprehensive legislation to end those frauds, which among many other provisions included a ban on distilling spirits in one's home.  Now, almost 160 years later, John Ream argues that the home-distilling ban has been beyond Congress's enumerated powers all along.  We disagree with the district court's conclusion that Ream lacks standing to bring his claims; but we hold that the ban is a necessary and proper means of collecting the federal excise tax on distilled spirits.

I.

A.

The home-distilling ban is among the "ingenious and complicated provisions" of the statutory regime that Congress enacted, in 1868, to "secure the revenue" (as the phrase went) from federal excise taxes on distilled spirits.  *United States v. Ulrici*, 111 U.S. 38, 40 (1884).  This regime remains largely intact today.  In its current form, the excise tax attaches the moment

a distilled spirit comes into "existence as such," generally "at the rate of $13.50 on each proof gallon." 26 U.S.C. § 5001(a)(1), (b); *see id.* § 5004(a)(1). A "proof gallon" is one gallon of 100 proof liquor; as the proof increases or decreases, so does the tax. *See id.* §§ 5002(a)(10)-(11), 5006(a)(1); 27 C.F.R. § 30.1.

With certain exceptions not relevant here, "operations as a distiller" may "be conducted only on the bonded premises of a distilled spirits plant." 26 U.S.C. § 5171(a). A person may commence such operations only after registering the "plant" with the Secretary of the Treasury and obtaining a permit to distill spirits. *Id.* § 5171(c)(1), (d)(1). Large-scale distillers (*i.e.*, distillers whose annual tax liability is at least $50,000) must also furnish the Secretary with a bond, which serves as security for all the taxes and penalties owed by the distiller. *Id.* § 5173(a)(1), (e)(1)(B).

Congress has authorized the Secretary to "prescribe such regulations relating to the location, construction, arrangement, and protection of distilled spirits plants as he deems necessary to facilitate inspection and afford adequate security to the revenue." *Id.* § 5178(a)(1)(A); *see also id.* § 5301(a)(1) (authorizing the Secretary to regulate the containers used for distilled spirits whenever "such action is necessary to protect the revenue"). But to that same end—of securing the revenue—Congress has prescribed more than a few rules of its own. As relevant here, "[n]o distilled spirits plant for the production of distilled spirits shall be located in any dwelling house, in any shed, yard, or inclosure connected with any dwelling house, or on board any vessel or boat, or on premises where beer or wine is made or produced, or liquors of any description are retailed." *Id.* § 5178(a)(1)(B). Moreover, every "person having in his possession or custody, or under his control, any still or distilling apparatus set up, shall register such still or apparatus with the Secretary immediately on its being set up." *Id.* § 5179(a). And every "person engaged in distilled spirits operations shall place and keep conspicuously on the outside of his place of business a sign showing the name of such person and denoting the business, or businesses, in which engaged." *Id.* § 5180(a).

Further, every "proprietor of a distilled spirits plant shall furnish the Secretary such keys as may be required for internal revenue officers to gain access to the premises and any structures thereon." *Id.* § 5203(a). Those officers may "enter any distilled spirits plant, or any other

premises where distilled spirits operations are carried on," at "all times, as well by night as by day." *Id.* § 5203(b). Thus, to paraphrase somewhat: the owner of a still for making liquor must register it; stills may be possessed only on "bonded premises" that are themselves subject to inspection at any time, day or night; and stills must not be possessed in a home, shed, yard, boat, or place where beer or wine is produced.

Violations of these laws trigger harsh penalties. Anyone who possesses an unregistered still, or neglects to furnish the required bond, or distills in a proscribed place, "shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, for each such offense." *Id.* § 5601(a). The same goes for any person who tries otherwise to defraud the government of taxes owed on distilled spirits. *Id.* § 5602.

## B.

This case comes to us on a motion to dismiss, so we take the facts alleged in the complaint as true. *Sturgill v. Am. Red Cross*, 114 F.4th 803, 806 (6th Cir. 2024).

John Ream grew up in Ohio, and worked as an aerospace engineer in Seattle, before he started brewing beer at home. He spent nine years refining his skills; eventually, in 2018, he and his wife returned to Ohio and opened their own brewery and taproom. Ream now wants to distill whiskey at home, and has "extensively researched" the process and means for doing so. Yet if he were to distill whiskey at home—or even possess a still there for that purpose—he would face a felony conviction and up to five years in prison, plus a substantial fine. 26 U.S.C. §§ 5178(a)(1)(B), 5601(a)(6); 27 C.F.R. § 19.51. "But for that prohibition," Ream would distill whiskey at home. Compl. ¶29.

Ream eventually brought this suit, claiming that the 1868 ban on possessing a still in a "dwelling house" was beyond Congress's power to enact. The defendants moved to dismiss, arguing both that Ream lacked standing and that the ban is constitutional; Ream moved for summary judgment in his favor. The district court granted the government's motion to dismiss, holding that Ream lacked standing because he had not yet bought a still or been specifically threatened with prosecution for violating the ban. This appeal followed.

II.

A.

We review de novo whether Ream had standing to bring this suit.  *See Price v. Medicaid Dir.*, 838 F.3d 739, 745 (6th Cir. 2016).  Ream challenges the home-distilling ban in advance of taking action to violate it.  Thus, to have standing, he must have plausibly alleged that (1) he seeks to engage in conduct that is "arguably affected with a constitutional interest," (2) a statute arguably proscribes that conduct, and (3) if he proceeds with that conduct, "there exists a credible threat of prosecution" under that statute.  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (cleaned up).

In holding that Ream lacked standing, the district court seemed to think that conduct is "arguably affected with a constitutional interest" only if the Constitution specifically protects that conduct—as the First Amendment does speech, for example.  Op. at 8-9.  But the Supreme Court has taken a broader view of such conduct.  In *Bond v. United States*, for example, a criminal defendant had standing to make the same kind of claim that Ream makes here:  that the statute which regulated her conduct was beyond Congress's power to enact.  564 U.S. 211, 222-23 (2011).  That Bond's claim concerned a structural principle rather than a specific guarantee was immaterial; an injured "individual has a direct interest in objecting to laws that upset the constitutional balance between the National Government and the States."  *Id.* at 222.

Conduct is arguably affected with a constitutional interest, for purposes of standing, when the Constitution arguably invalidates a statute that proscribes that conduct.  In that event, the conduct is "affected with" (in the sense of "[b]y the means or agency of[,]" *Am. Heritage Dict.* (3d ed. 1992) at 2050) "a constitutional interest"—for if the claim is meritorious, then the conduct is lawful.  Such is the case here:  Ream's constitutional interest and its relation to his conduct are identical to the ones that gave Bond standing to assert her claim.  So this requirement for standing is met.

Next, the conduct in which Ream seeks to engage is expressly proscribed by federal law. *See* 26 U.S.C. §§ 5178(a)(1)(B), 5601(a)(6).  That leaves only the question whether, if Ream were to distill whiskey at home, he would face a credible threat of prosecution.  A credible threat

No. 25-3259                    *Ream v. U.S. Dep't of the Treasury, et al.*                    Page 6

exists when "there is a substantial risk that the harm will occur." *Driehaus*, 573 U.S. at 158 (cleaned up).

By any practical measure, Ream would face such a threat here. The statute specifically bans possession or use of a still in a "dwelling house." 26 U.S.C. §§ 5178(a)(1)(B), 5601(a)(6). That is exactly the conduct in which Ream seeks to engage. And the government, in this litigation, has conspicuously declined to disavow enforcement of the ban if Ream engages in that conduct—which underscores the threat the statute itself makes. *See Catholic Charities v. Whitmer*, 162 F.4th 686, 691 (6th Cir. 2025). Moreover, in a 2011 rulemaking—which remains on the books today—the Treasury Department reiterated that "[a] person may not produce distilled spirits at home for personal use." 27 C.F.R. § 19.51. In addition, the Department's Alcohol Tax and Trade Bureau states on its website—again to this day—that "Federal law strictly prohibits individuals from producing distilled spirits at home" and that violations "are felonies that are punishable by up to 5 years in prison, a fine of up to $10,000, or both, for each offense." *Home Distilling*, Alcohol and Tobacco Tax and Trade Bureau, https://perma.cc/QSZ9-DZJS (last updated Mar. 17, 2025).

One can hardly expect Ream to regard this triple threat of felony punishment as merely hortatory—and thus to proceed to distill whiskey at home anyway. True, the Treasury has not sent Ream a letter warning him about the same ban and penalties that its regulation and the Bureau's website already warn everyone about. And true, the home-distilling ban apparently has not been enforced in court for a long while. But that could be because all these threats of severe coercion are actually effective. The courts would inhabit a different world than citizens do if we held that a citizen must defy an express statutory ban—twice reiterated by executive organs charged with its enforcement—and potentially subject himself to conviction as a felon, and to a sentence of years in prison, simply to be heard on his claim that the ban violates the federal Constitution. In Ream's case the legislative and executive branches speak with one voice; he may take them at their word.

The only circumstance that prevents Ream from distilling whiskey at home is the express statutory (and now regulatory) ban on doing so. He has standing to proceed with his claims.

B.

Ream's claims themselves present purely questions of law, which have now been fully briefed by the parties.  Piecemeal litigation wastes the resources of everyone concerned; and our interest in timely, efficient adjudication favors deciding these questions now.  *See, e.g.*, *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 764 (1989).  So we proceed to do that.

We begin and end with the question whether the home-distilling ban is a necessary and proper means of collecting the federal excise tax on spirits.  The Taxing Clause vests Congress with the "Power to lay and collect Taxes, Duties, Imposts and Excises."  U.S. Const. art. I, § 8, cl. 1.  "Congress's authority under the taxing power is limited to requiring an individual to pay money into the Federal Treasury, no more."  *NFIB v. Sebelius*, 567 U.S. 519, 574 (2012).  The home-distilling ban exceeds that boundary:  rather than require payment to the Federal Treasury, it proscribes conduct.  The taxing power itself therefore cannot support the ban; so we consider whether the Necessary and Proper Clause does.

That Clause vests Congress with power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."  U.S. Const. art. I, § 8, cl. 18.  As to the Clause's scope, Chief Justice Marshall's formulation has long been the touchstone:  "Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional."  *McCulloch v. Maryland*, 17 U.S. 316, 421 (1819).  Whether a law is "necessary," on the one hand, and "proper," on the other, are separate questions; but Marshall's formulation covers both.

To be necessary, under *McCulloch*, a means must be "plainly adapted" to a legitimate constitutional end.  *Id.*  The Court later glossed that formulation in a case concerning "securing the payment of" taxes specifically—holding that, "in the rules and regulations for the manufacture and handling of goods which are subjected to an internal revenue tax, Congress may prescribe any rule or regulation which is not in itself unreasonable."  *Felsenheld v. United States*, 186 U.S. 126, 132 (1902).  This case too concerns a rule "for the manufacture" of a taxable good,

namely spirits; and the rule is that spirits cannot be distilled (*i.e.*, manufactured) in a "dwelling house[.]" *Id.*; 26 U.S.C. §§ 5178(a)(1)(B), 5601(a)(6).

So we turn to whether the home-distilling ban is "necessary" in this constitutional sense. In 1868, evasion of excise taxes on spirits had been rampant for literally all of the nation's history. By all appearances, spirits distilled at home were no exception. The 1868 Act was a monumental effort, running some 109 sections, to bring these "stupendous frauds" to an end. Act of July 20, 1868, ch. 186, 15 Stat. 125; H.R. Rep. No. 39-24, at 1 (1867). Section 12 of the 1868 Act included the home-distilling ban at issue here—verbatim, as the ban appears in § 5601(a)(6) to this day.

Ream's claim brings to mind Holmes's observation about rules based on custom: "The reason which gave rise to the rule has been forgotten, and ingenious minds set themselves to inquire how it is to be accounted for." Oliver Wendell Holmes, Jr., *The Common Law* 5 (1881). Yet little ingenuity is required here. The ban's inclusion was apparently uncontroversial, prompting not even a murmur of debate. Cong. Globe, 39th Cong., 1st Sess. 2839, 2841 (1866). Even now its rationale is almost self-evident: stills are more easily hidden in homes than in bonded premises dedicated to distilling spirits; and—as both a legal and practical matter— "dwelling houses" are much harder to search at "all times, as well by night as by day," than bonded premises are. 26 U.S.C. § 5203(b).

During debate on the 1868 Act, then-Representative (and future President) James Garfield of Ohio offered reasoning apposite here. Another member had proposed that "no still, boiler, or other vessel" should be used to distill spirits "in any building or on any premises where beer, lager beer, ale, porter, or other fermented liquors, vinegar, or ether, are manufactured or produced." Cong. Globe, 39th Cong., 1st Sess. 2839, 2841 (1866). (That amendment became law. *See* Act of July 20, 1868, ch. 186, § 12, 15 Stat. at 130.) That provision too was a ban on stills in certain locations; and today we might puzzle over the reason for it. But Garfield explained that "a majority of the cases of fraud during" the previous year had "been in establishments where stills were kept in connection with beer breweries." *Id.* A "little still may be concealed among the machinery of a large lager-beer brewery"—where, he said, it was prohibitively "hard to get at them." *Id.*

No. 25-3259 *Ream v. U.S. Dep't of the Treasury, et al.* Page 9

That same reasoning applies *a fortiori* to stills in people's homes. Thus—in the sense of both "plainly adapted" and "reasonable"—the home-distilling ban was "necessary" to the collection of taxes on revenue at the time it was enacted; and we have no reason to conclude otherwise now. Indeed, Ream makes no argument that any change in circumstances has rendered unnecessary today what was necessary then. (In his view, rather, the ban has been *ultra vires* all along.) And meanwhile—as to liquor and taxes alike—human nature remains decidedly unchanged.

Ream does argue that he would gladly pay the tax on his home-distilled whiskey, and that the ban prevents him from doing so. Thus, he contends, the ban reduces revenue rather than raises it. As a matter of direct causation, that might be so; but Congress can take account of causal chains longer than that. Congress could easily conclude that, for many people, spirits produced at home would serve as a substitute for spirits produced in distilleries, which—as a result of the 1868 Act—are uniformly taxed. And Congress had ample reason to conclude that, for every at-home distiller who pays the tax, many others would not. The ban thus shifts consumption from untaxed spirits to taxed spirits—thereby increasing revenue.

Nor, it bears mention, has Ream volunteered to comply with the statute's other provisions that are applicable to distillers of spirits generally. One provision would require Ream to "furnish the Secretary such keys as may be required" to enter his home—being the "premises where distilled spirits operations are carried on"—at "all times, as well by night as by day." 26 U.S.C. § 5203(a)-(b). Another would require Ream to "place and keep conspicuously on the outside of" his home "a sign" announcing his distilling operations. *Id*. § 5180(a). (Perhaps Ream thinks those provisions are unconstitutional too—in which case his argument might sound in "substantive due process" rather than in the Constitution's text.) And absent compliance with these provisions Congress could easily conclude that home distillers would evade the tax all the more.

Nor do we see any reason why the ban on home distilling is improper. The ban's purpose is actually to collect revenue. As the Supreme Court said about the 1868 Act not long after it became law: its "well-considered and minute provisions" were "adopted with one purpose only, namely, to secure the payment of the tax imposed by law upon distilled spirits." *Ulrici*, 111 U.S.

No. 25-3259             *Ream v. U.S. Dep't of the Treasury, et al.*             Page 10

at 40.  Moreover, the home-distilling ban is not expressly "prohibited by the constitution"; nor does it seek to regulate conduct indirectly, or to circumvent some other limit on Congress's power.  *See McCulloch*, 17 U.S. at 423; *compare United States v. Butler*, 297 U.S. 1, 74-75 (1936).

Ream's more serious argument is that the Taxing Clause and the Necessary and Proper Clause—taken together, as interpreted in cases after *Butler*—could expand Congress's power beyond its proper limits.  We take that concern seriously; but the concern is misplaced here.  The determination whether a law is necessary and proper unavoidably involves a degree of means-ends scrutiny.  And whether a law is "plainly adapted" to a permissible end depends on an empirical judgment—which is to say the judgment is, by nature, factbound.

What limits the application of a factbound judgment to other cases are the relevant facts themselves.  Here, those facts include a history of tax evasion as old as the Republic itself; and Congress concluded—based on that history, and after a month of testimony before a select committee of the House—that the home-distilling ban, along with the 1868 Act's other provisions, were in fact necessary to collect federal excise taxes on spirits.  That judgment rested on facts, not speculation; and those facts were peculiar to distilling spirits.  Indeed, rules concerning alcohol more generally are unique as to the evasion that often accompanies them— from excise taxes, to Prohibition, to the use of fake IDs to obtain alcohol (itself almost a rite of passage for some generations), to moonshiners even today.  The judgment required in this case, again, is an empirical one; and empirically, alcohol is *sui generis*, or very close to it.

Ream is therefore mistaken to say that—under our reasoning here—"the federal government could impose a nominal excise tax on baking bread or making clothing and [then] prohibit home bread-baking or home sewing on the theory that home-sewers or home-bakers are less likely to pay the tax."  Br. at 48.  Those "theories" are merely that; and they would strip away nearly all the particular facts on which the judgment here is based.

We should also bear in mind that Congress's power is not the only one bounded by constitutional limits.  The judicial power is too; and where, as here, the law "is really calculated to effect any of the objects intrusted to the government," to inquire further than we have "into the

No. 25-3259 *Ream v. U.S. Dep't of the Treasury, et al.* Page 11

degree of its necessity, would be to pass the line which circumscribes the judicial department, and to tread on legislative ground." *McCulloch*, 17 U.S. at 423.  Indeed, for us to conclude that a law of 160 years' vintage, with this kind of empirical pedigree, has all along been both unnecessary and improper, would border on rationalist conceit.  One can think that Congress's power has expanded beyond its constitutional limits as originally understood, *see, e.g.*, *United States v. Rife*, 33 F.4th 838, 843 (6th Cir. 2022), and yet conclude that not every novel exercise of Congressional power is unlawful.  And here the novelty lies with the challenge to the law, not with the law itself.  We should not be so eager to police the limits of Congress's power, that we exceed the limits of our own.

The rule that Ream challenges addressed an actual problem that had confounded the federal government from its earliest days.  The home-distilling ban was lawful when enacted, and remains so today.

\*     \*     \*

The district court's order dismissing Ream's claims for lack of jurisdiction is reversed, and the case is remanded with instructions to enter judgment in favor of the defendants.

No. 25-3259                    *Ream v. U.S. Dep't of the Treasury, et al.*                    Page 12

———————

**DISSENT**

———————

MATHIS, Circuit Judge, dissenting.  Choose a law at random from the U.S. Code, and you will find someone who objects to it.  But to challenge a law in the courts, the federal Constitution requires more than personal grievance.  *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam).  A plaintiff needs real stakes—otherwise, our decisions cease to be exercises of judicial review over individual disputes.  We instead become instruments of policymaking, vindicating the public interest—a function that the Constitution reserves for the legislative and executive branches.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 576 (1992).

John Ream's grievance is with the federal ban on distilling spirits in one's home.  He believes the ban is unconstitutional.  So he sued, seeking to strike it down.  But because Ream lacks Article III standing, I would not reach the merits of his claim.

**I.**

Ream owns a brewery and taproom in central Ohio.  An aerospace engineer by trade, Ream began brewing beer at home as a hobby.  He now wants to distill small quantities of whiskey at home for personal consumption.  But unlike beermaking or winemaking, federal law prohibits individuals from distilling spirits at home.  *See* 26 U.S.C. § 5601(a)(6) (imposing criminal penalties on those who distill alcohol "in any dwelling house, or in any shed, yard, or inclosure connected with such dwelling house").

Ream has not purchased the equipment or ingredients necessary to begin distilling spirits in his home.  Nor has he applied for the permit required to distill spirits.  *See id.* § 5171(d)(1).  Yet Ream asserts he is "able and ready" to distill whiskey at home.  D. 13 at p.13.  He claims that he has "extensively researched" home distilling, picked out the rye and Bourbon recipes he would like to use, and identified a copper pot he believes is suitable for home distilling.  R. 21-1, PageID 186.

But before taking any additional steps, Ream sued the U.S. Department of the Treasury and related entities and officials (collectively, the "Treasury Department").  He alleged that the federal home-distilling prohibition is unconstitutional, exceeding Congress's authority under the Commerce Clause and Congress's taxing power.  The district court dismissed the complaint, agreeing with the Treasury Department that Ream lacked standing.

## II.

Under Article III of the Constitution, federal courts may decide only "Cases" and "Controversies."  U.S. Const. art. III, § 2.  "Article III does not contemplate a system where 330 million citizens can come to federal court whenever they believe that the government is acting contrary to the Constitution or other federal law."  *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024).  "The doctrine of standing gives meaning" to Article III "by identifying those disputes which are appropriately resolved through the judicial process."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (citation modified).  So before we consider a claim's merits, a plaintiff must establish that he has standing to sue.  *Kitchen v. Whitmer*, 106 F.4th 525, 533 (6th Cir. 2024).

Standing requires the plaintiff to "have a personal stake in the case."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation modified).  "[A] citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally."  *All. for Hippocratic Med.*, 602 U.S. at 381.  On the contrary, to establish standing a plaintiff must show that: (1) he suffered or will likely suffer an injury in fact, (2) the defendant caused or will cause the injury, and (3) the court can redress the injury with a decision in the plaintiff's favor.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (citation modified).

Typically, a party challenging the constitutionality of a federal law must wait for the government to enforce the law against him.  *See Somberg v. McDonald*, 117 F.4th 375, 378 (6th Cir. 2024).  But at times, a person may challenge a law before that occurs.  For instance, "where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to

No. 25-3259                   *Ream v. U.S. Dep't of the Treasury, et al.*                   Page 14

liability before bringing suit to challenge the basis for the threat." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007). But to bring such a challenge, the plaintiff must still show an injury in fact. In the context of preenforcement challenges, this means "the threatened enforcement [is] sufficiently imminent." *Susan B. Anthony List*, 573 U.S. at 159.

How does a plaintiff meet this burden? The plaintiff must "clearly allege facts," *Spokeo*, 578 U.S. at 338 (citation modified), showing "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder," *Susan B. Anthony List*, 573 U.S. at 159 (quotation omitted). To show that a threat of prosecution is credible, a plaintiff generally must establish some combination of the following factors:

> (1) a history of past enforcement against the plaintiffs or others; (2) enforcement warning letters sent to the plaintiffs regarding their specific conduct; (3) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action; and (4) the defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff.

*Christian Healthcare Ctrs. v. Nessel*, 117 F.4th 826, 848 (6th Cir. 2024) (citation modified). Of course, a plaintiff need not establish each factor. *Id.* And these factors are not exhaustive. *Id.*

### III.

I assume that Ream has pleaded an intention to engage in conduct arguably affected with a constitutional interest, and that the federal home-distilling ban proscribes this conduct. All the same, Ream lacks standing because he has failed to show that his intention to distill spirits at home "generates a *certainly impending* threat of prosecution." *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 435 (6th Cir. 2024) (citation modified). I start with the credible-threat factors.

*Past enforcement against Ream or others*. There has been no past enforcement of the federal home-distilling ban against Ream. As to others, the government has enforced § 5601(a)(6)'s location prohibition in the past, but the most recent conviction that Ream can point to is over 50 years old. *See United States v. Whitehead*, 424 F.2d 446, 447 (6th Cir. 1970)

(en banc).  He identifies no precedent suggesting that such outdated examples can satisfy the past-enforcement prong.  In fact, a 50-year lapse in criminal convictions is strong evidence *against* a credible threat of prosecution in the present.  *See Poe v. Ullman*, 367 U.S. 497, 501 (1961) (plurality opinion) (concluding that the plaintiffs lacked standing to challenge a state statute banning contraceptives because the statute had not been enforced in over 20 years).  Nonexistent enforcement against Ream and outdated enforcement against others do not support a credible threat of prosecution.

Ream contends that, despite the lack of § 5601(a)(6) convictions over the past 50 years, there have been numerous indictments in recent years against home distillers.  Yet he produces only one federal indictment, while the rest are indictments on state-law charges—which have no bearing on the past enforcement of § 5601(a)(6) or any other federal distilling laws.  For example, Ream cites a declaration by Robert Angelo, a director with the Alcohol and Tobacco Tax & Trade Bureau, describing a 2014 joint operation with Florida law enforcement that led to the arrests of eight home distillers.  Decl. of Robert M. Angelo at 3, *Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau*, No. 4:23-cv-01221 (N.D. Tex. 2024), Dkt. No. 39-1.  What Ream leaves out, however, is that the operation "did not specifically target potential violations of 26 U.S.C. § 5601(a)(6) nor were any federal charges filed."  *Id.* at 2.

As for the sole federal indictment that Ream points to, the defendants were not charged with violating § 5601(a)(6)—the home-distilling prohibition.  *See* Press Release, *Indictment: Couple Operated Moonshine Still in Newton*, U.S. Dep't of Just. (Dec. 7, 2016), https://perma.cc/RDY7-MD82.  They were instead charged with possession of an unregistered still, 26 U.S.C. § 5601(a)(1), unlawful production of distilled spirits, *id.* § 5601(a)(8), and carrying on the business of a distiller without giving bond, *id.* § 5601(a)(4).  And those defendants had allegedly sold the illegal spirits to others, whereas Ream intends only to distill spirits for home consumption.

*Warning letters*.  Ream has not alleged that he received any warning letters from the government.  He claims that the Treasury Department sent warning letters to 8,136 other home distillers.  But unlike the past-enforcement factor, Ream can satisfy the warning-letter factor only

No. 25-3259                     *Ream v. U.S. Dep't of the Treasury, et al.*                     Page 16

if he received a letter.  *See McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016).  Thus, this factor does not help Ream.

*Ease of enforcement.*  Ream does not argue that the federal home-distilling ban is easier to enforce than other statutes.  Indeed, the statute contains no provision allowing members of the public to initiate an enforcement action.  *See Friends of George's*, 108 F.4th at 439.  By all accounts, only a "prosecutor or an agency" can enforce the ban.  *Susan B. Anthony List*, 573 U.S. at 164; *cf. Boone Cnty. Republican Party Exec. Comm. v. Wallace*, 132 F.4th 406, 418 (6th Cir. 2025) (finding a credible threat of enforcement where the challenged statute allowed members of the public to file complaints).  So Ream fails to establish the ease-of-enforcement factor.

*Refusal to disavow.*  The Treasury Department has not disavowed enforcement of the federal home-distilling ban against Ream.  So this factor weighs in Ream's favor.

\*          \*          \*

Ream has established only one of the four factors that show a credible threat of enforcement.  And that factor—disavowal—"is just one data point among many on the question whether a credible threat of enforcement exists."  *Davis v. Colerain Township*, 51 F.4th 164, 174 (6th Cir. 2022).  Although a plaintiff need not establish all four factors, we require "some combination" of them to show a credible threat of prosecution.  *Online Merchs. Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021) (quotation omitted), *abrogated on other grounds as recognized by Tenn. Conf. of NAACP v. Goins*, 139 F.4th 557, 563 (6th Cir. 2025).  One is insufficient.

## IV.

Perhaps recognizing that his standing challenge fails under our precedent, Ream makes several more arguments.  These fare no better.

Ream points out correctly that our four credible-threat-of-prosecution factors are "not exhaustive."  *Id.*  The problem is that he does not tell us what other factors we should apply instead—let alone explain how these unidentified factors would help him.  He asks us to consider § 5601(a)(6)'s unambiguous language and its lack of exemptions as factors weighing in his

No. 25-3259                *Ream v. U.S. Dep't of the Treasury, et al.*                Page 17

favor.  But questions of ambiguity and exemptions speak to whether a statute proscribes the plaintiff's intended conduct—not whether a credible threat of prosecution exists.  *See Friends of George's*, 108 F.4th at 435–36.

Ream also calls our attention to the Fifth Circuit's recent decision in *McNutt v. U.S. Department of Justice*, __ F.4th __, 2026 WL 971617 (5th Cir. Apr. 10, 2026).  In *McNutt*, the Fifth Circuit concluded that the plaintiffs had standing to challenge the federal home-distilling ban.  *Id.* at *4–5.  But *McNutt* just reinforces that Ream lacks standing.  There, the Treasury Department advised the plaintiffs before they filed suit that it would deny them permits to distill in their homes, and it sent at least one plaintiff a warning letter.  *Id.* at *4.  Ream has not been denied a permit (he has not sought one) nor has he received a warning letter.  The Treasury Department knows that Ream wants to engage in home distilling only because he filed a lawsuit.

Ream further asserts that "[t]he mere existence of the federal home-distilling prohibition . . . establishes a credible threat."  D. 13 at p.40.  But his only support for this proposition comes from out-of-circuit caselaw, which cannot override our binding precedent.  And even if those cases were persuasive in the abstract, they are distinguishable and do not help Ream.  *See Korte v. Sebelius*, 735 F.3d 654, 667 (7th Cir. 2013) (holding that employers had standing to challenge an Affordable Care Act provision that "operate[d] directly" on them by requiring them to provide contraceptive coverage in their employee healthcare plans); *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 70 (2d Cir. 2019) (applying a similar analysis and holding that an airport had standing to challenge a statute limiting runway length because the plaintiff was the "object of the action . . . at issue" (quotation omitted)); *Bauer v. Shepard*, 620 F.3d 704, 708 (7th Cir. 2010) (concluding that a judge and a judicial candidate had standing to challenge a code of conduct provision limiting political speech by judges and judicial candidates).

In each case, the plaintiff was the direct "object of the action," *Lujan*, 504 U.S. at 561, which helped convince the court that enforcement was "certainly impending," *Friends of George's*, 108 F.4th at 435 (emphasis omitted).  But Ream is unlike the judge challenging a judicial code of conduct rule.  Nor is he like the airport contesting state runway restrictions.  To the extent § 5601(a)(6) regulates Ream, it does not do so directly because, put simply, he is not an at-home distiller.  He brews beer and has "researched" distilling.

No. 25-3259                *Ream v. U.S. Dep't of the Treasury, et al.*                Page 18

## V.

For the reasons above, I would affirm the district court's order dismissing Ream's claims for lack of subject-matter jurisdiction and decline to reach the merits questions. I thus respectfully dissent from the majority opinion's contrary conclusion.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 25-3259

JOHN REAM,

     Plaintiff - Appellant,

     v.

UNITED STATES DEPARTMENT OF THE TREASURY;
SECRETARY SCOTT BESSENT; ALCOHOL AND
TOBACCO TAX AND TRADE BUREAU;
ADMINISTRATOR MARY G. RYAN,

     Defendants - Appellees.

**FILED**

Apr 21, 2026
KELLY L. STEPHENS, Clerk

Before:  SILER, KETHLEDGE, and MATHIS, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's order dismissing John Ream's claims for lack of jurisdiction is REVERSED, and the case is REMANDED with instructions to enter judgment in favor of the defendants.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk